UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-3444-DMG (PVCx) | | Date | August 30, 2021 |
|---|---|---|---|---|

| Title | *Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.* | Page | 1 of 10 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT CTM BIOMEDICAL, LLC, BRYAN BANMAN, AND PABLO SEOANE'S MOTION TO DISMISS [68], DEFENDANT GARDNER ROGERS' MOTION TO JOIN [69], AND DEFENDANT MIKE STUMPE'S MOTION TO JOIN [71]**

Before the Court is a Motion to Dismiss ("MTD") four claims in Plaintiffs' Second Amended Complaint ("SAC") filed by Defendants Bryan Banman, CTM Biomedical, LLC ("CTM"), and Pablo Seoane. [Doc. # 68.] Before the Court also is Defendants Gardner Rogers' and Mike Stumpe's separate motions to join the MTD as to two of the claims. [Doc. ## 69, 71.] The motions are fully briefed. [Doc. ## 75-80.]

For the reasons set forth below, Rogers' and Stumpe's motions to join are **GRANTED**, and the MTD is **GRANTED in part** and **DENIED in part**.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND[1]**

The SAC is based on the same factual allegations as the FAC, and the Court need not repeat these allegations, which are summarized in the First MTD Order. First MTD Ord. at 1-10 [Doc. # 60].[2] As relevant here, in that Order, the Court dismissed Counts 1 and 2, for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c), and conspiracy to violate RICO, 18 U.S.C. § 1962(d), with leave to amend, for failure to identify a RICO enterprise. The following claims survived the MTD: violation of the Defendant Trade Secrets Act ("DTSA"), breach of contract, conversion, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* at 23.

---

[1] The Court assumes the truth of Plaintiffs' factual allegations in the SAC solely for the purpose of deciding the MTD.

[2] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-3444-DMG (PVCx) | Date | August 30, 2021 |
|---|---|---|---|

| Title | *Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.* | Page | 2 of 10 |
|---|---|---|---|

In the SAC, Plaintiffs amend the RICO and RICO conspiracy claims to be asserted only against Banman, Stumpe, Seoane, and Rogers ("RICO Defendants"), and assert that RICO Defendants' common purpose as an association-in-fact was directing business from Skye to CTM and "funneling unlawful sums of money to themselves." SAC at ¶¶ 141, 143.

Additionally, the SAC adds two causes of action against Banman for breach of fiduciary duty and breach of duty of loyalty. Plaintiffs allege that Banman was Skye's Senior Vice President of Business Development, responsible for maintaining and growing sales at Skye. SAC at ¶ 226. As a Skye employee, Banman was subject to the Skye Orthobiologics, LLC Employee Confidentiality Agreement ("Skye Confidentiality Agreement"), which prevented Banman from engaging with a competing business. *Id.*; *see also* SAC, Ex. D at ¶ 10. Skye placed trust in Banman during his tenure at the company. *Id.* at ¶ 28. But Banman then used confidential product, customer, and pricing information in order to contact Skye customers with competitive pricing options and interfere with Skye's relationships with doctors and with its own employees. *Id.* at ¶¶ 77, 136-37.

## II.
## DISCUSSION[3]

### A.  RICO claims

Because the SAC does not allege material facts unique to Stumpe or Rogers as to the RICO claims, the Court **GRANTS** their respective motions to join in the MTD as to those claims.

A private plaintiff may raise a claim under RICO if he is "injured in his business or property" because the defendant violated one of RICO's criminal provisions set forth in 18 U.S.C. § 1962. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)). RICO Section 1962(c) makes it "unlawful for any person employed by or associated with" an enterprise engaged in or affecting interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a claim under Section 1962(c), a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). Section 1962(d) prohibits conspiracy to violate subsections (a), (b), and (c). 18 U.S.C. § 1962(d).

---

[3] The legal standard for a motion to dismiss under Rule 12(b)(6) is detailed in the First MTD Order and need not be repeated here. First MTD Ord. at 11-12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-3444-DMG (PVCx)** | Date | August 30, 2021 |
|---|---|---|---|

| Title | ***Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.*** | Page | 3 of 10 |
|---|---|---|---|

As discussed in the First MTD Order, Plaintiffs have sufficiently pled "racketeering activity" under RICO via violations of the DTSA for misappropriating Skye's product formulas and marketing, as well as pricing models, customer lists, and customer initiatives. First MTD Ord. at 16. The remaining contested elements are the existence of an enterprise, a pattern of racketeering activity, and whether each RICO Defendant participated in the conduct of the enterprise's affairs, as well as whether Federal Rule of Civil Procedure 9(b) applies.

### 1. Rule 9(b)

As an initial matter, the Court rejects Defendants' argument that Plaintiffs' RICO claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See* MTD at 16-17. Unless the predicate acts alleged involve fraud, "RICO itself is not subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standards[.]" *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1036 (C.D. Cal. 2011). Plaintiffs do not allege any fraud claims or claims that "sound in fraud." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Courts generally find trade secret misappropriation claims do not sound in fraud. *See Hill Phoenix, Inc. v. Classic Refrigeration SoCal, Inc.*, No. CV 19-069 DOC (JDEx), 2019 WL 7172977, at *5-6 (C.D. Cal. Sept. 6, 2019); *cf. Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d. 1005, 1012 (N.D. Cal. 2017) (applying Rule 9(b) to RICO predicate acts of mail and wire fraud); *Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036 (C.D. Cal. 2014) (applying Rule 9(b) to a unitral course of fraudulent conduct including fraudulent accounting, fraudulent inducement, and other fraudulent transactions).

The course of conduct here does not sound in fraud and, therefore, Rule 9(b) does not apply.

### 2. Enterprise

Plaintiffs allege that RICO Defendants Banman, Rogers, Stumpe, and Seoane constitute an enterprise either as an association-in-fact or via CTM itself. *See* SAC at ¶¶ 140-42. An enterprise must contain "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The Court granted Defendants' motion to dismiss Plaintiffs' RICO claims in the FAC because the common purpose of "defrauding Plaintiffs" was not distinct enough from the predicate act of trade secret misappropriation. First MTD Ord. at 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-3444-DMG (PVCx)** | Date | August 30, 2021 |

| Title | *Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.* | Page | 4 of 10 |

Plaintiffs now allege that the RICO Defendants' common goal was to "direct [Plaintiffs'] business to CTM" as well as to "funnel[] unlawful sums of money to [RICO Defendants]" in the form of commissions, profit, and equity. SAC at ¶ 143. The Court finds the assertion regarding "unlawful" sums of money to be a legal conclusion without adequate factual support in the SAC. *See Ashcroft*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). But the core of Plaintiffs' argument that RICO Defendants joined together to direct business away from Skye and to Banman's new company, CTM, constitutes a common purpose separate and apart from its alleged pattern of trade secret misappropriation. *Odom*, 486 F.3d at 551.

RICO Defendants argue that this common purpose cannot satisfy RICO's requirement because it is CTM's ordinary business activity. MTD at 12. For example, in a case asserting a common purpose between vehicle manufacturers and designers to conceal vehicle defects to increase sales, the court held that the design, manufacturing, distribution, testing, and sale of the vehicles at issue simply described the "primary business activities" of the individual parties and could not show a separate common purpose to establish a RICO enterprise. *Shaw v. Nissan North America, Inc.*, 220 F. Supp. 3d 1046, 1056 (C.D. Cal 2016) (citing *In re Toyota Motor Corp. UA*, 826 F. Supp. 2d 1180, 1202 (C.D. Cal 2011)). And "routine commercial relationships" such as those between a business and service provider like a bank or credit card processer also generally do not suffice to create a RICO enterprise. *Gomez v. Guthy-Renker, LLC*, No. ED CV 14-01425-JGB (KKx), 2015 WL 4270042, at *9-11 (C.D. Cal. July 13, 2015) (collecting cases).

But Plaintiffs' allegations that RICO Defendants acted together to direct business from Skye goes beyond ordinary business practices or contractual relationships. Plaintiffs allege that while Banman, Stumpe, and Seoane were still employed by Skye, Banman began to recruit Skye's customers to CRM, and Stumpe and Seoane allegedly began working with Banman to direct business away from Skye to CTM. SAC ¶¶ 79-83; *see* First MTD Ord. at 4-8 (describing the specific acts of misappropriation and deception that Banman, Stumpe, and Seoane engaged in while employed by Skye). The remaining RICO Defendant Rogers allegedly made misrepresentations to the Department of Veterans Affairs and to Skye in CTM's favor to get out of an exclusivity contract with Skye. SAC ¶¶ 99-101; *see* First MTD Ord. at 8-10. The RICO Defendants' conduct and their relationships with one another involve misappropriation and deception that harm Plaintiffs beyond the ordinary course of business for a competitor company, and beyond the routine contractual relationships of a business and a business's service provider. The RICO common purpose here is more like that in *Odom*, where the Ninth Circuit affirmed an association-in-fact's common purpose of "increasing the number of people using Microsoft's Internet service." *Odom*, 486 F.3d at 552. Thus, Plaintiffs have sufficiently stated a common

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-3444-DMG (PVCx)** | | Date | August 30, 2021 |
|---|---|---|---|---|

| Title | *Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.* | | Page | 5 of 10 |
|---|---|---|---|---|

purpose and relationships separate from the RICO Defendants' alleged racketeering activity of trade secret misappropriation and from their ordinary course of business.

An enterprise in fact must also have "longevity sufficient to permit [defendants] to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. Plaintiffs allege that the RICO Defendants' predicate acts took place between 2018 and 2020, during which time Skye's revenue sharply declined, continuing to this day. SAC ¶¶ 75, 79-82, 98, 109-111, 119-120, 130-133. For example, as early as March and June 2018, Banman allegedly utilized his contact with specific Skye customers, Integrative Medical Solutions ("IMS") and Dr. S.—whose identities and contracts constitute Skye's trade secrets—to ask them to switch to purchasing products from Banman's forthcoming company, CTM. *Id.* at ¶¶ 79-80. Similarly, in September 2018, Banman used knowledge of Skye contracts to offer a better rate to Rogers' company, VMD, than the company had with Skye. *Id*. at ¶ 98. Additionally, Seoane's accounts with Skye decreased by more than 76% between December 2019 and March 2020, giving rise to the inference that Seoane was diverting his accounts to Banman and CTM. *Id*. at ¶ 129. An "almost two-year time span is far more than adequate to establish that [the enterprise] functioned as a continuing unit." *Odom*, 486 F.3d at 553. The longevity element is therefore met.

Accordingly, Plaintiffs have alleged sufficient factual context to show the plausible existence of an enterprise through an association in fact.

### 3.    Pattern of Racketeering Activity

A pattern of racketeering activity "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years." 18 U.S.C. § 1961(5). In order to prove a pattern of racketeering activity, Plaintiffs must show "a relationship between the predicates and of the threat of continuing activity." *Howard v. American Online, Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (internal citation and quotation marks omitted). In order to prove a relationship, the predicates should "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics and . . . not [be] isolated events." *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).

Plaintiffs allege that the RICO Defendants used information gained through trade secret misappropriation on numerous occasions, and continue to use such information, to market an almost-identical product and to divert business from Skye to CTM. SAC at ¶¶ 75, 82, 98, 109-11, 119-20, 130-13. Plaintiffs allege that Defendants used these trade secrets in order to target former and current Skye customers, including IMS, Riverview Hospital, VMD, and Sea Glass.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-3444-DMG (PVCx)** | | Date | August 30, 2021 |
|---|---|---|---|---|

| Title | *Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.* | | Page | 6 of 10 |
|---|---|---|---|---|

SAC at ¶¶ 82, 98, 109-11, 119-20, 130-33.  The Court already referred to several examples above involving IMS, Dr. S, and VMD.  Banman ultimately persuaded Rogers to sell CTM products, as demonstrated by Rogers' April 12, 2019 email to Banman's former Skye email address with evidence of payments from two medical centers to CTM.  *Id*. at ¶¶ 98, 103.  In January 2020, Stumpe sold CTM products instead of Skye products to former Skye customer Riverside Hospital and sent an email asking to "replace" products "with CTM." *Id*. at ¶¶ 109-11.  In June 2020, an email sent to Seoane suggested that he and a former Skye customer would have the opportunity to present CTM products for the purpose of the sale and promotion of CTM products, although Seoane still held himself out as a Skye employee. *Id.* at ¶¶ 133-34.

Plaintiffs have sufficiently demonstrated the "threat of continuity" of racketeering.  *H.J. Inc*., 492 U.S. at 230, 242 (emphasis omitted).  Thus, Plaintiffs have alleged a pattern of racketeering activity in which each RICO Defendant participated.

### 4.    Conduct

The Supreme Court has held that to be liable under RICO section 1962(c), "one must participate in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  But "lower rung participants in the enterprise who are under the direction of upper management" also meet this standard. *Id.* at 184.  The Ninth Circuit has cited with approval *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967 (7th Cir. 1995), in which the Seventh Circuit held that two contractors who "knowingly implemented management's decisions, thereby enabling the enterprise to achieve its goals," could be held liable under Section 1962(c) in a racketeering enterprise seeking to make the "management" company the "exclusive provider of forklift and material handling." *MCM Partners*, 62 F.3d at 978-79; *see Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) ("Unlike the contractors in MCM, [defendant] did not become a participant in directing the enterprise's affairs by knowingly implementing decisions of upper management.").

Here, Plaintiffs have adequately alleged that Banman directed the enterprise to divert business from Skye to CTM and that he recruited Seoane, Stumpe, and Rogers to implement his decisions.  The SAC also adequately alleges that the RICO Defendants knew that they were participating in furthering a criminal enterprise with the common purpose of directing Plaintiffs' business to CTM, for profit, through trade secret misappropriation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-3444-DMG (PVCx)** | | Date | August 30, 2021 |
|---|---|---|---|---|

| Title | *Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.* | | Page | 7 of 10 |
|---|---|---|---|---|

### 5.     Conspiracy to violate RICO

"To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online, Inc.*, 208 F. 3d 741, 751 (9th Cir. 2000) (citing *Baumer v. Pachl*, 8 F. 3d 1341, 1346 (9th Cir. 1993)).   As detailed above, each RICO Defendant allegedly participated in trade secret misappropriation and agreed to participate in the enterprise with the common purpose of diverting sales from Skye to CTM. Thus, Plaintiffs have sufficiently pled that each RICO Defendant "adopt[ed] the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997).

Plaintiffs have thus stated claims for violation of Section 1962(c) and (d) of RICO.  The Court **DENIES** the MTD as to Counts 1 and 2 for violation of RICO and conspiracy to violate RICO.

### B.     Breach of Fiduciary Duty

In California, the elements of a claim for breach of fiduciary duty are:  "(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 646 (2018).  Plaintiffs allege that as the Senior Vice President of Business Development, Banman owed a fiduciary duty to Skye.

Fiduciary duties may be imposed as a matter of law, or as a matter of agreement.  As a matter of law, officers of a company owe a fiduciary duty if the role requires participation in the management of the company and the exercise of some discretionary authority, but "nominal" officers with no management role do not have fiduciary duties. *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 421-22 (2000), *disapproved of on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004).  An officer need not have the "ability to control the corporation" in order to have a fiduciary duty to the company. *Id.* at 419; *see also Daniel Orifice Fitting Co. v. Whalen*, 198 Cal. App. 2d 791, 794 (1962) (finding a corporate vice president owed a fiduciary duty to the corporation).  The SAC alleges only that Banman was responsible for maintaining existing sales and sales growth at Skye as a senior vice president. Plaintiffs have alleged no other facts indicating that Banman managed Skye's day-to-day operations.  Moreover, in Banman's SVP position, he "commit[ted] to offering the level [of] service and dedication" he did while he was a *consultant* for HRT from 2012 to 2017.  SAC at ¶ 226; *see also* SAC, Ex. C at 2.  That language in his Employment Agreement suggests that his role was more like a consultant's than a managing officer's, despite the officer title.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 20-3444-DMG (PVCx) | Date | August 30, 2021 |
|---|---|---|---|

| Title | *Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.* | Page | 8 of 10 |
|---|---|---|---|

Because Plaintiffs rely on conclusory statements regarding Banman's responsibilities while employed at Skye, Plaintiffs fail to allege the existence of a fiduciary duty owed by Banman to Skye. Accordingly, the MTD is **GRANTED, with leave to amend,** as to Count 10 for breach of fiduciary duty.

## C.     Breach of Duty of Loyalty

The elements of a claim for breach of a duty of loyalty are similar to a breach of fiduciary duty:   "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007).

Defendants contend a claim for breach of duty of loyalty is duplicative of a claim for breach of fiduciary duty and therefore must fail if the fiduciary duty claim fails. MTD at 22 (citing *Mattel, Inc. v. MGA Entm't, Inc.*, No. 04-9049 DOC (RNBx), 2011 WL 8427611, at *3 (C.D. Cal. 2011) ("The fiduciary relationship is a prerequisite to the existence of a duty of loyalty.")). The decision in *Mattel* is not binding on this Court, and other district courts have declined to follow *Mattel* because California law recognizes a lower bar to establish a duty of loyalty. *See E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1016 (N.D. Cal. 2013) ("Although they are similar, breach of fiduciary duty and breach of the duty of loyalty are two distinct claims under California law.") (internal quotation marks omitted) (collecting cases); *see also Huong Que, Inc.*, 150 Cal. App. 4th at 410.

The Court proceeds to analyze the duty of loyalty as separate from a fiduciary duty.

### 1.     Existence of a Relationship

"The duty of loyalty arises not from a contract, but from a relationship." *Id.* California courts rely on Restatement (Third) of Agency (2006) to establish whether the relationship between the parties was that of a principal and agent, which would give rise to a duty of loyalty. *Id.* at 410-11. The Restatement classifies all employees as agents who "owe duties of loyalty to their employers." Restatement (Third) of Agency § 1.01 (2006). The theory of agency elicits "a consensual relationship in which one person . . . acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person." *Id.*, cmt. c. There is no question that from April 2018, when Banman signed his Employment Agreement with Skye, to the day he resigned, Banman was an agent and employee of Skye, subject to the duty of loyalty. *See* SAC ¶ 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-3444-DMG (PVCx)** | Date | August 30, 2021 |
|---|---|---|---|

| Title | *Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.* | Page | 9 of 10 |
|---|---|---|---|

### 2.    Breach of Loyalty

While employees may prepare to compete with their employer before resigning, "California law does not authorize an employee to transfer his loyalty to a competitor" *during* his employment. *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (1987); *see also Bancroft-Whitley Co. v. Glen*, 64 Cal. 2d 327, 346 (1966). "An employee who has any business to transact on his own account, similar to that intrusted to him by his employer, shall always give the preference to the business of the employer." Cal. Lab. Code § 2863. "The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer." *Huong Que*, 150 Cal. App. 4th at 414 (internal quotation marks and citation omitted).

The SAC clearly alleges that Banman transferred his loyalty to CTM while still working for Skye. On June 1, 2018, before Banman resigned from his position at Skye on July 2, 2018, Banman incorporated Defendant CTM, purportedly naming the company as a reference to the acronym for "connective tissue matrix," which is the terminology "used exclusively" by Plaintiffs to describe their products. SAC at ¶¶ 49, 51, 55. Plaintiffs allege that by choosing the name CTM for his company, Banman intended to confuse Plaintiffs' customers into doing business with CTM. *Id.* ¶ 57. Banman did not inform Skye of his involvement with CTM until after his resignation. *Id.* at ¶ 52. Plaintiffs also allege that Banman had already begun soliciting and diverting Skye's customers and otherwise utilizing Skye's trade secrets while employed at Skye. Such activities also constitute a breach of the duty of loyalty. *See, e.g.*, *Huong Que*, 150 Cal. App. 4th at 417; *Am. Shooting Ctr., Inc. v. Secfor Int'l*, No. CV 13-1847 BTM (JMA), 2016 WL 1182745, at *7 (S.D. Cal. Mar. 28, 2016).

The SAC thus adequately alleges that Banman breached his duty of loyalty to Skye.

### 3.    Harm

Plaintiffs must also allege harm proximately caused by Banman's breach of duty. Throughout the SAC, Plaintiffs allege loss of profits, as well as damage to its goodwill and reputation, through Banman's use of the name CTM and utilization of Plaintiffs' trade secrets in CTM's business. SAC at ¶¶ 57, 236-37. Plaintiffs also point to Banman's role in soliciting Skye's salesmen, Seoane and Stumpe, whose sales declined precipitously—Seoane's sales declined by 76% from December 2019 to March 2020, and Stumpe's sales dove from $822,000 in 2018 to "non-existent" in 2020. SAC at ¶¶ 129, 109. The reduction in sales and loss of goodwill and reputation would not have occurred but for Banman's actions taken to divert

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-3444-DMG (PVCx)** | | Date | August 30, 2021 |
|---|---|---|---|---|

| Title | ***Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.*** | | Page | 10 of 10 |
|---|---|---|---|---|

Skye's business while ostensibly remaining Skye's employee.  Plaintiffs have sufficiently alleged harm.

Accordingly, the SAC states a plausible breach of duty of loyalty by Banman.  The MTD is **DENIED** as to Count 11 for breach of duty of loyalty.

### III.
### CONCLUSION

In light of the foregoing, Rogers' and Stumpe's motions to join are **GRANTED**.  [Doc. ## 69, 71.]  Defendants' Motion to Dismiss is **DENIED** as to Plaintiffs' RICO, conspiracy to violate RICO, and breach of duty of loyalty claims, and **GRANTED, with leave to amend**, as to Plaintiffs' breach of fiduciary duty claim.  [Doc. # 68.]

Plaintiffs shall file their Third Amended Complaint ("TAC"), or file a notice that they do not intend to amend the SAC, within 15 days after the date of this Order.  Defendants shall file their response within 21 days after the TAC is served, or within 15 days after they are notified of Plaintiffs' intent to proceed on the SAC.

**IT IS SO ORDERED**.