BLANK ROME LLP
Arash Beral (SBN 245219)
Arash.Beral@blankrome.com
Saam Takaloo (SBN 311598)
Saam.Takaloo@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendant
MIKE STUMPE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SKYE ORTHOBIOLOGICS, LLC, a Delaware Limited Liability Company; Human REGENERATIVE TECHNOLOGIES, LLC, a Delaware Limited Liability Company,<br><br>      Plaintiffs,<br><br>      v.<br><br>CTM BIOMEDICAL, LLC, a Delaware Limited Liability Corporation; BRYAN BANMAN, an individual; CTM MEDICAL, INC., a Delaware Corporation; VETERANS MEDICAL DISTRIBUTORS, INC., a Florida Corporation; GARDER ROGERS, an individual; MIKE STUMPE, an individual; PABLO SEOANE aka PAUL SEOANE, an individual; NATHAN BOULAIS, an individual; and DOES 3 through 10, inclusive,<br><br>      Defendants. | Case No. CV 20-cv-03444-MEMF-PVC<br><br>**DECLARATION OF ARASH BERAL IN SUPPORT OF DEFENDANT MIKE STUMPE'S PORTION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint Filed: April 14, 2020<br>Trial Date: April 17, 2023 |

160855.00601/129841949v.1

**DECLARATION OF ARASH BERAL**

# DECLARATION OF ARASH BERAL

I, Arash Beral, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California and the United States District Court for the Central District of California.  I am a partner with Blank Rome LLP, and counsel of record for Defendant Mike Stumpe ("Stumpe").  I have personal knowledge of the facts set forth in this declaration, and if called upon to testify under oath, I could and would competently do so.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of Plaintiff Skye Orthobiologics, LLC's ("Skye") amended responses to Stumpe's First Set of Interrogatories.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiff Human Regenerative Technologies, LLC's ("HRT," and collectively with Skye, "Plaintiffs") responses to Stumpe's First Set of Interrogatories.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of a relevant excerpt from the Deposition of Stumpe.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of a relevant excerpt from the Deposition of third-party Brian Floros.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of a relevant excerpt from the Deposition of Chris Sharp of Plaintiffs.

7.      Attached hereto as **Exhibit 6** is a true and correct copy of a relevant excerpt from the Deposition of Defendant Nathan Boulais.

8.      Attached hereto as **Exhibit 7** is a true and correct copy of Plaintiffs' document production bearing bates number SKYE/HRT 602887.

160855.00601/129841949v.1

1

**DECLARATION OF ARASH BERAL**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of November, 2022, in Los Angeles, California.


*/s/ Arash Beral*
ARASH BERAL

2

**DECLARATION OF ARASH BERAL**

# EXHIBIT 1

# ROSEN ✦ SABA, LLP

RYAN D. SABA, ESQ. (State Bar No. 192370)
rsaba@rosensaba.com
LAURA KELLY St. MARTIN (State Bar No. 260966)
lstmartin@rosensaba.com
9350 Wilshire Boulevard, Suite 250
Beverly Hills, California 90212
Telephone:    (310) 285-1727
Facsimile:    (310) 285-1728

Attorneys for Plaintiffs,
SKYE ORTHOBIOLOGICS, LLC and
HUMAN REGENERATIVE TECHNOLOGIES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYE ORTHOBIOLOGICS, LLC, a Delaware Limited Liability Company, HUMAN REGENERATIVE TECHNOLOGIES, LLC, a Delaware Limited Liability Company, <br><br> *Plaintiffs*, <br><br> v. <br><br> CTM BIOMEDICAL, LLC, a Delaware Limited Liability Corporation; BRYAN BANMAN, an individual; CTM MEDICAL, INC., a Delaware Corporation; VETERANS MEDICAL DISTRIBUTORS, INC.; a Florida Corporation; GARDNER ROGERS, an individual; MIKE STUMPE, an individual; PABLO SEOANE aka PAUL SEOANE, an individual; NATHAN BOULAIS, an individual, and DOES 3 through 10, inclusive, <br><br> *Defendants*. | Case No.: 2:20-cv-03444-MEMF-PVC <br> *Honorable Maame Ewusi-Mensah Frimpong* <br><br> **PLAINTIFF SKYE ORTHOBIOLOGICS, LLC'S AMENDED RESPONSES TO MIKE STUMPE'S FIRST SET OF INTERROGATORIES** <br><br> Complaint Filed:    April 23, 2020 <br> Trial Date:    None Set <br><br> **HIGHLY CONFIDENTIAL** |

1

PROPOUNDING PARTY:        Defendant, Mike Stumpe

RESPONDING PARTY:         Plaintiff, Skye Orthobiologics, LLC

SET NUMBER:               One

**TO DEFENDANT MIKE STUMPE AND HIS ATTORNEYS OF RECORD:**

Plaintiff Skye Orthobiologics, LLC ("Plaintiff"), hereby submits these amended responses to the Interrogatories, Set No. One, propounded by Defendant Mike Stumpe ("Defendant") under oath, as follows:

**PRELIMINARY STATEMENT**

These responses are made solely for the purpose of this action. Each answer is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and any and all other objections and grounds which would require the exclusion of any statement herein if the Interrogatories were asked of, or any statements contained herein were made by, a witness present and testifying in Court, all of which objections and grounds are reserved and may be interposed at the time of trial.

Plaintiff and its counsel have not yet completed their discovery or preparation for trial, nor have they completed their analysis, review or investigation of all evidence, applicable defenses, information, witness accounts or other trial preparation matters and subjects obtained or discovered to date. The within responses are, therefore, complete as to all presently known facts and information acquired or possessed by Plaintiff up to this time. These responses should, therefore, not be construed as prejudicing or waiving Plaintiff's right to provide additional facts, evidence, contentions or theories at trial or any subsequent hearing based upon information, evidence or analysis hereafter obtained or evaluated. Nothing in these responses should be construed as waiving any privileges or objections which may be applicable to information or evidence hereafter obtained.

Plaintiff further reserves the right to update and/or supplement these responses if and when information which is responsive to these interrogatories is discovered.

2

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby. The fact that Plaintiff has answered any Interrogatory should not be taken as an admission that Plaintiff accepts or admits the existence of any facts set forth or assumed by such Interrogatory, or that such response constitutes admissible evidence. The fact that Plaintiff has answered part or all of any Interrogatory is not intended and shall not be construed to be a waiver by Plaintiff of all or any part of any objection to any Interrogatory.

## GENERAL OBJECTIONS

1.    Plaintiff objects to the Interrogatories to the extent they seek information protected from disclosure by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or protection under statutory or common law.

2.    Plaintiff objects to the Interrogatories to the extent that they call for the disclosure of information protected by any of the parties' or third parties' constitutional right to privacy under the United States or California Constitutions, or protected as proprietary, commercially sensitive, trade secret or falling under the rubric of any other such confidentiality protection or privilege.

3.    Plaintiff objects to the Interrogatories to the extent that they seek information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

4.    Plaintiff objects to the Interrogatories to the extent that they are unlimited as to time or scope, and as a result, are overly broad and unduly burdensome.

5.    Highly Confidential:  Pursuant to the Court Order (DKT 108), this entire document is designated as "Highly Confidential".

///

///

3

**AMENDED RESPONSES TO INTERROGATORIES (SET ONE)**

**INTERROGATORY NO. 6:**

Identify and describe with particularity all of Skye's valid and prospective contractual relationships that Stumpe allegedly interfered with, as alleged in paragraph 173 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 6:**

Skye objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, Skye responds: The contracts, whether written, verbal or implied, with which Stumpe either interfered with himself and/or conspired with the other Defendants to interfere with include, but are not limited to those between Plaintiff and:

1. Matt Dripps
2. Andrew Hubbard
3. Eskenazi Hospital
4. Janos Ertl, MD.
5. Riverview Hospital
6. Indiana University Health
7. IU Ball Memorial
8. IU Health Ball Memorial Outpatient SC
9. IU Methodist Hospital
10. Community Health Network facilities (including Community Anderson Hospital, Community Hospital East, Community Hospital North, Community Hospital South, and Community Surgery Center – Hamilton)
11. Brian Badman, MD
12. Beltway Surgery Center

4

13. Carmel Ambulatory Surgery Center

14. Gerald Champion Regional Medical Center (GCRMC)

15. Columbus Specialty Surgery Center

16. Nicole R. Klein, MD

17. Layton Elliot, MD

18. Good Samaritan Medical Center (West Palm Beach)

19. Kelly Hiatt, MD

20. Stephen Wood

21. Jason Belohlavek

22. Garrett Amadon

23. John Anderson, MD

24. Brian Badman, MD

25. Erin Barnes

26. Beltway Surgery Center

27. BJ Benik

28. Jake Bergey

29. Robert Bibb

30. Nate Boulais

31. Broward Health Hospital

32. Maria Carey

33. Carle Clinic

34. Mark Ciaglia, DO MD

35. Dean Conway

36. Katey Deariso

37. James Demo

38. Gregg Dimery

39. Brian Floros

40. Brian Houghton



SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

41. JFK Medical Center

42. Matt Locus

43. Walt Lowe, MD

44. Dave McGrew

45. Memorial Hermann

46. Methodist Sports Medicine

47. Todd E. Midla, MD

48. Tommy Miller

49. Daniel Mirenda

50. Bill Morgan

51. Lisa Robinson

52. Brett Schlifka, MD

53. Senate Street Surgery Center

54. Skyway Surgery Center

55. Jeremy Smith

56. Southern New Mexico Surgery Center

57. St. Lukes Springwood Village Hospital

58. St. Luke's Woodlands

59. University of Indiana

60. Witham Hospital

61. Veterans Administration National Acquisition Center

62. Witham Hospital

**AMENDED RESPONSE TO INTERROGATORY NO. 6:**

Skye objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, Skye responds: The contracts, whether written, verbal or

6

implied, with which Stumpe either interfered with himself and/or conspired with the other Defendants to interfere with include, but are not limited to those between Plaintiff and:

1. Matt Dripps
2. Andrew Hubbard
3. Eskenazi Hospital
4. Janos Ertl, MD.
5. Riverview Hospital
6. Indiana University Health
7. IU Ball Memorial
8. IU Health Ball Memorial Outpatient SC
9. IU Methodist Hospital
10. Community Health Network facilities (including Community Anderson Hospital, Community Hospital East, Community Hospital North, Community Hospital South, and Community Surgery Center – Hamilton)
11. Brian Badman, MD
12. Beltway Surgery Center
13. Carmel Ambulatory Surgery Center
14. Gerald Champion Regional Medical Center (GCRMC)
15. Columbus Specialty Surgery Center
16. Nicole R. Klein, MD
17. Layton Elliot, MD
18. Good Samaritan Medical Center (West Palm Beach)
19. Kelly Hiatt, MD
20. Garrett Amadon
21. John Anderson, MD
22. Erin Barnes
23. Beltway Surgery Center
24. BJ Benik

7

25. Jake Bergey

26. Robert Bibb

27. Nate Boulais

28. Broward Health Hospital

29. Maria Carey

30. Mark Ciaglia, DO MD

31. Dean Conway

32. Katey Deariso

33. James Demo

34. Gregg Dimery

35. Brian Floros

36. Brian Houghton

37. JFK Medical Center

38. Todd E. Midla, MD

39. Tommy Miller

40. Daniel Mirenda

41. Bill Morgan

42. Lisa Robinson

43. Brett Schlifka, MD

44. Senate Street Surgery Center

45. Skyway Surgery Center

46. Jeremy Smith

47. Southern New Mexico Surgery Center

48. St. Luke's Springwood Village Hospital

49. St. Luke's Woodlands

50. University of Indiana

51. Veterans Administration National Acquisition Center

52. Union Hospital-IN



SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

53. Wabash Valley Surgery Center

54. James Kerpsack, MD

55. Keith Flak, MD

56. Kyle Clark

57. Chad Galloway

58. Alex Wrinkles

59. Scott Taylor, MD

60. Michael Baker, MD

61. Travis Clegg, MD

62. James Boone

**INTERROGATORY NO.7 (sic) 7-67:**

For each relationship identified in response to Interrogatory No. 6, state all facts Concerning how Stumpe allegedly interfered with such relationship.

**RESPONSE TO INTERROGATORY NO. 7 (sic) 7-67:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, Skye responds:

7.    Matt Dripps

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Dripps to stop selling Skye's products while still under his agreement with Skye,

9

and to "wait" until CTM was up and running and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

8.    Andrew Hubbard

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Hubbard to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

9.    Eskenazi Hospital

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer information to target Skye's high volume customer Eskenazi Hospital, as early as May 2018, and convince it to replace Skye products with CTM products.

10.    Janos Ertl, MD.

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer and physician information to target Janos Ertl, MD, as early as May 2018, and convince him to replace Skye products with CTM products and in fact provide studies and additional information to CTM, when he was doing the same for Skye.

11.    Riverview Hospital

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer information to target Riverview Hospital, as early as May 2018, and convince it to replace Skye products with CTM products.

12.    Indiana University Health

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target and convince a prominent figure at IU Saxony Surgery Center to replace Skye products with

10

CTM products, and then  to then convince additional IU facilities to switch from Skye to CTM products.

13.    IU Ball Memorial

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target and convince a prominent figure at IU Saxony Surgery Center to replace Skye products with CTM products, and then  to then convince additional IU facilities to switch from Skye to CTM products.

14.    IU Health Ball Memorial Outpatient SC

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target and convince a prominent figure at IU Saxony Surgery Center to replace Skye products with CTM products, and then  to then convince additional IU facilities to switch from Skye to CTM products.

15.    IU Methodist Hospital

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target and convince a prominent figure at IU Saxony Surgery Center to replace Skye products with CTM products, and then  to then convince additional IU facilities to switch from Skye to CTM products.

16.    Community Health Network facilities (including Community Anderson Hospital, Community Hospital East, Community Hospital North, Community Hospital South, and Community Surgery Center – Hamilton)

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information, while representing to Skye that he was acting in Skye's best interest in order to acquire that information, to "undercut" Skye and "convert community without making it look like Nate and I are a part of it", and then concealing information from Skye.

11

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

17.    Brian Badman, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing, customer contact information, and physician information to target Dr. Badman, who had been using Skye products, and convince him to replace those products with those sold by CTM at facilities including IU Health.

18.    Beltway Surgery Center

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer contact information to target Beltway Surgery Center and convince it to replace the Skye products they had been using with CTM products.

19.    Carmel Ambulatory Surgery Center

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer contact information to target Carmel Ambulatory Surgery Center and convince it to replace Skye products with CTM products

20.    Gerald Champion Regional Medical Center (GCRMC)

a.    In or around July 2018, Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's trade secret customer and physician information, including contact information, preferences, and order history, to target Dr. John Anderson. They contacted Dr. Anderson and convinced him to replace Skye's products, which he had been steadily using, with products purchased from CTM. Banman then contacted John Hudson, the Director of Materials Management for GCRMC, who is ultimately responsible for making purchase orders for GCRMC and convinced him that Dr. Anderson requested that he purchase CTM products to replace Plaintiff's products.

///

12

21.    Columbus Specialty Surgery Center

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target Columbus Specialty Surgery Center Hospitals in the Community Health Network and convince them to replace Skye products with CTM products.

22.    Nicole R. Klein, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing, customer contact information, and physician information to target Dr. Klein, who had been using Skye products, and convince her to replace those products with those sold by CTM at facilities including IU Health.

23.    Layton Elliot, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing, customer contact information, and physician information to target Dr. Elliot, who had been using Skye products, and convince her to replace those products with those sold by CTM at facilities.

24.    Good Samaritan Medical Center (West Palm Beach)

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target Good Samaritan Medical Center and convince it to replace Skye products with CTM products.

25.    Kelly Hiatt, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer and physician information to target Hiatt MD and convince her to replace Skye products with CTM products and in fact provide studies and additional information to CTM, when she was doing the same for Skye.

**AMENDED RESPONSE TO INTERROGATORY NO. 7 (sic) 7-67:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now

13

exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, Skye responds:

7.    Matt Dripps

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Dripps to stop selling Skye's products while still under his agreement with Skye, and to "wait" until CTM was up and running and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

8.    Andrew Hubbard

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Hubbard to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

9.    Eskenazi Hospital

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer information to target Skye's high volume customer Eskenazi Hospital, as early as May 2018, and convince it to replace Skye products with CTM products.

10.    Janos Ertl, MD.

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer and physician information to target Janos Ertl, MD, as early as May 2018, and convince him to replace Skye products with CTM products and in fact provide studies and additional information to CTM, when he was doing the same for Skye.

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

11.    Riverview Hospital

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer information to target Riverview Hospital, as early as May 2018, and convince it to replace Skye products with CTM products.

12.    Indiana University Health

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target and convince a prominent figure at IU Saxony Surgery Center to replace Skye products with CTM products, and then  to then convince additional IU facilities to switch from Skye to CTM products.

13.    IU Ball Memorial

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target and convince a prominent figure at IU Saxony Surgery Center to replace Skye products with CTM products, and then  to then convince additional IU facilities to switch from Skye to CTM products.

14.    IU Health Ball Memorial Outpatient SC

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target and convince a prominent figure at IU Saxony Surgery Center to replace Skye products with CTM products, and then  to then convince additional IU facilities to switch from Skye to CTM products.

15.    IU Methodist Hospital

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target and convince a prominent figure at IU Saxony Surgery Center to replace Skye products with

15

CTM products, and then  to then convince additional IU facilities to switch from Skye to CTM products.

16.     Community Health Network facilities (including Community Anderson Hospital, Community Hospital East, Community Hospital North, Community Hospital South, and Community Surgery Center – Hamilton)

a.     Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information, while representing to Skye that he was acting in Skye's best interest in order to acquire that information, to "undercut" Skye and "convert community without making it look like Nate and I are a part of it", and then concealing information from Skye.

17.     Brian Badman, MD

a.     Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing, customer contact information, and physician information to target Dr. Badman, who had been using Skye products, and performing studies for Skye, and convince him to replace those products with those sold by CTM at facilities including IU Health.

18.     Beltway Surgery Center

a.     Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer contact information to target Beltway Surgery Center and convince it to replace the Skye products they had been using with CTM products.

19.     Carmel Ambulatory Surgery Center

a.     Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer contact information to target Carmel Ambulatory Surgery Center and convince it to replace Skye products with CTM products

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

20.     Gerald Champion Regional Medical Center (GCRMC)

a.     In or around July 2018, Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's trade secret customer and physician information, including contact information, preferences, and order history, to target Dr. John Anderson. They contacted Dr. Anderson and convinced him to replace Skye's products, which he had been steadily using, with products purchased from CTM.  Banman then contacted John Hudson, the Director of Materials Management for GCRMC, who is ultimately responsible for making purchase orders for GCRMC and convinced him that Dr. Anderson requested that he purchase CTM products to replace Plaintiff's products.

21.     Columbus Specialty Surgery Center

a.     Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target Columbus Specialty Surgery Center Hospitals in the Community Health Network and convince them to replace Skye products with CTM products.

22.     Nicole R. Klein, MD

a.     Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing, customer contact information, and physician information to target Dr. Klein, who had been using Skye products, and convince her to replace those products with those sold by CTM at facilities including IU Health.

23.     Layton Elliot, MD

a.     Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing, customer contact information, and physician information to target Dr. Elliot, who had been using Skye products, and convince her to replace those products with those sold by CTM at facilities.

24.     Good Samaritan Medical Center (West Palm Beach)

a.     Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing and customer information to target Good Samaritan Medical Center and convince it to replace Skye products with CTM products.

17

25.    Kelly Hiatt, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer and physician information to target Hiatt MD and convince her to replace Skye products with CTM products and in fact provide studies and additional information to CTM, when she was doing the same for Skye.

26.    Garrett Amadon

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Amadon to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

27.    Erin Barnes

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Barnes to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

28.    Beltway Surgery Center

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Beltway Surgery Center, as early as May 2018, and convince it to replace Skye products with CTM products.

29.    BJ Benik

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Benik to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

30.    Jake Bergey

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Bergey to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

31.    Robert Bibb

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Bibb to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

32.    Nate Boulais

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Boulais to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

33.    Broward Health Hospital

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Broward Health Hospital, as early as May 2018, and convince it to replace Skye products with CTM products

34.    Maria Carey

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Carey to stop selling Skye's products while still under her agreement with Skye,

19

and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

35.    Mark Ciaglia, DO MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer and physician information to target Mark Ciaglia, DO MD, as early as May 2018, and convince him to replace Skye products with CTM products and in fact provide studies and additional information to CTM, when he was doing the same for Skye.

36.    Dean Conway

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Conway to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

37.    Katey Deariso

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Deariso to stop selling Skye's products while still under her agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

38.    James Demo

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Demo to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

///

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

39.    Gregg Dimery

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Dimery to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

40.    Brian Floros

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Floros to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

41.    Brian Houghton

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Houghton to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

42.    JFK Medical Center

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer JFK Medical Center, as early as May 2018, and convince it to replace Skye products with CTM products.

43.    Todd E. Midla, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing, customer contact information, and physician information to target Todd E. Midla, MD, who had been using Skye products, and convince him to replace those products with those sold by CTM at facilities.

21

44.    Tommy Miller

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Miller to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

45.    Daniel Mirenda

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Mirenda to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

46.    Bill Morgan

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Morgan to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

47.    Lisa Robinson

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Robinson to stop selling Skye's products while still under her agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

48.    Brett Schlifka, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer and physician information to target Brett Schlifka, MD, as early as May 2018, and convince him to replace Skye products

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

with CTM products and in fact provide studies and additional information to CTM, when he was doing the same for Skye.

49.  Senate Street Surgery Center

a.  Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Senate Street Surgery Center, as early as May 2018, and convince it to replace Skye products with CTM products.

50.  Skyway Surgery Center

a.  Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Skyway Surgery Center, as early as May 2018, and convince it to replace Skye products with CTM products.

51.  Jeremy Smith

a.  Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Smith to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

52.  Southern New Mexico Surgery Center

a.  Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Skyway Surgery Center, as early as May 2018, and convince it to replace Skye products with CTM products.

53.  St. Lukes Springwood Village Hospital

a.  Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Skyway Surgery Center, as early as May 2018, and convince it to replace Skye products with CTM products.

23



54.    St. Luke's Woodlands

   a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Skyway Surgery Center, as early as May 2018, and convince it to replace Skye products with CTM products.

55.    University of Indiana

   a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Skyway Surgery Center, as early as May 2018, and convince it to replace Skye products with CTM products.

56.    Veterans Administration National Acquisition Center

   a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Skyway Surgery Center, as early as May 2018, and convince it to replace Skye products with CTM products.

57.    Union Hospital-IN

   a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Skyway Surgery Center, as early as May 2018, and convince it to replace Skye products with CTM products.

58.    Wabash Valley Surgery Center

   a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing, order history, and customer information to target Skye's customer Skyway Surgery Center, as early as May 2018, and convince it to replace Skye products with CTM products.

59.    James Kerpsack, MD

   a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing, customer contact information, and

24

physician information to target James Kerpsack, MD, who had been using Skye products, and convince him to replace those products with those sold by CTM at facilities.

60.    Keith Flak, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer and physician information to target Keith Flak, MD as early as May 2018, and convince him to replace Skye products with CTM products and provide studies and additional information to CTM, when he was doing the same for Skye.

61.    Kyle Clark

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Clark to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

62.    Chad Galloway

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Galloway to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

63.    Alex Wrinkles

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Wrionkles to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

///

25

64.    Scott Taylor, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing, customer contact information, and physician information to target Scott Taylor, MD, who had been using Skye products, and convince him to replace those products with those sold by CTM at facilities.

65.    Michael Baker, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants to use Skye's misappropriated trade secret pricing, customer contact information, and physician information to target Michael Baker, MD, who had been using Skye products, and convince him to replace those products with those sold by CTM at facilities.

66.    Travis Clegg, MD

a.    Stumpe conspired with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret pricing and customer and physician information to target Travis Clegg, MD as early as May 2018, and convince him to replace Skye products with CTM products and provide studies and additional information to CTM, when he was doing the same for Skye.

67.    James Boone

a.    Stumpe, conspiring with Banman, Boulais and the other Defendants, to use Skye's misappropriated trade secret sales representative information to target and convince Boone to stop selling Skye's products while still under his agreement with Skye, and then, ultimately, to leave Skye to go work for CTM, and to convince Skye customers to replace Skye products with CTM products.

**INTERROGATORY NO. 8 (sic) 68:**

Identify and describe in detail the "confidential information" that Stumpe allegedly misappropriated.

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

**RESPONSE TO INTERROGATORY NO. 8 (sic) 68:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 8 (sic) 68:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, Skye responds as follows:

Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health. Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to

27

Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 9 (sic) 69:**

For each piece of "confidential information" identified in response to Interrogatory No. 8, describe with particularity how Stumpe misappropriated it.

**RESPONSE TO INTERROGATORY NO. 9 (sic) 69:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 9 (sic) 69:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Without waiving these objections, Skye responds as follows:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures,

Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health.  Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 10 (sic) 70:**

Identify and describe in detail the "trade secrets" that Stumpe allegedly misappropriated.

**RESPONSE TO INTERROGATORY NO. 10 (sic) 70:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now

29

exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY 10 (sic) 70:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Without waiving these objections, Skye responds as follows:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health.  Stumpe also

30

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 11 (sic) 71:**

For each "trade secret" identified in response to Interrogatory No. 10, describe with particularity how Stumpe misappropriated it.

**RESPONSE TO INTERROGATORY NO. 11 (sic) 71:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 11 (sic) 71:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, Skye responds as follows:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used

31

and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health. Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 12 (sic) 72:**

State all facts Concerning the allegation in paragraph 192 of the Complaint that Stumpe is "using certain of [Skye's] trade secrets to develop and manufacture competing human allograft tissue products."

32

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

**RESPONSE TO INTERROGATORY NO. 12 (sic) 72:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 12 (sic) 72:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, Skye responds as follows:

Skye does not allege that Stumpe was involved in the scheme to manufacture competing products using Skye and HRT's trade secrets.

**INTERROGATORY NO. 13 (sic) 73:**

Identify all products that Stumpe allegedly manufactured using "[Skye's] product design and formulations," as alleged in paragraph 192 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 13 (sic) 73:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure,

Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

## AMENDED RESPONSE TO INTERROGATORY NO. 13 (sic) 73:

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, Skye responds as follows:

Skye does not allege that Stumpe was involved in the scheme to manufacture competing products using Skye and HRT's trade secrets.

## INTERROGATORY NO. 14 (sic) 74:

State all facts Concerning Stumpe's use of "[Skye's] trade secrets" to "interfere with [Skye's] legitimate business interests," as alleged in paragraph 193 of the Complaint.

## RESPONSE TO INTERROGATORY NO. 14 (sic) 74:

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

**AMENDED RESPONSE TO INTERROGATORY NO. 14 (sic) 74:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, Skye responds as follows:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not

35

limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health. Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 15 (sic) 75:**

State all facts Concerning Stumpe's use of "[Skye's] trade secrets" to "interfere with [Skye's] ... valid contracts," as alleged in paragraph 193 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 15 (sic) 75:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 15 (sic) 75:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, Skye responds as follows:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business

to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health. Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 16 (sic) 76:**

State all facts Concerning Stumpe's use of "[Skye's] trade secrets" to "interfere with [Skye's] prospective economic advantages," as alleged in paragraph 193 of the Complaint.

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

**RESPONSE TO INTERROGATORY NO. 16 (sic) 76:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 16 (sic) 76:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, Skye responds as follows:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health.  Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 17 (sic) 77:**

Identify all of Skye's product inventory that was given to Stumpe on a consignment basis, which Skye alleges has not been returned, including stock numbers, model numbers, model names, and/or other identifiers, along with a description of each piece of inventory.

**RESPONSE TO INTERROGATORY NO. 17 (sic) 77:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Skye will not respond to this interrogatory.

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

**AMENDED RESPONSE TO INTERROGATORY NO. 17 (sic) 77:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, Skye responds as follows: *See,* SKYE/HRT 602887.

**INTERROGATORY NO. 18 (sic) 78:**

For each piece of product inventory identified in response to Interrogatory No. 17, state all facts Concerning Stumpe's alleged refusal to return such inventory to Skye.

**RESPONSE TO INTERROGATORY NO. 18 (sic) 78:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 18 (sic) 78:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the

preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Without waiving these objections, Skye responds as follows:  Skye has repeatedly requested return of the inventory and has not received it.

**INTERROGATORY NO. 19 (sic) 79:**

State all facts Concerning Stumpe's alleged interference with Skye's possession of "certain inventory," as alleged in paragraph 227 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 19 (sic) 79:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 19 (sic) 79:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Without waiving these objections, Skye responds as follows:  Skye has repeatedly requested return of the inventory and has not received it.

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

**INTERROGATORY NO. 20 (sic) 80:**

State all facts Concerning Skye's inventory allegedly in Stumpe's possession being valued in excess of $200,000.

**RESPONSE TO INTERROGATORY NO. 20 (sic) 80:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 20 (sic) 80:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Without waiving these objections, Skye responds as follows:  *See,* SKYE/HRT 602887.

**INTERROGATORY NO. 21 (sic) 81:**

Identify each and every economic relationship between Skye and any other person or entity that probably would have resulted in an economic benefit to Skye, with which Stumpe allegedly intentionally interfered, including the date that each such relationship began, the parties to such relationships, and the subject matter of each such relationship.

42

**RESPONSE TO INTERROGATORY NO. 21 (sic) 81:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 21 (sic) 81:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Without waiving these objections, Skye responds as follows:  *See,* Response to Interrogatory No. 6.

**INTERROGATORY NO. 22 (sic) 82:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts Concerning Skye's contention that Stumpe knew of such economic relationship.

**RESPONSE TO INTERROGATORY NO. 22 (sic) 82:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the

43

preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 22 (sic) 82:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, Skye responds as follows:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise. Stumpe had personal knowledge of customer, physician, and sales representative trade secret information and wrongfully disclosed/used that information to further the conspiracy or Stumpe wrongfully acquired knowledge of such information through the conspiracy.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the

44

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

**INTERROGATORY NO. 23 (sic) 83:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts Concerning Stumpe's alleged conduct that disrupted such relationship, including, without limitation, the name of the individual engaging in such alleged conduct and the date(s) on which such alleged conduct occurred.

**RESPONSE TO INTERROGATORY NO. 23 (sic) 83:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 23 (sic) 83:**

Skye objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, Skye responds:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business

45

to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health.  Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 24 (sic) 84:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts Concerning Stumpe's alleged Wrongful Conduct, including, without limitation, the name of the individual engaging in such alleged conduct and the date(s) on which such alleged conduct occurred.

46

**RESPONSE TO INTERROGATORY NO. 24 (sic) 84:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  Skye will not respond to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 24 (sic) 84:**

Skye objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT  (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, Skye responds:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals

was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health. Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 25 (sic) 85:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts supporting Skye's contention that Stumpe intended to disrupt such economic relationship, or knew that disruption of such economic relationship was certain or substantially certain to occur.

**RESPONSE TO INTERROGATORY NO. 25 (sic) 85:**

Skye objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of 25 interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1). Skye also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Skye will not respond to this interrogatory.

**AMENDED RESPONSE TO INTERROGATORY NO. 25 (sic) 85:**

Skye objects to this Interrogatory in that a response would require the preparation of

48

a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, Skye responds:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health. Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

DATED:  May 22, 2022                          ROSEN ✧ SABA, LLP

By:   /s Ryan D. Saba
Ryan D. Saba, Esq.
Laura Kelly St. Martin, Esq.
Attorneys for Plaintiffs
SKYE ORTHOBIOLOGICS, LLC and
HUMAN REGENERATIVE
TECHNOLOGIES, LLC

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

## PROOF OF SERVICE

| STATE OF CALIFORNIA | ) | |
|---|---|---|
| | ) | ss |
| COUNTY OF LOS ANGELES | ) | |

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 9350 Wilshire Boulevard, Suite 250, Beverly Hills, California 90212.

On **May 22, 2022**, I served the foregoing document described as: **PLAINTIFF SKYE ORTHOBIOLOGICS, LLC'S RESPONSES TO MIKE STUMPE'S INTERROGATORIES, (SET ONE)** on the interested parties in this action b as follows:

| | |
|---|---|
| **YUKEVICH \| CAVANAUGH**<br>TODD CAVANAUGH, Esq.<br>355 S Grand Ave 15th Floor<br>Los Angeles, CA 90071 | Attorneys for Defendants GARDNER ROGERS and VETERANS MEDICAL DISTRIBUTORS, INC.<br><br>Tel: (213) 362-7777<br>Fax: (213) 362-7788<br><br>Email: tcavanaugh@yukelaw.com |
| **HODGSON RUSS LLP**<br>ROBERT J. FLUSKEY, JR.<br>MATTHEW K. PARKER<br>The Guaranty Building<br>140 Pearl Street, Suite 100<br>Buffalo, New York 14202 | Attorneys for Defendants BRYAN BANMAN, CTM BIOMEDICAL, LLC, and PABLO SEOANE aka PAUL SEOANE<br><br>Tel: (716) 856-4000<br>Fax: (716) 849-0349<br><br>Email: rfluskey@hodgsonruss.com<br>Email: mparker@hodgsonruss.com |
| **HENNELLY & GROSSFELD LLP**<br>THOMAS H. CASE, ESQ.<br>PAUL T. MARTIN, ESQ.<br>Marina Towers North<br>4640 Admiralty Way #850<br>Marina Del Rey, CA 90292 | Attorneys for Defendants BRYAN BANMAN, CTM BIOMEDICAL, LLC, and PABLO SEOANE aka PAUL SEOANE<br><br>Tel: (310) 305-2100<br>Fax: (310) 305-2116<br><br>Email: tcase@hgla.com<br>Email: pmartin@hgla.com |

51

SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

| ARASH BERAL, ESQ.<br>SAAM TAKALOO, ESQ.<br>**BLANK ROME LLP**<br>2029 Century Park East, 6th Floor<br>Los Angeles, CA 90067 | Attorneys for: Defendant<br>Mike Stumpe<br><br>Tel: 424.239.3400<br>Fax: 424.239.3434<br><br>aberal@blankrome.com<br>saam.takaloo@blankrome.com |
|---|---|
| Michael R. Williams, Esq.<br>Carlos A. Nevarez, Esq.<br>BIENERT KATZMAN LITTRELL WILLIAMS, LLP<br>903 Calle Amanecer, Suite 350<br>San Clemente, CA  92673 | Attorneys for Defendant,<br>Nathan Boulais<br><br>Tel: (949) 369-3700<br><br>mwilliams@bklwlaw.com<br>cnevarez@bklwlaw.com |

BY E-MAIL OR ELECTRONIC TRANSMISSION - I caused the document(s) described above to be sent from e-mail address lstmartin@rosensaba.com to the persons at the e-mail address listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[X]    FEDERAL   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.  I also declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **May 22, 2022**, at Beverly Hills, California.

_____/s/ Laura St. Martin_____
Laura St. Martin

52
SKYE'S AMENDED RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

# EXHIBIT 2

ROSEN ✧ SABA, LLP
RYAN D. SABA, ESQ. (State Bar No. 192370)
rsaba@rosensaba.com
LAURA KELLY St. MARTIN (State Bar No. 260966)
lstmartin@rosensaba.com
9350 Wilshire Boulevard, Suite 250
Beverly Hills, California 90212
Telephone:    (310) 285-1727
Facsimile:    (310) 285-1728

Attorneys for Plaintiffs,
SKYE ORTHOBIOLOGICS, LLC and
HUMAN REGENERATIVE TECHNOLOGIES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYE ORTHOBIOLOGICS, LLC, a Delaware Limited Liability Company, HUMAN REGENERATIVE TECHNOLOGIES, LLC, a Delaware Limited Liability Company,<br><br>*Plaintiffs*,<br><br>v.<br><br>CTM BIOMEDICAL, LLC, a Delaware Limited Liability Corporation; BRYAN BANMAN, an individual; CTM MEDICAL, INC., a Delaware Corporation; VETERANS MEDICAL DISTRIBUTORS, INC.; a Florida Corporation; GARDNER ROGERS, an individual; MIKE STUMPE, an individual; PABLO SEOANE aka PAUL SEOANE, an individual; NATHAN BOULAIS, an individual, and DOES 3 through 10, inclusive,<br><br>*Defendants*. | Case No.: 2:20-cv-03444-MEMF-PVC<br>*Honorable Maame Ewusi-Mensah Frimpong*<br><br>**PLAINTIFF HUMAN REGENERATIVE TECHNOLOGIES, LLC'S RESPONSES TO MIKE STUMPE'S FIRST SET OF INTERROGATORIES**<br><br>Complaint Filed:   April 23, 2020<br>Trial Date:   None Set<br><br>**HIGHLY CONFIDENTIAL** |



HRT'S RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

PROPOUNDING PARTY:        Defendant, Mike Stumpe

RESPONDING PARTY:         Plaintiff, Human Regenerative Technologies, LLC

SET NUMBER:               One

**TO DEFENDANT CTM BIOMEDICAL, LLC AND ITS ATTORNEYS OF RECORD:**

Plaintiff Human Regenerative Technologies, LLC ("Plaintiff"), hereby submits these amended responses to the Interrogatories, Set No. One, propounded by Defendant Mike Stumpe ("Defendant") under oath, as follows:

**PRELIMINARY STATEMENT**

These responses are made solely for the purpose of this action. Each answer is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and any and all other objections and grounds which would require the exclusion of any statement herein if the Interrogatories were asked of, or any statements contained herein were made by, a witness present and testifying in Court, all of which objections and grounds are reserved and may be interposed at the time of trial.

Plaintiff and its counsel have not yet completed their discovery or preparation for trial, nor have they completed their analysis, review or investigation of all evidence, applicable defenses, information, witness accounts or other trial preparation matters and subjects obtained or discovered to date. The within responses are, therefore, complete as to all presently known facts and information acquired or possessed by Plaintiff up to this time. These responses should, therefore, not be construed as prejudicing or waiving Plaintiff's right to provide additional facts, evidence, contentions or theories at trial or any subsequent hearing based upon information, evidence or analysis hereafter obtained or evaluated. Nothing in these responses should be construed as waiving any privileges or objections which may be applicable to information or evidence hereafter obtained.

Plaintiff further reserves the right to update and/or supplement these responses if

2

and when information which is responsive to these interrogatories is discovered.

Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby. The fact that Plaintiff has answered any Interrogatory should not be taken as an admission that Plaintiff accepts or admits the existence of any facts set forth or assumed by such Interrogatory, or that such response constitutes admissible evidence. The fact that Plaintiff has answered part or all of any Interrogatory is not intended and shall not be construed to be a waiver by Plaintiff of all or any part of any objection to any Interrogatory.

## GENERAL OBJECTIONS

1.    Plaintiff objects to the Interrogatories to the extent they seek information protected from disclosure by the attorney-client privilege, attorney work product doctrine or any other applicable privilege or protection under statutory or common law.

2.    Plaintiff objects to the Interrogatories to the extent that they call for the disclosure of information protected by any of the parties' or third parties' constitutional right to privacy under the United States or California Constitutions, or protected as proprietary, commercially sensitive, trade secret or falling under the rubric of any other such confidentiality protection or privilege.

3.    Plaintiff objects to the Interrogatories to the extent that they seek information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

4.    Plaintiff objects to the Interrogatories to the extent that they are unlimited as to time or scope, and as a result, are overly broad and unduly burdensome.

5.    Highly Confidential:  Pursuant to the Court Order (DKT 108), this entire document is designated as "Highly Confidential".

///

3

## INTERROGATORIES (SET ONE)

**INTERROGATORY NO. 1:**

State all facts Concerning Stumpe's involvement in an "enterprise" that engaged in a "pattern of racketeering activity," "Beginning in at least April 2018," as alleged in paragraph 164 of the Complaint.

**RESPONSE TO INTERROGATORY NO.1:**

HRT objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, HRT responds:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers,

HRT'S RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

and physicians, in strict confidence.

**INTERROGATORY NO. 2:**

Identify and describe with particularity all "criminal activities" Skye alleges that Stumpe carried out or participated in.

**RESPONSE TO INTERROGATORY NO. 2:**

HRT objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, HRT responds:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers,

HRT'S RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health.  Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 3:**

State all facts Concerning Stumpe's involvement in conduct with an "unlawful purpose of directing [Skye's] business to CTM," as alleged in paragraph 165 of the complaint.

**RESPONSE TO INTERROGATORY NO. 3:**

HRT objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT  (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, HRT responds:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other

6

conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health.  Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

**INTERROGATORY NO. 4:**

State all facts Concerning Stumpe's funneling of "unlawful sums of money" to himself, as alleged in paragraph 165 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 4:**

HRT objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT  (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, HRT responds:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures,

Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health. Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach their agreements with Skye and then to ultimately leave Skye to work for CTM.

All payments Stumpe received relating to his connection to CTM qualify as unlawful sums of money.

**INTERROGATORY NO. 5:**

Describe with particularity how Stumpe allegedly interfered with interstate commerce, as alleged in paragraph 167 of the Complaint.

8

**RESPONSE TO INTERROGATORY NO. 5:**

HRT objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving its objections, HRT responds:

Stumpe conspired with Nate Boulais, Bryan Banman, Seoane, and Rogers in the formation and/or operations of CTM for the unlawful purpose of directing Skye's business to CTM and funneling unlawful sums of money to themselves. Stumpe acquired, used and/or disseminated Skye's sales representative agreement and commission structures, Skye's product pricing and reimbursement coding, Skye's customers and customer contacts, Skye's marketing language, materials, and practices, Skye's sales training methods, Skye's loyal physician customers, and Skye's business agreements in order to direct his efforts at interfering with (*i.e.*, "flipping" or "switching") and specifically targeting Skye's established sales representatives and customers, including interfering with contracts and future business opportunities. Stumpe coordinated with the other conspirators in order to further the collective objective of the enterprise.

Stumpe engaged in these acts and in the conspiracy while he was still under his confidentiality and contractual obligations to Skye and HRT, when he knew that the information he was using and/or disclosing in furtherance of the enterprise's unlawful goals was to be kept confidential, and when Stumpe knew that the other named Defendants had similar confidentiality obligations to keep the trade secret information regarding Skye's products, pricing, marketing materials, sales representatives, customers, and physicians, in strict confidence.

Stumpe used trade secret information relating to Skye's product pricing, customer lists and contacts at facilities and with physician customers of Skye's including, but not limited to: Dr. Ertl, Eskenazi Hospital, Dr. Brian Badman and IU Health. Stumpe also wrongfully acquired, disclosed and/or used confidential trade secret information relating to Skye's sales representatives to target and convince Skye's sale representatives to breach

HRT'S RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

their agreements with Skye and then to ultimately leave Skye to work for CTM.

Stumpe conspired to misappropriate trade secrets and interfere with the sale of products across several states including California, Florida, Texas, Indiana, and Pennsylvania, as well as the interference with national sales of products to the National Acquisition Center of the Veterans Administration.

**INTERROGATORY NO. 6:**

Identify and describe with particularity all of HRT's valid and prospective contractual relationships that Stumpe allegedly interfered with, as alleged in paragraph 173 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 6:**

HRT does not allege that Stumpe interfered with its valid and/or prospective contractual relationships.

**INTERROGATORY NO.7:**

For each relationship identified in response to Interrogatory No. 6, state all facts Concerning how Stumpe allegedly interfered with such relationship.

**RESPONSE TO INTERROGATORY NO. 7:**

HRT does not allege that Stumpe interfered with its valid and/or prospective contractual relationships.

**INTERROGATORY NO. 8:**

Identify and describe in detail the "confidential information" that Stumpe allegedly misappropriated.



HRT'S RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

**RESPONSE TO INTERROGATORY NO. 8:**

HRT does not allege that Stumpe misappropriated any of its confidential information.

**INTERROGATORY NO. 9:**

For each piece of "confidential information" identified in response to Interrogatory No. 8, describe with particularity how Stumpe misappropriated it.

**RESPONSE TO INTERROGATORY NO. 9:**

HRT does not allege that Stumpe misappropriated any of its confidential information.

**INTERROGATORY NO. 10:**

Identify and describe in detail the "trade secrets" that Stumpe allegedly misappropriated.

**RESPONSE TO INTERROGATORY NO. 10:**

HRT does not allege that Stumpe misappropriated any of its trade secrets.

**INTERROGATORY NO. 11:**

For each "trade secret" identified in response to Interrogatory No. 10, describe with particularity how Stumpe misappropriated it.

**RESPONSE TO INTERROGATORY NO. 11:**

HRT does not allege that Stumpe misappropriated any of its trade secrets.

///

11

**INTERROGATORY NO. 12:**

State all facts Concerning the allegation in paragraph 192 of the Complaint that Stumpe is "using certain of [HRT's] trade secrets to develop and manufacture competing human allograft tissue products."

**RESPONSE TO INTERROGATORY NO. 12:**

HRT does not allege that Stumpe is "using certain of [HRT's] trade secrets to develop and manufacture competing human allograft tissue products."

**INTERROGATORY NO. 13:**

Identify all products that Stumpe allegedly manufactured using "[HRT's] product design and formulations," as alleged in paragraph 192 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 13:**

HRT does not allege that Stumpe manufactured products.

**INTERROGATORY NO. 14:**

State all facts Concerning Stumpe's use of "[HRT's] trade secrets" to "interfere with [Skye's] legitimate business interests," as alleged in paragraph 193 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 14:**

HRT does not allege that Stumpe used HRT's trade secrets to interfere with Skye's business interests, but he did misappropriate Skye's trade secrets.

**INTERROGATORY NO. 15:**

State all facts Concerning Stumpe's use of "[Skye's] trade secrets" to "interfere with [HRT's] ... valid contracts," as alleged in paragraph 193 of the Complaint.

12

**RESPONSE TO INTERROGATORY NO. 15:**

HRT does not allege that Stumpe used HRT's trade secrets to interfere with HRT's contracts.

**INTERROGATORY NO. 16:**

State all facts Concerning Stumpe's use of "[HRT's] trade secrets" to "interfere with [HRT's] prospective economic advantages," as alleged in paragraph 193 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 16:**

HRT does not allege that Stumpe used HRT's trade secrets to interfere with HRT's prospective economic advantage.

**INTERROGATORY NO. 17:**

Identify all of Skye's product inventory that was given to Stumpe on a consignment basis, which HRT alleges has not been returned, including stock numbers, model numbers, model names, and/or other identifiers, along with a description of each piece of inventory.

**RESPONSE TO INTERROGATORY NO. 17:**

HRT objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, any information responsive to this interrogatory is contained in documents that have been or will be produced by Skye.

**INTERROGATORY NO. 18:**

For each piece of product inventory identified in response to Interrogatory No. 17, state all facts Concerning Stumpe's alleged refusal to return such inventory to Skye.

13



**RESPONSE TO INTERROGATORY NO. 18:**

HRT objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, any information responsive to this interrogatory is contained in documents that have been or will be produced by Skye.

**INTERROGATORY NO. 19:**

State all facts Concerning Stumpe's alleged interference with HRT's possession of "certain inventory," as alleged in paragraph 227 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 19:**

HRT objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, any information responsive to this interrogatory is contained in documents that have been or will be produced by Skye.

**INTERROGATORY NO. 20:**

State all facts Concerning HRT's inventory allegedly in Stumpe's possession being valued in excess of $200,000.

**RESPONSE TO INTERROGATORY NO. 20:**

HRT objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome. Without waiving these objections, any information responsive to this interrogatory is contained in documents that have been or will be produced by Skye.

14

**INTERROGATORY NO. 21:**

Identify each and every economic relationship between HRT and any other person or entity that probably would have resulted in an economic benefit to HRT, with which Stumpe allegedly intentionally interfered, including the date that each such relationship began, the parties to such relationships, and the subject matter of each such relationship.

**RESPONSE TO INTERROGATORY NO. 21:**

HRT does not allege that Stumpe interfered with its economic relationships.

**INTERROGATORY NO. 22:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts Concerning HRT's contention that Stumpe knew of such economic relationship.

**RESPONSE TO INTERROGATORY NO. 22:**

HRT does not allege that Stumpe interfered with its economic relationships.

**INTERROGATORY NO. 23:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts Concerning Stumpe's alleged conduct that disrupted such relationship, including, without limitation, the name of the individual engaging in such alleged conduct and the date(s) on which such alleged conduct occurred.

**RESPONSE TO INTERROGATORY NO. 23:**

HRT does not allege that Stumpe interfered with its economic relationships.

**INTERROGATORY NO. 24:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts Concerning Stumpe's alleged Wrongful Conduct, including, without limitation,

15

HRT'S RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

the name of the individual engaging in such alleged conduct and the date(s) on which such alleged conduct occurred.

**RESPONSE TO INTERROGATORY NO. 24:**

HRT does not allege that Stumpe interfered with its economic relationships.

**INTERROGATORY NO. 25:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts supporting HRT's contention that Stumpe intended to disrupt such economic relationship, or knew that disruption of such economic relationship was certain or substantially certain to occur.

**RESPONSE TO INTERROGATORY NO. 25:**

HRT does not allege that Stumpe interfered with its economic relationships.

**INTERROGATORY NO. 26:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts supporting HRT's contention that such relationship was disrupted, including, without limitation, the particular events and circumstances surrounding such disruption, and the date(s) of such events and circumstances.

**RESPONSE TO INTERROGATORY NO. 26:**

HRT objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  HRT also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly

16

burdensome.  HRT will not respond to this interrogatory.

**INTERROGATORY NO. 27:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts supporting HRT's harm suffered as a result of Stumpe's alleged conduct or Wrongful Conduct, including, without limitation, sum-certain economic losses, and specific non-economic harm.

**RESPONSE TO INTERROGATORY NO. 27:**

HRT objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  HRT also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT (as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  HRT will not respond to this interrogatory.

**INTERROGATORY NO. 28:**

For each economic relationship identified in response to Interrogatory No. 21, state all facts supporting HRT's contention that Stumpe's alleged conduct or Wrongful Conduct was a substantial factor in causing Skye's alleged harm.

**RESPONSE TO INTERROGATORY NO. 28:**

HRT objects to the instant Interrogatory as improper because it does not contain discrete subparts and is therefore actually several separate interrogatories which now exceeds the limit of interrogatories allowed pursuant to Federal Rules of Civil Procedure, Rule 33(a)(1).  HRT also objects to this Interrogatory in that a response would require the preparation of a compilation and summary of the documents produced by the Skye/HRT

17

(as well as the Defendants and third parties in this action), rendering the request unduly burdensome.  HRT will not respond to this interrogatory.

DATED:  April 15, 2022                    ROSEN ✧ SABA, LLP

By:    /s Ryan D. Saba
       Ryan D. Saba, Esq.
       Laura Kelly St. Martin, Esq.
       Attorneys for Plaintiffs
       SKYE ORTHOBIOLOGICS, LLC and
       HUMAN REGENERATIVE
       TECHNOLOGIES, LLC

HRT'S RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

**VERIFICATION**

I, Chris Sharp, am an officer or agent of the party providing this Verification, and am authorized to make this Verification for and on its behalf, and I make this Verification for that reason; I have read the attached document(s): **HUMAN REGENERATIVE TECHNOLOGIES, LLC'S RESPONSES TO MIKE STUMPE'S FIRST SET OF INTERROGATORIES,** and know the contents; I am informed and believe and upon that ground allege that the matters stated in said document(s) are true and correct under the penalty of perjury under the laws of the United States of America.

Executed on April 15, 2022, at Los Angeles, California.



_____
Chris Sharp

1

VERIFICATION

## PROOF OF SERVICE

| STATE OF CALIFORNIA | ) | |
| COUNTY OF LOS ANGELES | ) | ss |
| | ) | |

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 9350 Wilshire Boulevard, Suite 250, Beverly Hills, California 90212.

On **April 15, 2022**, I served the foregoing document described as: **PLAINTIFF HUMAN REGENERATIVE TECHNOLOGIES, LLC'S RESPONSES TO MIKE STUMPE'S INTERROGATORIES, (SET ONE)** on the interested parties in this action b as follows:

| | |
|---|---|
| **YUKEVICH \| CAVANAUGH**<br>TODD CAVANAUGH, Esq.<br>355 S Grand Ave 15th Floor<br>Los Angeles, CA 90071 | Attorneys for Defendants GARDNER ROGERS and VETERANS MEDICAL DISTRIBUTORS, INC.<br><br>Tel: (213) 362-7777<br>Fax: (213) 362-7788<br><br>Email: tcavanaugh@yukelaw.com |
| **HODGSON RUSS LLP**<br>ROBERT J. FLUSKEY, JR.<br>MATTHEW K. PARKER<br>The Guaranty Building<br>140 Pearl Street, Suite 100<br>Buffalo, New York 14202 | Attorneys for Defendants BRYAN BANMAN, CTM BIOMEDICAL, LLC, and PABLO SEOANE aka PAUL SEOANE<br><br>Tel: (716) 856-4000<br>Fax: (716) 849-0349<br><br>Email: rfluskey@hodgsonruss.com<br>Email: mparker@hodgsonruss.com |
| **HENNELLY & GROSSFELD LLP**<br>THOMAS H. CASE, ESQ.<br>PAUL T. MARTIN, ESQ.<br>Marina Towers North<br>4640 Admiralty Way #850<br>Marina Del Rey, CA 90292 | Attorneys for Defendants BRYAN BANMAN, CTM BIOMEDICAL, LLC, and PABLO SEOANE aka PAUL SEOANE<br><br>Tel: (310) 305-2100<br>Fax: (310) 305-2116<br><br>Email: tcase@hgla.com<br>Email: pmartin@hgla.com |



19



| ARASH BERAL, ESQ.<br>SAAM TAKALOO, ESQ.<br>**BLANK ROME LLP**<br>2029 Century Park East, 6th Floor<br>Los Angeles, CA 90067 | Attorneys for: Defendant<br>Mike Stumpe<br><br>Tel: 424.239.3400<br>Fax: 424.239.3434<br><br>aberal@blankrome.com<br>saam.takaloo@blankrome.com |
|---|---|
| Michael R. Williams, Esq.<br>Carlos A. Nevarez, Esq.<br>Bienert Katzman Littrell Williams, LLP<br>903 Calle Amanecer, Suite 350<br>San Clemente, CA  92673 | Attorneys for Defendant,<br>Nathan Boulais<br><br>Tel: (949) 369-3700<br><br>mwilliams@bklwlaw.com<br>cnevarez@bklwlaw.com |

<u>BY E-MAIL OR ELECTRONIC TRANSMISSION</u> - I caused the document(s) described above to be sent from e-mail address dsanchez@rosensaba.com to the persons at the e-mail address listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[X]    FEDERAL    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.  I also declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **April 15, 2022**, at Beverly Hills, California.

_____
Danielle Sanchez

HRT'S RESPONSES TO MIKE STUMPE'S INTERROGATORIES, SET ONE

# EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


SKYE ORTHOBIOLOGICS, LLC, a   )
Delaware Limited Liability    )
Company, HUMAN REGENERATIVE   )
TECHNOLOGIES, LLC a Delaware  )
Limited Liability Company,    )
                 Plaintiff,   ) Case No:
        -vs-                   ) 2:20-cv-03444-MEMF-PVC
CTM BIOMEDICAL, LLC, a        )
Delaware Limited Liability    )
Corporation; BRYAN BANMAN, an )
individual; CTM MEDICAL, INC.,)
a Delaware Corporation;       )
VETERANS MEDICAL DISTRIBUTORS,)
INC.,;a Florida Corporation;  )
GARDNER ROGERS, an individual;)
PABLO SEOANE aka PAUL SEOANE, )
an individual; NATHAN BOULAIS,)
an individual, and DOES 3     )
through 10, inclusive,        )
                 Defendants.  )


VIDEO DEPOSITION OF MIKE STUMPE


     The video deposition upon oral examination of
MIKE STUMPE, a witness produced and sworn before
Wendi Kramer Sulkoske, Notary Public in and for
the County of Boone, State of Indiana, taken on
behalf of the Plaintiff at Barnes & Thornburg,
11 South Meridian Street, Indianapolis Marion County,
Indiana on May 25, 2022, at 9:18 a.m., pursuant to
the Federal Rules of Civil Procedure.

1

APPEARANCES


FOR THE PLAINTIFF:

ROSEN SABA
Ryan D. Saba, Esq.
Laura St. Martin (Via Zoom Teleconference)
2301 Rosecrans Avenue, Suite 3180
El Segundo, California 90245
rsaba@rosensaba.com


FOR THE DEFENDANT MIKE STUMPE:

BLANK ROME
Arash Beral, Esq.
2029 Century Park East, 6th Floor
Los Angeles, California   90067
aberal@blankrome.com


FOR THE DEFENDANT BRYAN BANMAN, CTM BIOMEDICAL, LLC
and PABLO SEOANE aka PAUL SEOANE:

HODGSON RUSS
Robert J. Fluskey, Esq. (Via Zoom Teleconference)
Ryan K. Cummings, Esq.
140 Pearl Street, Suite 100
Buffalo, New York   14202
rfluskey@hodgsonruss.com


FOR THE DEFENDANT NATHAN BOULAIS:
   (Via Zoom Teleconference)

BIENERT KATZMAN LITTRELL WILLIAMS
Michael R. Williams, Esq.
903 Calle Amanecer, Suite 350
San Clemente, California 92673
mwilliams@bklwlaw.com

2

APPEARANCES

FOR THE DEFENDANT GARDNER ROGERS/VMD, INC:
   (Via Zoom Teleconference)

YUKEVICH CAVANAUGH
Hassan Elrakabawy, Esq.
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071
helrakabawy@yukelaw.co,

ALSO PRESENT: Chris Sharp, Jared Keeling,
              Caitlin Clark, Zoom Moderator
              Michael Pratt, Videographer

EXAMINATION INDEX

                                                    Page

  EXAMINATION
    QUESTIONS BY MR. SABA                            7
  EXAMINATION
    QUESTIONS BY MR. CUMMINGS                      305
  EXAMINATION
    QUESTIONS BY MR. ELRAKABAWY                    323
  EXAMINATION
    QUESTIONS BY MR. SABA                          324
  EXAMINATION
    QUESTIONS BY MR. CUMMINGS                      330

3

Mike Stumpe                                                                    May 25, 2022

Q   What is your wife's name?

A   Melissa.

Q   How long have you been married?

A   Twelve years.

Q   Do you have any children?

A   Two that I know of.

Q   What are their names?

A   Jack and Clara.

Q   Are they minors or adults?

A   Minors.

Q   What is your date of birth?

A   10/31/81.

Q   Do you derive any source of income from anywhere
    other than CTM?

A   Yes.

Q   Where?

A   Other companies that I represent.

Q   What are their names?

A   RTI Biomedical.  I also work with Extremity
    Medical.  And Bone Support.  Heartland Medical.
    And Artelon, A-R-T-E-L-O-N.

Q   What was the total amount of revenue you earned
    from CTM in the year 2021?

A   I don't know.  I would have to check what I,
    exactly what I brought in from them.

24

Mike Stumpe                                                          May 25, 2022

Q   Give me your best estimate of how much money CTM

    paid you in the year 2021?

A   About a million.

Q   How much money did you generate in revenue from

    all of the other companies other than CTM in the

    year 2021?

A   Probably another hundred grand, two hundred

    grand.

Q   Do you sell human biologic products with any other

    company other than CTM?

A   Yes.

Q   Which company?

A   RTI Biomedical.  Or RTI Orthobiologics, I think is

    what they are called or something.  RTI.

Q   What type of products does RTI Medical sell other

    than human biologics?

A   They have every single thing you could order.  You

    could order body parts.

Q   Do you sell any placenta products for RTI?

A   No.

Q   Do you still operate Silenda Medical?

A   Yes.

Q   You said Silenda Medical has employees, correct?

A   Correct.

Q   When you say you made about a million dollars last

25

year, was that a million that went to Silenda, or was that a million dollars that went to you?

A    Silenda.

Q    What are the names of the employees of Silenda Medical?

A    Myself and my wife.  We had another employee, but I let her go.

Q    Does your wife generate any income from CTM Biomedical?

A    No.

Q    Do you still operate Novus Ortho?

A    No.

Q    What was the purpose of shutting down Novus Ortho?

A    Didn't need it.

Q    Was there a business purpose that was different between Novus Ortho and Silenda?

A    They were the same kind of business.  Just different, Novus was from when I was working at a previous company.  So I just didn't need it any more because I didn't work at that company any more.

Q    How do you describe what business you are in?  How do you describe Silenda?

A    Medical sales business.

Q    And you said you were working with a prior company

26

Q    Identify for me all liabilities that you have so I can conduct a net worth evaluation.

        MR. BERAL:  Same objection.  Instruct him not to answer.

Q    Does CTM owe you any money?

A    Yes.

Q    How much?

A    I don't know off the top of my head.

Q    Estimate it for me.

A    A hundred thousand.

Q    How much money have you received from CTM in the year 2022 so far?

A    Two fifty.

        MR. BERAL:  By "you" you are talking about Silenda, right?

Q    Either directly or through Silenda. correct?

A    Well, through Silenda -- I've received much less because I have a salary.  Silenda has received that money, but I've received less.

Q    Did CTM make all payments to Silenda?

A    All.

Q    Does Silenda file tax returns?

A    Yes.

Q    Did Silenda file a 2021 tax return?

A    I don't, I mean, I would assume so.

                                                            30

Q   Anybody else?

A   You know, parents or friends, you know, that you are just dealing with it.  Nobody worthy of note.

Q   How do you describe what is going on in the lawsuit to your parents and friends?

A   They just kind of ask for an update.  How is everything going?  That's about it.

Q   Today you have handed me four items that belong to Skye, correct?

A   Yeah, I did.

Q   There was additional inventory that was in your possession at the time that your services ended with Skye other than those four?

A   No.  That is incorrect.  Well -- no, that is incorrect.

Q   You believe those are the only four items?

A   Those are the only four items that I have in my possession.

Q   Where have those items been over the last, well, since June of 2018?

A   On my desk in my basement.

Q   Why did it take you until May of 2022 to return those items to Skye?

A   Because when I, because when all this went down I asked what I should do.  I was told to just --

43

MR. BERAL:  Don't reveal attorney/client communications.  If you can answer it without revealing attorney/client communications go for it.

If you can't, just say I can't divulge the information I learned from my attorneys.

A    I can't divulge the information I learned from my attorneys.

Q    Other than the four items that were handed to me today, you don't have any other Skye product in your possession, is that correct?

A    That is correct.

Q    Have you ever used an application called Signal?

A    Signal?

Q    Signal.

A    No.

Q    How did you first get introduced to Skye?

A    Through a rep I used to work with named Jason Ewers, E-W-E-R-S.

Q    What did Jason, how did he introduce you to Skye?

A    I was working with another company and they were not very good people.

Q    Is that Biomet?

A    No.

Q    Who was that?

44

were selling Organogenesis products?

A    I don't know.

Q    When you were working with Skye did you ever sell any other human placental products?

A    Yeah.

Q    Which products?

A    Zimmer Biomet.  Biomet.  Organogenesis.  CTM.  I think that's it.

Q    Did you ever disclose to Skye that you were selling other products while you were under a representation agreement with them?

A    Absolutely.

Q    Who was your contact at Skye when you were working with them?

A    Bryan.

Q    How did you first meet Bryan?

A    Through Jason Ewers.

Q    Do you recall the first time that you met with Bryan Banman in person?

A    I do not.

Q    Do you recall how much you were making with Skye in the last year of selling Skye products?

A    A couple hundred thousand.

Q    Other than Bryan Banman, did you have any other contact at Skye that you would regularly

52

did it.

Q    Did you ever orchestrate or help facilitate any physician to do a research agreement or study for CTM?

A    Did I orchestrate it?

Q    Help facilitate it like you did with the five doctors for Skye?

A    Really -- Midla.

Q    I thought you told me before Midla didn't buy any CTM products or use them.  Was that a mistake?

A    What?

Q    Did you ever sell CTM products to Dr. Midla?

A    CTM?

Q    Yes.

A    No.

Q    Let's start over.  Did you ever help facilitate any doctor to sign a research agreement or study agreement for CTM?

A    Sorry.  Sorry.  I don't believe so.

Q    Did you sell CTM products to Dr. Hoffman?

A    Maybe, but pretty limited.  I think I may have tried to get him to go through, you know, tried to get him to do, like, research stuff, but I don't think anything ever came to fruition.

Q    Did you ever sell CTM products to Dr. Badman?

69

Mike Stumpe                                                                    May 25, 2022

A    No.

Q    Why not?

A    Not my doctor.

Q    Did you service Dr. Badman when you were at Skye?

A    Technically it was under my account, but it was
     all Matt Dripps.  So that was another amount of
     business that went away when Matt left.

Q    Did you ever have a falling out with Matt Dripps?

A    No.

Q    Ever have an argument with Matt Dripps?

A    No.

          MR. SABA:  Let's mark next in order, I
     think it is 292.  It will be Tab 13.

          (EXHIBIT NUMBER 292 WAS MARKED FOR
     IDENTIFICATION.)

A    Thanks.

Q    I want you to focus on -- this is a few page email
     between you and Kyle Clark dated March 8, 2018.
     Okay?

A    Okay.

Q    And Kyle Clark sends an email to Michelle Smith
     and Brenda Ryherd.
          Do you know either Michelle Smith or
     Brenda Ryherd?

A    Yes.

70

Mike Stumpe                                                                  May 25, 2022

A    As far as I'm concerned, he is asking me to delete
     it because he is not using that phone number any
     more.  It is not uncommon.
Q    What would the reason be for Bryan Banman not to
     be using his current phone number in June of 2018?
          MR. CUMMINGS:  Objection.  Calls for
     speculation.
          Go ahead.
A    I've got no idea.  If he wants to change his phone
     number, he can change his phone number.  USA.
Q    Why didn't you tell Chris Sharp that you were
     going to start a competing business with
     Bryan Banman?
          MR. BERAL:  Assumes facts.
A    I didn't start --
          MR. BERAL:  Go ahead.
A    I didn't start a competing business with
     Bryan Banman.
Q    Well, you were one of the original founders of
     CTM, right?
A    Absolutely not.
Q    You are a shareholder of CTM, right?
A    I've not purchased or bought into CTM whatsoever.
Q    Well, you have what they call phantom shares,
     right?

                                                              79

Mike Stumpe                                                    May 25, 2022

A    What is that?

Q    You signed a phantom share agreement, didn't you?

A    I did.

Q    Okay.  So you know what phantom shares are?

A    To be honest with you, I really don't.

Q    You know you were given the phantom shares
agreement because you were one of the founders of
CTM?

A    I was not a founder of CTM.

Q    Then how do you describe yourself as an original
organizer of CTM?

A    I did not organize anything.  I sold to one doctor
for years.

Q    What does that mean?

A    I didn't organize CTM.  I didn't have anything to
do with where their stuff comes from.  I can't see
their sales numbers.  I don't know anything about
the company.

       Chris and Bryan are the most tight-lipped
guys I ever met in my life.  So I have got zero
information about CTM.  I'm, I am nobody.

Q    So this is just something between Bryan and Chris?

A    One thousand percent.

Q    Okay.  Did you ever have conversations with
Nate Boulais as to which Skye accounts could be

80

Q   Were you selling those to Dr. Ertl?

A   No.

Q   Other doctors?

A   Yeah.  Again, I was a manager.  So you could say
    that I was selling them to the entire state.  I
    had forty-one reps that I was responsible for.

Q   Are you still with Zimmer Biomet?

A   No.

Q   Why not?

A   Because I left.

Q   Why?

A   Because I didn't like it.  I was ready to go.

Q   When did you quit?

A   When?

Q   Yeah.

A   End of 2019.

Q   And you quit.  You were not fired?

A   I quit.  They also knew that I was selling Skye.

Q   But not CTM?

A   And CTM.  More of a don't ask don't tell policy.

Q   So because there was a potential violation of the
    non-compete clause, you thought it was just easier
    to conceal your involvement with CTM from
    Eskenazi, is that accurate?

A   Yes.  They knew I was doing it.  I have it in

                                                                    212

writing that they knew I was doing it.  Again,
just not creating waves.

Q   Do you know if Dr. Kerpsack ever became an advisor
to CTM?

A   To my knowledge he did not.

Q   Do you know if he ever did any studies for CTM?

A   I don't believe he did.

Q   Do you know if Dr. Flak ever became an advisor for
CTM?

A   I don't believe he did.  I don't know.

Q   Do you know if Dr. Flak ever did any studies for
CTM?

A   I don't think he actually did a study for CTM.

        MR. ELRAKABAWY:  Let's go to Tab 65.  This
was previously marked as Exhibit 94.

A   Thanks.

Q   You know this email?

A   I do, yeah.

Q   You were trying to write an email to Bryan Banman
and Nate Tierney, correct?

A   I believe so.

Q   And you accidentally sent the email to
Bryan Banman's email address at Skye.

A   I did.

Q   And you were writing, "Hey, guys, here is the

213

A   The old Skye email on the graft card.

Q   I got you.  I understand.

        MR. SABA:  All right.  I don't have any
    further questions at this time.

        MR. CUMMINGS:  I will have some.

examination

    QUESTIONS BY MR. CUMMINGS:

Q   Mr. Stumpe, are you ready?  Did anyone from Skye
    ever send you a customer list?

A   No.

Q   Did anyone from Skye ever tell you which doctors
    to sell to?

A   No.

Q   Did anyone from Skye ever tell you which
    facilities to sell to?

A   No.

Q   How did you decide which doctors or facilities to
    sell to?

A   Whoever I had the best relationships with.  My own
    personal relationships.  Relationships.

Q   And those personal relationships, before you got
    to Skye had you developed personal relationships
    with doctors or facilities in your capacity with
    Zimmer Biomet?

A   Yes.

305

Q    And is it your view that those relationships are personal to you and not to the companies on whose behalf you were selling product?

A    Absolutely.

Q    I want to focus on training for a moment.  Well, before I get there, did you ever see how Skye's products were processed?

A    No.

Q    Were you ever given any recipes regarding Skye's products?

A    No.

Q    Do you know where Skye's products were sourced from?

A    No.

Q    Were you involved at all in the development of CTM's products?

A    No.

Q    With regard to training, were you ever provided any sales training by Skye?

A    No.

Q    How did you learn to sell Skye products?

A    I used the training that I had gotten myself through previous companies and my, my relationships to sell Skye products.

Q    Did you ever have any doctors that you worked with

307

foundation.

A   They can make their own decision any time they
    want.

Q   You testified earlier today that before you
    started working with Skye you were selling medical
    products just generally, correct?

A   Correct.

Q   And specifically when you were with Zimmer Biomet
    you were selling placental products, is that
    correct?

A   I was.

Q   Did you continue to sell those products while you
    were working with Skye?

A   Some of them.

Q   Was Skye aware of your relationship with Zimmer?

A   Yes.

Q   And did you utilize an email signature block that
    identified yourself as being affiliated with
    Zimmer?

A   Yes.

        MR. SABA:   Can we pull up -- can we mark.
    I should say, this as Exhibit 322.

        (EXHIBIT NUMBER 322 WAS MARKED FOR
    IDENTIFICATION.)

A   Thank you.

309

MR. SABA:  Mr. Williams?

MR. WILLIAMS:  No questions.

MR. SABA:  Hassan, last chance.

MR. ELRAKABAWY:  I'm good.

MR. SABA:  Let's shut it down.  Thanks, folks.

VIDEOGRAPHER:  Herein marks the conclusion of the video deposition of Mike Stumpe.  We are going off the record.  The time is 6:31 p.m.


AND FURTHER DEPONENT SAITH NOT


MICHAEL STUMPE

331

Mike Stumpe                                                              May 25, 2022

STATE OF INDIANA      )
                      ) SS:
COUNTY OF BOONE       )


     I, Wendi Kramer Sulkoske, Notary Public in and

for said county and state, do hereby certify that

MICHAEL STUMPE, the deponent herein was by me

first duly sworn to tell the truth in the

aforementioned matter;

     That the foregoing deposition was taken on

behalf of the Plaintiff at the time and place

heretofore mentioned with counsel present as

noted.

     That the deposition was taken down in

Stenograph notes, reduced to typewriting under

my direction, is a true record of the testimony

given by said deponent, and was thereafter

presented to the deponent for signature.

     That this certificate does not purport to

acknowledge or verify the signature hereto of

the deponent.

     I do further certify that I am a

disinterested person in this cause of action;

that I am not a relative or attorney of any of

the parties or otherwise interested in the event

of this action, and am not in the employ of the

332

Mike Stumpe                                                    May 25, 2022

attorneys for the respective parties.

IN WITNESS WHEREOF, I have hereunto set my

hand and affixed my notarial seal this 2nd day

of June, 2022.


Wendi Kramer Sulkoske, Notary Public


Commission Number  NP0661030

My commission expires December 1, 2022.
My County of residence is Boone.

333

Mike Stumpe                                                              May 25, 2022

ROSEN SABA
Ryan D. Saba
2301 Rosecrans Avenue, Suite 3180
El Segundo, California 90245


                        NOTICE OF FILING

                UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA


SKYE ORTHOBIOLOGICS, LLC, a      )
Delaware Limited Liability       )
Company, HUMAN REGENERATIVE      )
TECHNOLOGIES, LLC a Delaware     )
Limited Liability Company,       )
                    Plaintiff,   ) Case No:
            -vs-                  ) 2:20-cv-03444-MEMF-PVC
CTM BIOMEDICAL, LLC, a           )
Delaware Limited Liability       )
Corporation; BRYAN BANMAN, an    )
individual; CTM MEDICAL, INC.,   )
a Delaware Corporation;          )
VETERANS MEDICAL DISTRIBUTORS,   )
INC.,;a Florida Corporation;     )
GARDNER ROGERS, an individual;   )
PABLO SEOANE aka PAUL SEOANE,    )
an individual; NATHAN BOULAIS,   )
an individual, and DOES 3        )
through 10, inclusive,           )
                    Defendants.  )



        In compliance with the Indiana Rules of Procedure, Rules of the Industrial Board or Federal Rules of Procedure, pursuant to Indiana Supreme Court Order dated 10/1/86, you are notified that the signed original deposition of MICHAEL STUMPE taken on behalf of the Plaintiff, on the 25th day of May, 2022 has been sealed and submitted to the originating party along with the attached Errata Sheet(s), if applicable.


        (Date Received)


                                                            334

# EXHIBIT 4

Brian Floros                           Confidential                March 31, 2022

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SKYE ORTHOBIOLOGICS, LLC, A  )
DELAWARE LIMITED LIABILITY   )
COMPANY; HUMAN REGENERATIVE  )
TECHNOLOGIES, LLC, A DELAWARE)
LIMITED LIABILITY COMPANY,   )
                             )
            PLAINTIFFS,      )
                             )
     VS.                     )  NO.: 2:20-CV-03444-
                             )       MEMF-PVC
CTM BIOMEDICAL, LLC, A       )
DELAWARE LIMITED LIABILITY   )
CORPORATION;                 )
                             )

-- CAPTION CONTINUED ON FOLLOWING PAGE --

C O N F I D E N T I A L

(THE FOLLOWING TRANSCRIPT AND EXHIBITS HAVE BEEN

DESIGNATED CONFIDENTIAL.)

VIDEOTAPED DEPOSITION OF BRIAN FLOROS

Thursday, March 31, 2022, 8:06 a.m.

Held Remotely Via Videoconference

Stenographically Reported by

Jennifer Smith, CSR No. 13577

Job No. 252829

1

Brian Floros                    Confidential                    March 31, 2022

-- CAPTION CONTINUED FROM PREVIOUS PAGE --


BRYAN BANMAN, AN INDIVIDUAL; )
CTM MEDICAL, INC., A DELAWARE)
CORPORATION; VETERANS MEDICAL)
DISTRIBUTORS, INC., A FLORIDA)
CORPORATION; GARDNER ROGERS, )
AN INDIVIDUAL; MIKE STUMPE,  )
AN INDIVIDUAL; PABLO SEOANE  )
AKA PAUL SEOANE, AN          )
INDIVIDUAL; NATHAN BOULAIS,  )
AN INDIVIDUAL; AND           )
DOES 1 THROUGH 10, INCLUSIVE,)
                             )
            DEFENDANTS.      )
                             )

2

Brian Floros                    Confidential                    March 31, 2022

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SKYE ORTHOBIOLOGICS, LLC, A   )
DELAWARE LIMITED LIABILITY    )
COMPANY; HUMAN REGENERATIVE   )
TECHNOLOGIES, LLC, A DELAWARE)
LIMITED LIABILITY COMPANY,    )
                              )
             PLAINTIFFS,      )
                              )
     VS.                      )   NO.: 2:20-CV-03444-
                              )       MEMF-PVC
CTM BIOMEDICAL, LLC, A        )
DELAWARE LIMITED LIABILITY    )
CORPORATION; BRYAN BANMAN, AN)
INDIVIDUAL; CTM MEDICAL,      )
INC., A DELAWARE CORPORATION;)
VETERANS MEDICAL              )
DISTRIBUTORS, INC., A FLORIDA)
CORPORATION; GARDNER ROGERS, )
AN INDIVIDUAL; MIKE STUMPE,   )
AN INDIVIDUAL; PABLO SEOANE   )
AKA PAUL SEOANE, AN           )
INDIVIDUAL; NATHAN BOULAIS,   )
AN INDIVIDUAL; AND            )
DOES 1 THROUGH 10, INCLUSIVE,)
                              )
             DEFENDANTS.      )
                              )

          VIDEOTAPED DEPOSITION OF BRIAN FLOROS,
     held remotely via videoconference, on
     Thursday, March 31, 2022, at 8:06 a.m., before
     Jennifer Smith, Certified Shorthand Reporter
     No. 13577.

3

Brian Floros                        Confidential                       March 31, 2022

APPEARANCES (VIA VIDEOCONFERENCE):


For Plaintiffs:

          ROSEN SABA, LLP
          BY:  RYAN D. SABA, ESQ.
          2301 Rosecrans Avenue, Suite 3180
          El Segundo, California 90245
          310.285.1727
          rsaba@rosensaba.com


For Defendants Bryan Banman; CTM Biomedical, LLC;
and Pablo Seoane aka Paul Seoane:

          HODGSON RUSS, LLP
          BY:  RYAN CUMMINGS, ESQ.
          140 Pearl Street, Suite 100
          Buffalo, New York 14202
          716.856.4000
          ryan_cummings@hodgsonruss.com


For Deponent Brian Floros:

          WEBER GALLAGHER
          BY:  MATTHEW G. LAVER, ESQ.
          2000 Market Street, Suite 1300
          Philadelphia, Pennsylvania 19103
          267.519.4979
          mlaver@wglaw.com


For Defendant Nathan Boulais:

          BIENERT KATZMAN LITTRELL WILLIAMS, LLP
          BY:  MICHAEL WILLIAMS, ESQ.
          903 Calle Amanecer, Suite 350
          San Clemente, California 92673
          949.369.3700
          mwilliams@bklwlaw.com

4

APPEARANCES (CONTINUED):

For Defendants Gardner Rogers and Veterans Medical
Distributors, Inc.:

        YUKEVICH CAVANAUGH
        BY:  HASSAN ELRAKABAWY, ESQ.
        355 South Grand Avenue, 15th Floor
        Los Angeles, California 90071
        213.362.7777
        helrakabawy@yukelaw.com

Also Present:  OLIVER GARCIA, Legal Videographer

               MIKE STUMPE, Defendant

               CHRISTOPHER SHARP, Skye
               Orthobiologics, LLC Representative

               BRYAN BANMAN, Defendant

5

Brian Floros                        Confidential                        March 31, 2022

Q    And when you fit a salesperson for any of the products, whether it be Vivex, CTM, or Skye or Integra, have you shared the pricing information with your customers?

A    With the doctors?

Q    Yes.

A    If they ask, yeah.  They will ask the inventory people sometimes.  Sometimes they will ask me.  They want to know -- they sometimes will ask in surgery how much this costs.

Q    Okay.  And on occasion do you give them comparative pricing for competitive products?

A    Yeah.  That's a normal thing in the business.  Yeah.

Q    So at least, generally speaking, the customers will know what the competitive pricing is in the industry; correct?

A    Correct.

Q    And do the customers generally know what -- well, let's be specific here.

The products that you were selling for Skye and CTM, placental products --

A    Uh-huh.

Q    -- do your customers generally know what part of the placenta is used to create those

115

by your signature it says you signed it on

October 1st.

        Okay?

    A    Yeah.

    Q    Prior to October 1st, 2018, had you had

access to Skye's product line?

    A    I mean, yes.  That's how I sold the

membranes in the office.

    Q    And did you understand that Skye was also

producing for sale placental products?

    A    Yes.

    Q    And prior to October 1st, 2018, did you

have an understanding as to Skye's product pricing?

    A    Yeah.

    Q    And prior to October 1, 2018, had you

learned about Skye's marketing strategies for its

placental products?

        MR. SABA:  It's vague and ambiguous.

        But go ahead.

        THE WITNESS:  What do you mean?  Did they

send me --

        MR. LAVER:  You can answer.

        THE WITNESS:  -- stuff or --

BY MR. CUMMINGS:

    Q    Sorry.  I didn't hear that.

117

A    Did they send me marketing material and things?    11:03:50    11:03:52

Q    Yeah.    11:03:54

A    Yeah, I believe so.  Yeah.    11:03:54

Q    And did you have discussions with anyone at Skye prior to October 1, 2018, regarding the marketing of its placental products?    11:03:56    11:03:58    11:04:02

A    Yeah.  My time with Skye is in two parts, Banman when he was vice president, and then I went through Matt Corman, and then I started talking a little bit to Chris Sharp.    11:04:07    11:04:10    11:04:15    11:04:21

Q    Besides the two -- or the couple of instances when you did -- you sold Skye's wound care products, have you sold any other products for Skye?    11:04:24    11:04:28    11:04:32

A    No.    11:04:36

Q    Were you ever involved in any discussions with Dr. Bernstein regarding the reimbursement rates for Skye's wound care products?    11:04:40    11:04:43    11:04:47

A    Again, I mean, I've been in discussions with him about a couple of -- a bunch of different companies over the years.  I forget what it was back then.  It was years and years ago.    11:04:51    11:04:54    11:04:56    11:05:00

Q    Did you ever facilitate a discussion between Dr. Bernstein and Mr. Sharp regarding Skye's wound care products?    11:05:04    11:05:07    11:05:11

118

Brian Floros                                    Confidential                         March 31, 2022

EXAMINATION

BY MR. BERAL:

Q    I am going next.

My name is Arash Beral, and I represent Defendant Mike Stumpe.

Would you like to be referred to as Brian or Mr. Floros?

A    Brian is fine.

Q    All right, Brian.  I know that we can all use a beer here after today's session.  But I will be very brief and get you out of here, hopefully, in a couple minutes.

A    All right.  Thank you.

Q    I assume you've never heard of Mike Stumpe.

A    No.

Q    Never spoke with him?

A    I don't believe so, no.

Q    You have been in medical product sales since 2016; yes?

A    Correct.

Q    You would agree with me that the relationships you've had and built with various doctors and hospitals are your relationships; yes?

A    Yes.

199

Q    And nobody owns those relationships but you; yes?

A    Yes.

Q    Your relationships with Skye, with CTM, with Mr. Banman, with Mr. Sharp, nobody owns those relationships; right?

A    Yes.

Q    And would you say it's normal and ordinary in your industry for sales reps to work with different manufacturers at the same time?

A    Yeah.  It's very common.

Q    And is it normal and customary in your industry for doctors and hospitals to come to you and tell you what products they want to buy?

A    Yes.

Q    And is it normal and customary in your industry for doctors and hospitals to come to you and tell you, "Hey, we are paying this much for this product.  We are paying that much for that product.  Can you beat the pricing?"

A    Yes.

Q    And as far as you are aware, there is nothing that is normal and customary in your industry to keep pricing information confidential or a secret; yes?

200

A    Well, I mean, that depends.  You don't go tell -- you don't tell competitors, even though everyone knows what everyone is paying and stuff.  But yeah, you don't -- you don't go, you know, broadcasting it to everybody.

Q    But nobody is under an obligation to keep the pricing information secret, are they?

MR. SABA:  Speculation.  Lack of foundation.  Overbroad.

MR. LAVER:  You can answer, Brian.

THE WITNESS:  I mean, at the hospital they don't want you -- you don't want to tell -- a lot of my knowledge, you wouldn't want other people to know -- I mean, it's like HIPAA stuff.  You have to be careful with what you disclose and what you don't, you know.

BY MR. BERAL:

Q    Got it.

So, for instance, let me use a specific example.  I can call Dr. Floros, your dad, and I could say, "Hey, how much are you paying for this product," and he can tell me that; right?

A    Yeah, of course.

Q    And I could call Dr. Bernstein, either one of them, and call them and say, "Hey, how much are

201

Brian Floros                         Confidential                         March 31, 2022

you saying for Skye's product," you know, whatever
it is, and they could tell me that; right?

A    Yes.

Q    All right.  In your experience as a sales
representative, have there been any situations where
doctors and hospitals would tell you that they can't
use a Skye product for any reason?

A    No, I have never had that.

        Well, the only thing I can think of is if
something is not in the system, them saying it's not
in the system.  That's the only thing I can think
of.

Q    Did anybody at Skye ever explain to you
what their trade secrets are?

A    No.

Q    Did you ever come in touch with any Skye
document that was clearly labeled "trade secret"?

A    No.

Q    Did anybody at Skye ever tell you that your
relationships with your contacts may somehow convert
to Skye's trade secrets?

A    No.

Q    That would be ridiculous; right?

A    In my opinion, yes.

        MR. SABA:  Objection.  Lack of foundation.

                                                    202

Speculation.  It's argumentative.                      13:29:34

BY MR. BERAL:                                           13:29:37

Q    Skye doesn't own your relationship with           13:29:38
your father, for example?                              13:29:40

A    Correct.                                           13:29:41

Q    Skye doesn't own your relationship with           13:29:42
Dr. Bernstein A or B; right?                           13:29:44

A    Correct.                                           13:29:46

Q    Did anybody at Skye ever tell you that if         13:29:47
you were going to share Skye's literature or           13:29:50
materials with your contacts, that you would forever   13:29:54
be prohibited from selling competing products to       13:29:57
those contacts?                                        13:30:00

A    No.                                                13:30:01

Q    And such an expectation from Skye would be        13:30:02
ridiculous too; right?                                 13:30:05

MR. SABA:  Argumentative.  Speculation.                13:30:06
Lack of foundation.  Calls for a potential legal       13:30:07
conclusion.                                            13:30:11

MR. LAVER:  Go ahead, Brian.                           13:30:12

THE WITNESS:  I would think so, yes.                   13:30:14

BY MR. BERAL:                                           13:30:16

Q    Tell me why, in your experience, that such        13:30:17
an expectation would be ridiculous.                    13:30:20

A    Because you spend years and years -- how do       13:30:23

203

I say this?                                                    13:30:30

Q    Hold on one second.  Hold on one second.  I    13:30:34
lost your video feed.                                          13:30:35

A    There you go.  Yeah.  I was getting a call.    13:30:37
I sent it to voicemail.                                         13:30:38

Because you spend years and years building    13:30:40
up a foundation and relationships and they are your,    13:30:43
you know, friendships and professional contacts and    13:30:46
it's, you know, your job.                                       13:30:49

Q    Thank you, sir.  I have no further    13:30:52
questions.                                                     13:30:53

A    Thank you.                                       13:30:54

MR. LAVER:  Anyone else who has not yet    13:30:57
asked a question want to ask questions?                         13:30:59

MR. SABA:  I think up next would be    13:31:05
Mr. Williams or Mr. Cavanaugh.                                  13:31:07

Please get confirmation with them passing.    13:31:11

MR. WILLIAMS:  This is Mike Williams.  I    13:31:15
don't have any questions at this time.                          13:31:17

MR. SABA:  Anybody from Mr. Cavanaugh's    13:31:20
firm?                                                          13:31:23

MR. ELRAKABAWY:  This is Hassan Elrakabawy    13:31:26
and Todd may be on as well.  I probably only have    13:31:27
one question.                                                  13:31:31

MR. LAVER:  Okay.  Let's hear it.    13:31:34

204

Brian Floros                                                     Confidential                     March 31, 2022

DECLARATION UNDER PENALTY OF PERJURY


        I, BRIAN FLOROS, do hereby certify under

penalty of perjury that I have reviewed the

foregoing transcript of my deposition taken on

March 31, 2022; that I have made such corrections as

appear noted herein in ink; that my testimony as

contained herein, as corrected, is true and correct.

        DATED this      day of                      ,

20   , at                      , California.




                        BRIAN FLOROS

210

Brian Floros                          Confidential                    March 31, 2022

STATE OF CALIFORNIA        )
                           ) ss:
COUNTY OF LOS ANGELES      )


            I, JENNIFER SMITH, do hereby certify:


            That I am a duly qualified Certified

Shorthand Reporter in and for the State of

California, holder of certificate number 13577,

which is in full force and effect, and that I am

authorized to administer oaths and affirmations;

            That the foregoing deposition testimony of

the herein named witness was taken before me at the

time and place herein set forth;

            That prior to being examined, the witness

named in the foregoing deposition was duly sworn or

affirmed by me to testify the truth, the whole

truth, and nothing but the truth;

            That the testimony of the witness and all

objections made at the time of the examination were

recorded stenographically by me, and were thereafter

transcribed under my direction and supervision;

            That the foregoing pages contain a full,

true, and accurate record of the proceedings and

testimony to the best of my skill and ability;

            That prior to the completion of the

212

foregoing deposition, review of the transcript was requested.

I further certify that I am not a relative or employee or attorney or counsel of any parties, nor am I a relative or employee of such attorney or counsel, nor am I financially interested in the outcome of this action.

IN WITNESS WHEREOF, I have subscribed my name on this date:

Jennifer Smith, CSR No. 13577

213

# EXHIBIT 5

HIGHLY CONFIDENTIAL

Page 268

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION


SKYE ORTHOBIOLOGICS, LLC, A
DELAWARE LIMITED LIABILITY
COMPANY, HUMAN REGENERATIVE
TECHNOLOGIES, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,    No. 2:20-CV-03444-MEMF
                                   (PVCX)
        Plaintiffs,
          vs.
CTM BIOMEDICAL, LLC, A
DELAWARE LIMITED CORPORATION;
BRYAN BANMAN, AN INDIVIDUAL;
CTM MEDICAL, INC., A DELAWARE
CORPORATION; VETERANS MEDICAL
DISTRIBUTORS, INC., A FLORIDA
CORPORATION; GARDNER ROGERS,
AN INDIVIDUAL; MIKE STUMPE,
AN INDIVIDUAL; PABLO SEOANE
AKA PAUL SEOANE, AN
INDIVIDUAL; NATHAN BOULAIS,
AN INDIVIDUAL; AND DOES 3
THROUGH 10, INCLUSIVE,
        Defendants.
_____

** HIGHLY CONFIDENTIAL **

VIDEOTAPED DEPOSITION OF CHRISTOPHER SHARP

El Segundo, California

Wednesday, March 30, 2022

Volume II

Reported by:

MARIA ELLERSICK

CSR No. 10531

Job No. 5156783

PAGES 268 - 545

HIGHLY CONFIDENTIAL

Page 269

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

SKYE ORTHOBIOLOGICS, LLC, A
DELAWARE LIMITED LIABILITY
COMPANY, HUMAN REGENERATIVE
TECHNOLOGIES, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,    No. 2:20-CV-03444-MEMF
                                   (PVCX)
        Plaintiffs,
     vs.
CTM BIOMEDICAL, LLC, A
DELAWARE LIMITED CORPORATION;
BRYAN BANMAN, AN INDIVIDUAL;
CTM MEDICAL, INC., A DELAWARE
CORPORATION; VETERANS MEDICAL
DISTRIBUTORS, INC., A FLORIDA
CORPORATION; GARDNER ROGERS,
AN INDIVIDUAL; MIKE STUMPE,
AN INDIVIDUAL; PABLO SEOANE
AKA PAUL SEOANE, AN
INDIVIDUAL; NATHAN BOULAIS,
AN INDIVIDUAL; AND DOES 3
THROUGH 10, INCLUSIVE,
        Defendants.

_____

        Videotaped Deposition of CHRISTOPHER SHARP,
Volume II, taken on behalf of Defendants CTM
Biomedical, LLC, at 2301 Rosecrans Avenue,
Suite 3180, El Segundo, California, beginning at
9:13 a.m. and ending at 5:51 p.m. on Wednesday,
March 30, 2022, before MARIA ELLERSICK, Certified
Shorthand Reporter No. 10531.

HIGHLY CONFIDENTIAL

Page 270

APPEARANCES:

For Plaintiffs:

ROSEN, SABA, LLP

BY:  RYAN D. SABA

BY:  LAURA K. ST. MARTIN (Via videoconference)

Attorneys at Law

2301 Rosecrans Avenue, Suite 3180

El Segundo, California 90245

(310) 285-1727

Email:  rsaba@rosensaba.com

For Defendants CTM Biomedical, LLC, Bryan Banman,

CTM Medical, Inc., and Pablo Seoane:

HODGSON, RUSS, LLP

BY:  ROBERT J. FLUSKEY

BY:  MATTHEW K. PARKER (Via videoconference)

Attorneys at Law

The Guaranty Building

140 Pearl Street, Suite 100

Buffalo, New York 14202

(716) 856-4000

Email:  rfluskey@hodgsonruss.com

HIGHLY CONFIDENTIAL

**Page 271**

APPEARANCES (Continued):

For Defendants Gardner Rogers and Veterans
Medical Distributors, Inc.:

    YUKEVICH, CAVANAUGH

    BY:  TODD A. CAVANAUGH

    BY:  HASSAN ELLRAKABAWY (Via videoconference)

    Attorneys at Law

    355 South Grand Avenue, 15th Floor

    Los Angeles, California 90071

    (213) 362-7777

    Email:  tcavanaugh@yukelaw.com

For Defendant Mike Stumpe:

    BLANK ROME, LLP

    BY:  ARASH BERAL

    BY:  SAAM TAKALOO

    Attorneys at Law

    (Via Videoconference)

    2029 Century Park East, 6th Floor

    Los Angeles, California 90067

    (424) 239-3453

    Email:  arash.beral@blankrome.com

HIGHLY CONFIDENTIAL

**Page 272**

APPEARANCES (Continued):


For Defendant Nathan Boulais:

BIENERT, KATZMAN, LITTRELL, WILLIAMS, LLP

BY:  MICHAEL R. WILLIAMS

Attorney at Law

(Via Videoconference)

903 Calle Amanecer, Suite 350

San Clemente, California 92673

(949) 369-3700

Email:  mwilliams@bklwlaw.com




Also Present:

Bryan Banman

Gardner Rogers (Via videoconference)

Mike Stumpe (Via videoconference)

Pablo Seoane (Via videoconference)





Videographer:

JOSHUA OSHIMA

HIGHLY CONFIDENTIAL

Page 462

bill.  They've got an arrangement with another company.  So they make -- they make their money on the margin between what they purchase the product from, okay, at time of shipment, and then they sell it and keep the difference.

Q   Okay.  Understood.  Would you say that it's normal and ordinary in your industry for sales representatives to work with different companies at any one time?

A   Yes, that's how it's always been.  But over the last few years, it's less and less is our experience with Skye.

Q   And would you agree with me that for the most part, Skye would enter into these relationships with sales reps to take advantage of the sales representatives' connections to customers in their territory?

A   I wouldn't say take advantage.  I think what we do is we -- the reason the 1099 model works for us is that they're typically well established. They're not rookies in the medical space, and therefore, they have relationships with hospitals and certain surgeons.

Q   And typically, you don't tell them to go out and speak to certain customers or surgeons or

HIGHLY CONFIDENTIAL

Page 463

doctors.  It's usually they are the ones who do that?

A   For the most part, yes.  Majority of the time, yes.

Q   They control their own operations; right?

A   They're independent, so yes.

Q   And you don't direct them or control them; right?

A   No.

Q   Okay.  Is it also normal to have subrepresentatives?

A   Yes.  Some do, yes.

Q   What are "subrepresentatives"?

A   Well, if you have a large territory or a successful independent sales rep, you run it like a small company that you're going to need more hands to assist you with recruiting new doctors, servicing those doctors, admin for the sales that you're generating.

Q   And with respect to the relationships that these representatives have, you're not contending that the relationships of these representatives with their clients are Skye's trade secrets, are you?

A   Can you repeat the question?

Q   Can I have it read back by the

HIGHLY CONFIDENTIAL

Page 464

court reporter, please.

(Record read.)

MR. SABA:  It's vague and ambiguous.

THE WITNESS:  The actual relationship itself is not.  I don't -- I'm not questioning or believe the relationship is a trade secret.  It's the fact -- it's the connection between that doctor, that relationship of learning to use these types of products, okay, is a trade secret.

BY MR. BERAL:

Q   So if a doctor decides to do business with a sales representative in light of their relationship with that sales representative, you would not contend that that would be a misappropriation of a trade secret; right?

A   Can you repeat the question?

MR. BERAL:  Could I have it read back.

(Record read.)

MR. SABA:  It's vague and ambiguous as well.

THE WITNESS:  Can you ask the question a different way?  I'm not following the question.

BY MR. BERAL:

Q   What's ambiguous about it?

A   I'm just not following what you're asking.

HIGHLY CONFIDENTIAL

Page 512

did Skye ever demand materials from Mr. Stumpe and offer to pay for the shipment of those materials?

A   Our representatives always have access to our Fed Ex account.  If it solely took for us to pay hundreds of thousands of dollars that are missing that he's accountable for, we would glad pay for the shipping boxes and the freight.

Q   Sorry.  Go ahead.  Finish your answer.  I'm sorry.  I cut you off.

MR. SABA:  I think he's done.

THE WITNESS:  I'm done.

BY MR. BERAL:

Q   Okay.  What is he -- what is he responsible for?

MR. SABA:  That's overbroad, and vague and ambiguous.

BY MR. BERAL:

Q   It was your testimony.  I'm just following up.  What is he responsible for?

MR. SABA:  Same objections.

THE WITNESS:  We feel there's a lot of missing consignment inventory that he was responsible for.

BY MR. BERAL:

Q   Where did it go?

HIGHLY CONFIDENTIAL

Page 513

A    That's the question I have for your client.

Q    Well, to whom were they shipped?

A    They were shipped to facilities that he requested them to be shipped to.

Q    Were they shipped to homes?

A    I don't believe so.  I don't have the records exactly where they were shipped, but rarely are they shipped to homes.

Q    Which facilities were they shipped to?

A    I'd have to pull up our records to see exactly which ones are missing the inventory.

Q    Was there -- were any of those facilities closed?

A    I'm sure they close in the evenings.  I'm not sure what you mean by "close."

Q    Permanently shut down.

A    I would have no idea.

Q    Okay.  Would -- do you provide -- do you have tracking information on any of these shipments?

A    We have tracking information on where our products are sent.

Q    Okay.  And with respect to where your products were sent, are they all at some sort of facility?

A    I would assume they would be.

HIGHLY CONFIDENTIAL

**Page 544**

I, CHRISTOPHER SHARP, do hereby declare under penalty of perjury that I have read the foregoing transcript; that I have made any corrections as appear noted, in ink, initialed by me, or attached hereto; that my testimony as contained herein, as corrected, is true and correct.

EXECUTED this _____ day of _____, 2022, at _____, _____.
                           (City)                    (State)


_____

CHRISTOPHER SHARP

HIGHLY CONFIDENTIAL

Page 545

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: April 12, 2022

*Maria Ellersick*

MARIA ELLERSICK

CSR No. 10531

# EXHIBIT 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


SKYE ORTHOBIOLOGICS, LLC, a    )
Delaware Limited Liability     )
Company, HUMAN REGENERATIVE    )
TECHNOLOGIES, LLC, a Delaware  )
Limited Liability Company,     )
                    Plaintiff, ) Case No:
          -vs-                 ) 2:20-cv-03444-MEMF-PVC
CTM BIOMEDICAL, LLC, a         )
Delaware Limited Liability     )
Corporation; BRYAN BANMAN, an  )
individual; CTM MEDICAL, INC.,)
a Delaware Corporation;        )
VETERANS MEDICAL DISTRIBUTORS,)
INC.; a Florida Corporation;   )
GARDNER ROGERS, an individual;)
MIKE STUMPE, an individual;
PABLO SEOANE aka PAUL SEOANE, )
an individual; NATHAN BOULAIS,)
an individual, and DOES 3      )
through 10, inclusive,         )
                   Defendants. )


VIDEO DEPOSITION OF NATE BOULAIS


        The video deposition upon oral examination of
NATE BOULAIS, a witness produced and sworn before
Wendi Kramer Sulkoske, Notary Public in and for
the County of Boone, State of Indiana, taken on
behalf of the Plaintiff at Barnes & Thornburg,
11 South Meridian Street, Indianapolis Marion County,
Indiana on August 4, 2022, 9:00 a.m. pursuant to the
Federal Rules of Civil Procedure.



APPEARANCES

FOR THE PLAINTIFF:

ROSEN SABA
Ryan D. Saba
Laura St. Martin (Via Zoom Teleconference)
2301 Rosecrans Avenue, Suite 3180
El Segundo, California 90245
rsaba@rosensaba.com

FOR THE DEFENDANT MIKE STUMPE:
     (Via Zoom Teleconference)
BLANK ROME
Arash Beral
2029 Century Park East, 6th Floor
Los Angeles, California  90067
aberal@blankrome.com

FOR THE DEFENDANT BRYAN BANMAN, CTM BIOMEDICAL, LLC
and PABLO SEOANE aka PAUL SEOANE:

HODGSON RUSS
Robert J. Fluskey (Via Zoom Teleconference)
Ryan K. Cummings
140 Pearl Street, Suite 100
Buffalo, New York  14202
rfluskey@hodgsonruss.com

FOR THE DEFENDANT NATHAN BOULAIS:

BIENERT KATZMAN LITTRELL WILLIAMS
Michael R. Williams
903 Calle Amanecer, Suite 350
San Clemente, California 92673
mwilliams@bklwlaw.com

2

APPEARANCES


FOR THE DEFENDANT GARDNER ROGERS/VMD, INC:
     (Via Zoom Teleconference)

YUKEVICH CAVANAUGH
Hassan Elrakabawy
355 South Grand Avenue, 15th Floor
Los Angeles, California 90071
helrakabawy@yukelaw.co,




ALSO PRESENT: Chris Sharp, Jared Keeling,
              Caitlin Clark, Zoom Moderator
              Michael Pratt, Videographer
              Tricia Boulais



                    EXAMINATION INDEX
                                              Page

  EXAMINATION
    QUESTIONS BY MR. SABA                       10
  EXAMINATION
    QUESTIONS BY MR. CUMMINGS                   442
  EXAMINATION
    QUESTIONS BY MR. BERAL                      453

3

Q   Those complaints were not the reason why you
    stopped performing services for Skye?

A   They were the reason I stopped.

Q   Why didn't you stop performing services in late
    2017 or early 2018?

A   Because I felt an obligation to my surgery centers
    to return inventory because Priscialla Lee at Skye
    was sending threatening emails to surgery centers
    and hospitals threatening to charge them for
    consigned inventory even though the consignment
    agreement was never signed by the facility.

Q   So my question was why didn't you quit in late
    2017 or early 2018?

A   Because I --

        MR. WILLIAMS:  Objection.  Asked and
    answered.

A   I didn't quit because I felt an obligation to my
    surgery centers to return as much inventory as
    possible.  And Skye ended up garnering my
    commissions and deducting my commissions for
    missing inventory.

        So I would rather them charge me than to
    charge my surgery centers.

Q   What do you mean you had to return inventory?

A   Skye asked for all their consigned inventory back

41

from facilities.  You know, we would place grafts

on consignment and then do bill only purchase

orders when they used them.

    And then Skye and/or Chris had a change of

strategy and wanted to pull back their inventory.

Q    So what obligation did you have that caused you

not to quit in early 2017, in late 2017 or early

2018?

A    My obligation was to get as much returned

inventory back to Skye as possible so that my

surgery centers were not charged by Skye.

Q    How long did it take for you to gather this

consignment inventory and return it all to Skye?

A    At least six months.

Q    So then you were ready to quit in the middle of

2018?

A    Yes.

Q    And did you?

A    As I said, I did not.

Q    Why not?

A    Because I wanted to return the inventory from the

field.

Q    After you were able to return all of the inventory

in the middle of 2018 why didn't you quit Skye?

        MR. WILLIAMS:  Objection.  Vague and

42

WERE HAD:)                                                18:13

            VIDEOGRAPHER:  We are back on the record.    18:14

The time is 6:14 p.m.                                    18:14

            MR. SABA:  We are going to suspend today's   18:15

deposition.  We are at the six hour and                  18:15

fifty-three minute mark.  We will come back              18:15

tomorrow.  Thank you very much, everybody.               18:15

            VIDEOGRAPHER:  Herein marks the conclusion   18:15

of the video deposition.  We are going off record.       18:15

The time is 6:15 p.m.                                    18:15

                                                         18:15

                                                         18:15

                                                         18:15

                                                         18:15

   AND FURTHER DEPONENT SAITH NOT                         18:15

                                                         18:15

                                                         18:15
                                                         8:15
   _____                      18:15
   NATE BOULAIS

294

STATE OF INDIANA     )
                     ) SS:
COUNTY OF BOONE      )


          I, Wendi Kramer Sulkoske, Notary Public in and

     for said county and state, do hereby certify that

     NATE BOULAIS, the deponent herein was by me

     first duly sworn to tell the truth in the

     aforementioned matter;

          That the foregoing deposition was taken on

     behalf of the Plaintiff at the time and place

     heretofore mentioned with counsel present as

     noted.

          That the deposition was taken down in

     Stenograph notes, reduced to typewriting under

     my direction, is a true record of the testimony

     given by said deponent, and was thereafter

     presented to the deponent for signature.

          That this certificate does not purport to

     acknowledge or verify the signature hereto of

     the deponent.

          I do further certify that I am a

     disinterested person in this cause of action;

     that I am not a relative or attorney of any of

     the parties or otherwise interested in the event

     of this action, and am not in the employ of the

295

Nate Boulais                                                                August 4, 2022

attorneys for the respective parties.

        IN WITNESS WHEREOF, I have hereunto set my

hand and affixed my notarial seal this 10th day

of August 2022.

_____
Wendi Kramer Sulkoske, Notary Public

Commission Number  NP0661030

My commission expires December 1, 2022.
My County of residence is Boone.

296

# EXHIBIT 7

Subject to a Sealing Motion