**ROSEN ✦ SABA, LLP**
RYAN D. SABA, ESQ. (State Bar No. 192370)
rsaba@rosensaba.com
TODD M. LANDER, ESQ. (State Bar No. 173031)
tlander@rosensaba.com
LAURA KELLY St. MARTIN (State Bar No. 260966)
lstmartin@rosensaba.com
NEDA FARAH, ESQ. (State Bar No. 269819)
nfarah@rosensaba.com
El Segundo, California 90245
Telephone:   (310) 285-1727
Facsimile:   (310) 285-1728
Attorneys for Plaintiffs,
SKYE ORTHOBIOLOGICS, LLC and
HUMAN REGENERATIVE TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYE ORTHOBIOLOGICS, LLC, a Delaware Limited Liability Company, HUMAN REGENERATIVE TECHNOLOGIES, LLC, a Delaware Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>CTM BIOMEDICAL, LLC, a Delaware Limited Liability Corporation; BRYAN BANMAN, an individual; CTM MEDICAL, INC., a Delaware Corporation; VETERANS MEDICAL DISTRIBUTORS, INC.; a Florida Corporation; GARDNER ROGERS, an individual; MIKE STUMPE, an individual; PABLO SEOANE aka PAUL SEOANE, an individual; NATHAN BOULAIS, an individual, and DOES 3 through 10, inclusive,<br><br>Defendants. | Case No.: 2:20-cv-03444-MEMF-PVC<br>*Hon. Maame Ewusi-Mensah Frimpong*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES FOR PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE AREAS OF TESTIMONY FROM REBUTTAL EXPERT JAMES DONOHUE**<br><br>Final Pretrial Conference<br>Date:   August 2, 2023<br>Time:   9:00 am<br>Dept:   8B<br><br><br>Trial Date:   August 21, 2023 |

PLAINTIFFS' MOTION *IN LIMINE* NO. 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND BACKGROUND

Plaintiff Skye Orthobiologics LLC ("Skye") anticipates that, at trial, Defendants will offer James Donohue ("Donohue") as a rebuttal expert to Plaintiffs' economic expert. Donohue is an economist who lacks knowledge and expertise in the placental tissue industry generally, and was specifically denied access to critical financial records that bear on his expected testimony. Despite that lack of expertise and documentary access, the Defendants propose to offer Donohue for purposes of responding to testimony Skye will elicit from forensic accountant Hank Kahrs ("Kahrs") as to a wide range of topics, including: (1) the profits CTM Biomedical LLC ("CTM") earned, and management fees CTM allegedly charged to CTM that purportedly offset those profits; (2) Skye's competitors in the marketplace and the difference between Skye's products and those of its competitors, and/or any reasonable royalties in the market; (3) the validity of any patents related to the subject matter of the dispute, and/or reasonable; and (4) the propriety and efficacy of exclusivity periods in contracts Bryan Banman entered into.

As explained below, however, Donohue's anticipated testimony and opinions should be excluded under *Federal Rule of Evidence* 702 – among other grounds – because: (1) his conclusions concerning CTM's profits lack basic foundation and constitute impermissible speculation, since he has never seen – and Skye was denied access to – CTM Canada's financial statements and thus cannot determine the existence or amount of the management fees allegedly charged to CTM[1]; (2) he lacks expertise concerning the products lines within placental tissue industry, and thus his opinions concerning the purported competitiveness of the industry do not meet the clear standards set out in Rule 702; and (3) his remaining opinions do not satisfy the standards of admissibility for expert testimony and must be excluded on that basis. For those reasons, Skye respectfully requests, and the law requires, that Donohue be prohibited from offering his unfounded and unsupported opinions at trial.[2]

---

[1] CTM Canada allegedly provides "administrative support" to CTM. However, Defendants refused to provide any financial information related to this separatee Canadian entity.

[2] Donahue, as also explained, should not be permitted to testify as to matter not identified or disclosed on his Rule 26 Report. Skye raises that issue because Kahrs, who Donahue was

1

## II. DEFENSE EXPERT JAMES DONOHUE'S TESTIMONY

### A. *Donohue Cannot Render Opinions Based on Speculative Financials That Have Been Deliberately Withheld from Plaintiffs*

Donohue's opinions are, as mentioned, predicated on improper speculation and financial information to which Skye was not privy. A party offering expert testimony concerning a particular subject matter must demonstrate that: (1) the testifying expert is qualified on that subject matter; (2) the testimony is based on sufficient facts or data; and (3) the testimony is the product of reliable principles and methods. *See Fed.R.Evid.* 702; *see also Bldg. Indus. Assn. of Wash. V. Wash. State Bldg. Code Council,* 683 F.3d 1144, 1154 (9th Cir. 2012).[3] Within that broader context, Rule 702 and its decisional progeny provide that expert testimony is admissible only if the expert is "qualified as an expert by knowledge, skill, experience, training, or education." *Fed.R.Evid.* 702. And in assessing expert qualifications, the court "should not rely on labels, but rather investigate the competence a particular proffered witness would bring to bear on the issues." *Mannino v. Int'l Mfg. Co.,* 650 F.2d 846, 850 (6th Cir. 1981).

More particularly, where an expert bases an opinion on inadmissible evidence, in whole or in part, Rule 703 demands that the offering party must establish that: (1) the expert has personally observed the evidence or been made personally aware of it; and (2) that experts in the field to which the opinions relate would reasonably rely on the same or similar data or facts or data in forming an opinion on the subject. *Fed. R. Evid.* 703. Beyond that, and even where this initial threshold is met, the offering party may disclose the otherwise inadmissible date or facts to the jury "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." (*Id.*) That is, the proscriptions and limitations imposed by Rule 403 – specifically prohibiting the

---

designated to rebut, included in his report conclusions regarding the calculation of damages, which Donahue ignored in his rebuttal report. The Defendants should consequently not be permitted to elicit testimony on those subjects from Donahue at trial.

[3] An expert's opinion must also satisfy the law's requirement that only relevant evidence – defined under FRE Rules 401 and 402 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" – may be admissible at trial.

admissibility of any evidence whose "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" – govern the determination of the admissibility of expert testimony and opinions.

Applying those principles, the Ninth Circuit prohibits experts interposing non-existent facts into the record through their expert reports. Thus, for example, in *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 857 (9th Cir. 2019), the Court found – in affirming the District Court's exclusion of expert testimony on summary judgment – that "[a] party's own speculation is insufficient to create a genuine issue of material fact, and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness." The implications of that determination are clear – a party may not, through the exploitation of experts, launder otherwise non-existent or inadmissible facts and present them to the jury under the patina of authenticity offered by the expert. Indeed, the Courts prohibit this exercise in synthetic fact creation. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (party may no use expert as a "conduit" of inadmissible evidence because while "the Rules permit experts some leeway with respect to hearsay evidence, ... a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.") Accordingly, expert witnesses may not simply repeat hearsay without "bring[ing] their expertise to bear" on it. *Caldwell v. City of San Francisco*, No. 12-CV-01892-DMR, 2021 WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021) (citing *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136.).

Donohue's proposed testimony and opinions not only fail to satisfy the general standards of admissibility under Rule 703, they additionally contravene the specific guardrails the law has erected to prevent the presentation of inadmissible evidence. Banman, a principal defendant, owns a Canadian company doing business as CTM Canada that allegedly provides certain management services to CTM. And Donohue apparently intends to opine that Kahrs – Skye's forensic accounting expert – improperly excluded "CTM Management Fees" from his analysis regarding CTM profit margin. According to

Donohue, CTM's "Adjusted Margin" margin should include "compensation paid to CTM Canada." (Deposition of James Donohue at 86:14-18, **Exhibit A** to the Declaration of Ryan D. Saba.)

The problem is that Banman and the Defendants never provided Donohue with CTM Canada's financials. He was instead *only* provided with certain *unsigned* tax documents showing only employee compensation – without any further details. Nor did Donohue suggest otherwise in his deposition, admitting that the only documentation Banman provided him bearing on costs CTM incurred through CTM Canada were employee costs. (Donohue Depo. at 99:16-100:15, Saba Decl. Ex. A.) ("He [Banman] felt those were others, but the documents I received focused on the employment cost."). When asked if Banman ever explained why he provided limited documentation and *not* any broader data (including profit and loss statements), Donohue admitted he had no idea: "He wanted to identify expenses that he felt were related to the company and that's what he gave me. He didn't -- he didn't tell me why he didn't give me other things. He -- I asked for what expenses are supporting the operations, what expenses are supporting those sales. And -- and he -- and he focused on the employment. He's, like, 'There's employees.' He said, There's also some office expense as well that's up there. But I didn't -- I didn't get invoices or things like that for the office." (Donohue Depo. at 100:2-15, Saba Decl. Ex. A.)

Donohue's opinions concerning CTM Canada's financials – including specifically any management fees it purportedly charged to and received from CTM – are consequently rank speculation *because he's never seen the underlying financial documents to verify the claimed fees.* And his proposal to do so despite that lack of essential foundational data lays waste to the most basic principles of expert admissibility and reliability.

It gets worse. Banman deliberately withheld CTM Canada's financials from Skye during the entirety of this litigation – that is, the same financials that Skye could use, if they were available, to determine if the management fees Banman wants his expert to validate were actually charged to and paid by CTM. It was not for a lack of trying. Skye specifically requested those financial statements, only to have Banman and the Defendants object and

seek a Court Order preventing Skye from obtaining those statements – they argued that "Plaintiffs have offered no reasonable explanation as to how this twice-removed entity is relevant to any claim or defense asserted in this litigation, let alone how all of its bank statements are relevant. [CTM Canada] is not a defendant." [*See*, Docket #184-1 at pp. 1-2 (summarizing Plaintiffs' Requests), pp. 13-14 § 2 (Defendants' arguments against production); and p. 13, lines 6-10.] The Court agreed, and denied Skye's Motion to Compel production of these materials. But having succeeded in denying Skye access to the financials on relevance grounds, Banman cannot now purport to have his expert testify concerning management fees this "twice-removed entity" allegedly charged CTM – for purposes of presenting to the jury a reduced profit number for CTM – based on the very financial documents to which Skye has been refused access. Setting aside the obvious inequity in allowing that testimony, that Donohue himself has never seen the financials renders any opinion on the subject speculative, lacking foundation and inadmissible.

### B. *Donohue is not Qualified to Opine on Purported Viable Competitors of Skye/HRT's Products*

There are other problems with Donohue's proposed testimony that likewise demand exclusion. He admitted in deposition, for example, that he is not qualified to determine the similarity or comparability of placental tissue products. (Donohue Depo. 45:10-46:13, Saba Decl. Ex. A.) And yet he somehow reached the definitive conclusion that the industry is "highly competitive". (Donohue Depo. 45:10-46:13, Saba Decl. Ex. A.) His Report opines for example, but without support, that that there are a "large number of competitors" in the industry. (*See* Donohue Report ¶ 48, 51-52, Saba Decl. Ex. B.) He also includes hypothetical competitors in his Report to lower the value of Kahrs' sales projections. *Id.*

Rule 702 does not permit opinions of this definition without ample evidentiary support and unless they comply with the applicable standards governing expert testimony. Rule 702, for its part and as explained above, only permits expert testimony where the proffered expert is qualified to offer an opinion on the relevant subject matter based on his or her "knowledge, skill, experience, training, or education." Fed.R.Evid. 702; *see also*

*Mannino, supra,* 650 F.2d at 850. The law additionally demands that, in purporting to lay a factual foundation, an expert must utilize "reliable principles and methods" and employ the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Fed.R.Evid.* 702; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999).

Donohue lacks the knowledge and expertise to reach the conclusions Defendants want him presenting to the jury, and his Report makes clear he has not applied the prevailing principles and methods of experts in the field to which he expected testimony would relate. He admittedly lacks basic knowledge, experience and expertise concerning the similarity or distinctions among the products Skye and/or its competitors, and thus his "opinion" relating to the competitiveness of the market is beyond his expertise.[4] Indeed, his Report reveals the vacuity at the core of his opinions – his conclusions regarding "competitiveness" are based on hearsay generalizations from third party product manufacturers proclaiming that the industry is "competitive". (*See* Donohue Report ¶ 48-52, Saba Decl. Ex. B.) He is, at best, seizing on the innocuous fact that other products are sold in the "industry" generally, and leaping to the unfounded and resulting conclusion that the producers of those products are somehow viable competitors to Skye. That not only lacks any concrete factual foundation, it defies the most fundamental standards experts are required to satisfy as a threshold to their testimony's admissibility. *Fed.R.Evid.* 702; *see also Guidroz-Brault v. Mo.Pac.R.R. Co.,* 254 F.3d 825, 831 (9th Cir. 2001) (expert opinion must be based on "sufficient facts or data."); *and see Kumho, supra.* It must be excluded.

**C.    *Donohue is not Qualified to Opine on Purported Differences between Skye/HRT's Products and CTM's Products, and Thus the Value and Effect of Skye's Trade Secrets on Competition***

Donohue admittedly did not review, and is not qualified to testify regarding, any purported differences in the products of Skye/HRT and those of CTM. Indeed, he testified

---

[4] Donahue, as noted, employed *hypothetical* competitors to reduce synthetically Kahrs' projected sales for Skye. But Kahrs' conclusions were predicated on *actual* past sales, not hypotheticals and speculation.

explicitly in deposition that he did not "look at the technical capabilities of one product versus from another. That's for a technical expert." (Donohue Depo: 45:22-46:13, Saba Decl. Ex. A.) Nor, as a result, can he testify as to the value of Skye's trade secrets and their ability to affect competition – including their value to Skye. But that's exactly what he purported to do, asserting that Skye's trade secrets "lack the ability to prevent competition and therefore provide limited value". (*See* Donohue Report, p. 6, Saba Decl. Ex. B.)

That opinion is beyond the scope of his expertise and lacks any factual basis. Both are fatal to admission under Rule 702 and *Guidroz-Brault, supra.*

### D. *Donohue is not a Legal Expert and is Not Qualified to Testify on the Applicability or Viability of a Patent*

Similarly, Donohue admitted that he lacks expertise in any testimony relating to the technicalities of placenta tissue or anything concerning it. (Donohue Depo: 42:16-24, Saba Decl. Ex. A.) Nor is he qualified, by his own admission, concerning the efficacy or validity of placenta tissue or related patents. (Donohue Depo.: 42:25-43:4, Saba Decl. Ex. A.) Any testimony he purports to give on either subject is consequently inadmissible on the same grounds.

### E. *Donohue is not Qualified to Interpret the Terms of Any Confidentiality Agreement*

Finally, Donohue is not qualified to give any opinions, testimony, or legal analysis regarding the term or exclusivity period or confidentiality clauses in any contract as set forth in Exhibit 8A of Donohue's report. When asked if he intended to provide an analysis of representative agreements and whether they contain certain legal terms of exclusivity, Mr. Donohue testified that, no, he will not be providing "legal opinions at trial". (Donohue Depo. 77:3-12, Saba Decl. Ex. A.) Accordingly, and for the same reasons, he cannot offer testimony in trial on that subject.

### F. Donohue Cannot Give Opinions that Were Not Disclosed in His Report or at His Deposition Concerning Royalties or Alternate Calculations of Damages

*Federal Rule of Evidence* 26 requires an expert's report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Evid. 26(a)(2)(B)(i). And Rule 37(c) provides, in turn, that when a party fails to make the required disclosures under Rule 26(a), that party is prohibited from introducing the evidence at trial unless the "failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Goodman v. Staples The Office Superstore, LLC,* 644 F.3d 817, 826 (9th Cir. 2011).

Donohue's Rule 26 Report makes no mention of royalties or mathematical calculations and/or alternative damages calculations – both of which *are* the subject of Kahr's Report and ultimate testimony, which Donohue was designed to rebut. There can, given their inclusion in Kahr's Report, be no justification for the failure to include that information in the Donohue Report, nor can the exclusion be harmless – because Skye has been denied the right to examine Donohue on these subject matters in deposition. Accordingly, Donohue should be prohibited from testifying on either matter at trial.

### H. Donohue Cannot Give any Opinions or Testimony Outside the Scope of Skye's Expert Hank Kahrs' Opinions

Rule 26 also provides that rebuttal disclosures of expert testimony are "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). An expert report is not proper rebuttal if "the report speaks directly to an issue on which [the offering party] bear the burden of proof." *In re Toy Asbestos*, No. 19-CV-00325-HSG, 2021 WL 1056552, at *3 (N.D. Cal. Mar. 19, 2021) (citing, *Clear-View Techs., Inc. v. Rasnick,* No. 13-CV-02744-BLF, 2015 WL 3509384, at *3 (N.D. Cal. June 3, 2015). For that reason, Donohue must be precluded from offering testimony on any matter not within the ambit of Kahr's expert testimony.

### III. CONCLUSION

For these reasons, Skye respectfully requests that the proposed rebuttal testimony of James Donohue be excluded in its entirety.

DATED: June 28, 2023                              ROSEN ✧ SABA, LLP

By:  /s Ryan Saba
Ryan D. Saba, Esq.
Todd M. Lander, Esq.
Laura Kelly St. Martin, Esq.
Neda Farah, Esq.
Attorneys for Plaintiffs
SKYE ORTHOBIOLOGICS, LLC and
HUMAN REGENERATIVE
TECHNOLOGIES, LLC