ROSEN ◆ SABA, LLP
RYAN D. SABA, ESQ. (State Bar No. 192370)
rsaba@rosensaba.com
TODD M. LANDER, ESQ. (State Bar No. 173031)
tlander@rosensaba.com
LAURA KELLY St. MARTIN (State Bar No. 260966)
lstmartin@rosensaba.com
NEDA FARAH, ESQ. (State Bar No. 269819)
nfarah@rosensaba.com
El Segundo, California 90245
Telephone:    (310) 285-1727
Facsimile:    (310) 285-1728
Attorneys for Plaintiffs,
SKYE ORTHOBIOLOGICS, LLC and
HUMAN REGENERATIVE TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYE ORTHOBIOLOGICS, LLC, a Delaware Limited Liability Company, HUMAN REGENERATIVE TECHNOLOGIES, LLC, a Delaware Limited Liability Company,<br><br>*Plaintiffs*,<br><br>v.<br><br>CTM BIOMEDICAL, LLC, a Delaware Limited Liability Corporation; BRYAN BANMAN, an individual; CTM MEDICAL, INC., a Delaware Corporation; VETERANS MEDICAL DISTRIBUTORS, INC.; a Florida Corporation; GARDNER ROGERS, an individual; MIKE STUMPE, an individual; PABLO SEOANE aka PAUL SEOANE, an individual; NATHAN BOULAIS, an individual, and DOES 3 through 10, inclusive,<br><br>*Defendants*. | Case No.: 2:20-cv-03444-MEMF-PVC<br>*Hon. Maame Ewusi-Mensah Frimpong*<br><br>**PLAINTIFFS' TRIAL BRIEF REGARDING RICO CAUSE OF ACTION AND THE EFFECTS OF THE DTSA SUMMARY JUDGMENT RULING**<br><br>Final Pretrial Conference<br>Date:     August 2, 2023<br>Time:     9:00 am<br>Dept:     8B<br><br>Trial Date:   August 21, 2023 |



PLAINTIFFS' TRIAL BRIEF REGARDING RICO CAUSE OF ACTION AND THE EFFECTS OF THE DTSA SUMMARY JUDGMENT RULING

**TO THIS HONORABLE COURT:**

This Court's Summary Judgement Order ("Order") denied summary judgment concerning the Skye Plaintiffs' RICO claim for relief, and in the process correctly found that the predicate acts supporting that claim arise under 18 U.S.C. § 1832 – the theft of trade secrets. [Docket #248 at pp. 18-25.]

The Court also determined that the Plaintiffs had identified 58 separate and predicate RICO acts in opposing the Defendants' respective Motions, and that those facts were materially in dispute and thus to be resolved at trial. Those facts included stealing Plaintiff HRT's formula (Fact #1 – Banman stole HRT's Processing Formula for HRT's Products). The 58 separate predicate acts also include other information that was also included within the Defense of Trade Secrets Act Count (18 U.S.C. § 1836, the "DTSA"), but which – for purposes of RICO – were also pleaded independently of the DTSA and as RICO predicate acts.[1]

In partially dismissing the DTSA claims, however, the Court concluded that decision by summarizing the remaining trade secrets in ***both*** the DTSA and the RICO counts, despite their distinct statutory foundations – specifically, that on the trade secrets remaining under the DTSA claim could be asserted as to RICO, regardless of whether a trade secret was excluded on procedural or substantive grounds under the DTSA. The tension between those competing determinations is something the Plaintiffs respectfully believe must be addressed among the parties and the Court.

To establish a claim for a violation of 18 U.S.C. §1962(c) ("RICO"), a Plaintiff must prove: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. [Docket #248, at 18:27.] This Court, in its Order, concisely described the CTM Defendants summary judgment argument concerning that claim: "The CTM Defendants contend that the only indictable trade secret theft under 18 U.S.C. §1832 constitutes a predicate act under RICO and that, because the Skye Plaintiffs only claim civil misappropriation under Section

---

[1]/ It is worth noting that Plaintiffs' RICO cause of action did not incorporate into the claim any DTSA allegations. [See, Fourth Amended Complaint, Docket #130, Paragraph 162 (excludes DTSA from incorporation into RICO).]

1

PLAINTIFFS' TRIAL BRIEF REGARDING RICO CAUSE OF ACTION AND THE EFFECTS OF THE DTSA SUMMARY JUDGMENT RULING

1836 in their Fourth Amended Complaint and not criminal trade secret 'theft' under Section 1832, their allegations fail to establish a predicate act under RICO." [*Id.* at 19:10-13]

The Court then noted that the Plaintiffs were in accord as to the predicate RICO statute: "The Skye Plaintiffs agree that the relevant predicate act is a criminal violation of 18 U.S.C. § 1832 but contend that their RICO claims should survive because . . . they have alleged a criminal violation of Section 1832 . . ." [*Id.* at 19:14-16]. The Order then confirms its own conclusion, in conformity with the parties' contentions: "The parties are therefore correct that a violation of 18 U.S.C. § 1832 constitutes a predicate act under RICO." [*Id.* at 20:8-9]

The Court denied Summary Judgment concerning the RICO claims in clear and unambiguous terms. Indeed, it specifically found that Plaintiffs' RICO claims were properly alleged even though "the Skye Plaintiffs did not explicitly specify or allege that the predicate act was based on a violation of Section 1832 in their Fourth Amended Complaint, this omission is not fatal to their claim." [*Id.* at 21:15-17.] The Court then held: "As a result, the Court finds that the Skye Plaintiffs have adequately identified or established a predicate act under RICO." [*Id* at 22:4-5.]

The Court, on the basis of those material facts, then denied summary judgment and by corollary found that Plaintiffs properly brought a RICO cause of action based on predicate acts arising out of Section 1832. That is, the Court necessarily – and indeed expressly – found those 58 facts were materially in dispute and thus were reserved for the jury. And that includes the *first of those materially disputed facts,* namely the scientific formula that is the organic foundation of the Skye Plaintiffs' products.

Those findings, and that conclusion, was *independent* of the Court's later determination of the Skye Plaintiffs' DTSA claim arising under 18 U.S.C. §1836. The Court granted summary judgment as to Plaintiffs' "Manufacturing Process" which this Court ultimately made clear – in ruling on the Skye Plaintiffs' Motion for Clarification – to include the formula, based on an interrogatory response upon which the Defendants'

2
PLAINTIFFS' TRIAL BRIEF REGARDING RICO CAUSE OF ACTION AND THE EFFECTS OF THE DTSA SUMMARY JUDGMENT RULING

Summary Motion relied. [Docket #325 at 6.][2] But the Court's basis for that portion of the Order was procedural, and rooted in the particularities of the identification process prescribed in the DTSA: "the Skye Plaintiffs have not sufficiently identified trade secrets within HRT's manufacturing process." [Docket #248 at 27:25-26.] The Court concluded that: "Because these trade secrets are not specifically identified, a jury could not possibly determine whether CTM has misappropriated these alleged trade secrets. The Court therefore GRANTS the Motion with respect to HRT's manufacturing process." [*Id.* at 28:14-16.] The Court then summarized: "Therefore, these aforementioned trade secrets are the only ones that remain at issue in this case with respect to the DTSA claim and the RICO claims." [*Id.* at 43:18-19] The Order's summary of what remained, in other words, would have extended the implications of the Court's DTSA determinations to the Plaintiffs' RICO claims – and in the process narrow the scope of those claims – notwithstanding that the DTSA was not the statutory predicate of those latter counts.

Accordingly, the Plaintiffs believe the resulting and potential dichotomy is one that should be discussed. Specifically, the Plaintiffs inquire why the dismissal of the Manufacturing Process from the Section 1836 DTSA claim for relief – based on a procedural identification issue – can serve as a basis to preclude the Plaintiffs from presenting to the jury the substance of the predicate RICO facts comprising the Manufacturing Process – including the formula – particularly since this Court has already found those facts are materially in dispute and this Court has essentially found they are not conditioned on the elements of DTSA.

Simply put, the RICO count arises out violations of Section 1832, and not Section 1836. And if Plaintiffs had, for example, not brought a DTSA claim, the Manufacturing

---

[2]/ The interrogatory requested HRT to "identify and describe in detail each trade secret of HRT that is referred to in paragraph 164" of the Third Amended Complaint. Paragarph 164 of the Third Amended Complaint was contained within the DTSA cause of action, not the RICO cause of action. Nonetheless, in response to the interrogatory, HRT identified its "formulations and ingredients" and "unique product formulas." Plaintiffs also produced the HRT Design file, numerous documents in discovery regarding the formula and hired multiple experts which produced reports identifying the theft of HRT's formula by CTM and identifying the specific components of the formula (e.g., the tissue v. saline ratio or how to manipulate the chorion membrane).

3

PLAINTIFFS' TRIAL BRIEF REGARDING RICO CAUSE OF ACTION AND THE EFFECTS OF THE DTSA SUMMARY JUDGMENT RULING

Process would necessarily remain a part of the RICO claim because that statutory liability is derived from the 58 predicate acts demonstrating contravention of Section 1832 – at those facts relating to that process. For that reason, this Court's partial summary judgment concerning the Manufacturing Process under the DTSA should not preclude Plaintiffs from asserting the formula and the remaining materially disputed RICO facts concerning manufacturing as part of their RICO claim.

The Plaintiffs acknowledge that the Court observed, in its Order, that: "And as discussed above, the RICO claims require a predicate act. It is axiomatic that the Skye Plaintiffs cannot show a criminal violation of Section 1832—the claimed RICO predicate—for misappropriation of trade secrets for which the Skye Plaintiffs cannot even make out a civil violation of the DTSA. Therefore, only the portions of the RICO claims that relate to the surviving portions of the DTSA claim survive." [Docket # 248 at p. 25.] The Court then proceeded to analyze the seven categories of the DTSA claim:

| | |
|---|---|
| Trade Secret Category No. 1. | HRT's Manufacturing Process; |
| Trade Secret Category No. 2. | Skye's Customer Lists and Information; |
| Trade Secret Category No. 3. | The Skye Plaintiffs' Research Physician Information; |
| Trade Secret Category No. 4. | Skye's Employee and Sales Representative Information; |
| Trade Secret Category No. 5. | Skye and HRT's Business Operations; |
| Trade Secret Category No. 6. | Skye's Customer Pricing Information; and |
| Trade Secret Category No. 7. | Skye's Marketing and Sales Strategies |

The rationale for the Court's findings concerning these categories is critical, however, because they vary between substance and procedure. The Order determined, for example and as a matter of *substance*, that the Defendants had neither used nor disclosed the information within the ambit of categories 3-6.[3] But that was not the case concerning

---

[3]/ Those categories encompass Trade Secret Category No. 3. (The Skye Plaintiffs' Research Physician Information); Trade Secret Category No. 4. (Skye's Employee and Sales Representative Information); Trade Secret Category No. 5. (Skye and HRT's Business Operations); Trade Secret Category No. 6. (Skye's Customer Pricing Information). While the Plaintiffs disagreed with the Court's findings on those categories, they understand that given the *substantive basis* of their dismissal, they would likewise be excluded from the scope of the RICO count. The Plaintiffs do not, in short, intend to include these categories within the evidence supporting RICO at trial.

is allowing HRT's Manufacturing Process, which, as already explained, was excluded due to the lack of DTSA required identification: HRT had "not specifically identified, a jury could not possibly determine whether CTM has misappropriated these alleged trade secrets." [Id. at 28:14-15.] The Plaintiffs understand that *if* the Court had determined that the Manufacturing Process was NOT a trade secret on substance, *then* it would be axiomatic to exclude that process from the RICO count. But that was not the premise of the Court's determination, and the distinction is critical because § 1832 ***does not include the same identification requirement found in the DTSA.*** Indeed, had the Plaintiffs brought only a RICO claim – and not sued under the DTSA – the Manufacturing Process would necessarily be outside the scope of the Order.

A review of the RICO statute confirms, on its face, the absence of any DTSA style identification compulsion. The plaintiff must instead *only* set forth facts evidence *predicate acts* manifesting the racketeering activity. And the Court, as noted, affirmatively found that "Plaintiffs have sufficiently demonstrated the 'threat of continuity' of racketeering" and that they "have indeed pointed to a number—specifically 58—predicate acts in their Motion, none of which the CTM Defendants argue are unrelated." [Id. at 23:3-7.] The Court concluded: "Because a genuine dispute of material fact exists as to whether a pattern of racketeering activity exists, the Court DECLINES to grant the Motion on this ground." [Id. at 23:25-27.]

The import of that finding, and the *procedural* premise of the decision on Manufacturing Process, draw the Court's summary of the RICO and DTSA counts into direct focus. That is, if the Order purported to exclude Manufacturing Process from both claims due to a failure to identify, that would have the effect of imposing an identification requirement into RICO that that the statute does not articulate and that no Court – based on the Plaintiffs' research – has found to exist. And that result would be objectively prejudicial to the Plaintiffs, because they would be subject to a higher procedural burden than the RICO statute on its face imposes.



For sake of convenience, the 58 predicate acts are repeated here for the Court's convenience (**Please note #1, 2, 9, 14, 18, and 20**):

| Defendant/ Violation | Summary of Evidence |
|---|---|
| **Banman**: Stole §1832(a)(1) | 1. HRT's processing formula for HRT's products. [PF 362, 376-378, 641] |
| **Banman**: Carried away without authorization §1832(a)(1) | 2. HRT's processing formula for HRT's products. [PF 362, 376-378, 641]<br>3. Skye's product sales and marketing information. [PF 564-601, 616]<br>4. Skye's customer information for GCRMC and Dr. John Anderson [PF 539, 540, 569], Palm Beach Gardens [PF 589-590]<br>5. Skye's sales representative information for Boulais, Stumpe, Carey, and Seoane. [PF 481, 491, 493-494, 537, 575, 576, 588, 667-668]<br>6. Skye's login information and password for Broward Health's vendor registration. [PF 596-598]<br>7. Skye's Business Development Compendium. [PF 688] |
| **Banman:** Attempted to steal §1832(a)(4) | 8. HRT's Dropbox containing HRT's processing information for its products. [PF 615] |
| **Banman**: Appropriated without authorization §1832(a)(1) | 9. HRT's processing formula for HRT's products. [PF 372, 376-378, 641, 596-632]<br>10. Skye's data regarding sales of product sales. [PF 564-601, 616]<br>11. Skye's employee and sales representative information for Boulais, Stumpe, Carey, and Seoane. [PF 481, 491, 493-494, 537, 575, 576, 588, 667-668]<br>12. Skye's customer information for GCRMC and Dr. John Anderson [PF 539, 540, 569], Palm Beach Gardens [PF 589-590]<br>13. Dr. Hiatt research information. [PF 584-587] |
| **Banman**: Copied/ Duplicated without authorization §1832(a)(2) | 14. HRT's processing formula for HRT's products. [PF 376-378, 614, 616, 619, 596-632]<br>15. Forms from Broward Health's vendor registration using Skye's login information. [PF 596-598]<br>16. Skye's HRT product sales and marketing information. [PF 599-604; 607-608, 610-612.] |
| **Banman**: Uploaded without authorization §1832(a)(2) | 17. Forms to Broward Health's vendor registration using Skye's login information. [PF 596-598] |
| **Banman**: Transmitted without authorization §1832(a)(2) | 18. HRT's processing formula for HRT's products to Lee Andrews. [PF 376-378, 614, 616, 622-628, 631-640, 641]<br>19. Skye's Business Development Compendium to Andrew MacDonald. [PF 688] |

| | |
|---|---|
| **Banman**: Delivered without authorization §1832(a)(2) | 20. Skye's sample of chorion only membrane to Alamo. [PF 634-637] |
| **Banman**: Received information knowing the information was appropriated without authorization §1832(a)(3) | 21. Skye's customer pricing and price lists. [PF 558-567, 570-572, 578-579, 643-645.] <br> 22. Skye's employee and sales representative information. [PF 573, 580, 672-674, 682] <br> 23. Skye's customer information for Carmel Ambulatory [PF 519-521]; Surgery Center of Carmel [PF 522-523; 594-595]; Riverview [PF 530-533, 536, 643-645]; St. Vincent [PF 534-535]; Community Health Network [PF 558-567, ; 593]; [PF 557, 575-576]; Dr. Elliot [PF 591]; Indiana Univ. [PF 646], Franciscan Alliance [PF 647]; Witham Hospital [PF 649]; Eskenazi [PF 554-556, 581-583, 651-653]; Dr. Baker [PF 578-579]; Community Health Network [PF 558-567]; [PF 575-576]; Saxony Surgery Center [PF 680] <br> 24. Skye's trade secret 17 training "Notes". [PF 686] <br> 25. Skye's trade secret sales rep and lead information into CTM's database. [672-674.] <br> 26. Dr. Hiatt research information. [PF 584-587] |
| **Banman**: Conspired with **Boulais** who then acted to "effect the object of the conspiracy" §1832(a)(5) | 27. To appropriate without authorization Skye's for Carmel Ambulatory [PF 519-521]; Surgery Center of Carmel [PF 522-523; 594-595]; Riverview [PF 530-533, 536, 643-645]; St. Vincent [PF 534-535]; Community Health Network [PF 558-567, ; 593]; [PF 557, 575-576]; Dr. Elliot [PF 591]; Indiana University [PF 646], Franciscan Alliance [PF 647]; Witham Hospital [PF 649] <br> 28. Skye's customer pricing. [PF 558-567; 570-572; 643-645] <br> 29. Dr. Hiatt research information. [PF 584-587] |
| **Banman**: Conspired with **Stumpe** who then acted to "effect the object of the conspiracy" §1832(a)(5) | 30. To appropriate without authorization Skye's customer information for Dr. Flak [PF 568] <br> 31. Skye's customer pricing and price lists. [PF 558-567, 572, 578-579, ] <br> 32. Skye's customer information for Eskenazi [PF 554-556, 581-583, 651-653]; Dr. Baker [PF 578-579]; Community Health Network [PF 558-567]; [PF 575-576]; Saxony Surgery Center [PF 680] <br> 33. Skye's employee and sales representative information. [PF 573, 580, 672-674] |
| **Banman**: Conspired with **Seoane** who then acted to "effect the object of the conspiracy" §1832(a)(5) | 34. To appropriate without authorization Skye's employee and sales representative information. [PF 672-674, 682] |
| **Seoane**: Stole §1832(a)(1) | 35. Skye's trade secret 17 training "Notes". [PF 671] <br> 36. Skye's employee and sales representative information. [PF 672-674, 682] |

7

PLAINTIFFS' TRIAL BRIEF REGARDING RICO CAUSE OF ACTION AND THE EFFECTS OF THE DTSA SUMMARY JUDGMENT RULING



| | |
|---|---|
| **Seoane**: Carried away without authorization §1832(a)(1) | 37. Skye's trade secret 17 training "Notes". [PF 671]<br>38. Skye's employee and sales representative information. [PF 672-674] |
| **Seoane**: Appropriated without authorization §1832(a)(1) | 39. Skye's employee and sales representative information. [PF 672-674, 682] |
| **Seoane**: Downloaded without authorization §1832(a)(2) | 40. Skye's trade secret sales rep and lead information. [PF 672-674, 682.] |
| **Seoane:** Uploaded without authorization §1832(a)(2) | 41. Skye's trade secret sales rep and lead information into CTM's database. [PF 672-674]<br>42. |
| **Seoane**: Transmitted without authorization §1832(a)(2) | 43. Skye's trade secret 17 training "Notes". [PF 686]<br>44. Skye's trade secret sales rep and lead information into CTM's database. [PF 672-674] |
| **Seoane:** Communicated without authorization §1832(a)(2) | 45. Skye's trade secret 17 training "Notes". [PF 686] |
| **Boulais**: Appropriated without authorization §1832(a)(1) | 46. Skye's customer pricing and price lists. [PF 558-567; 570-572; 643-645.]<br>47. Skye's customer information for Carmel Ambulatory [PF 519-521]; Surgery Center of Carmel [PF 522-523; 594-595]; Riverview [PF 530-533, 536, 643-645]; St. Vincent [PF 534-535]; Community Health Network [PF 558-567, ; 593]; [PF 557, 575-576]; Dr. Elliot [PF 591]; Indiana University [PF 646], Franciscan Alliance [PF 647]; Witham Hospital [PF 649].<br>48. Dr. Hiatt research information. [PF 584-587] |
| **Boulais**: Communicated without authorization §1832(a)(2) | 49. Skye's customer pricing and price lists. [PF 558-567; 570-572; 643-645.] |
| **Stumpe**: Appropriated without authorization §1832(a)(1) | 50. Skye's customer pricing and price lists. [PF 558-567, 572, 578-579, .]<br>51. Skye's customer information for Eskenazi [PF 554-556, 581-583, 651-653]; Dr. Baker [PF 578-579]; Community Health Network [PF 558-567]; [PF 575-576]; Saxony Surgery Center [PF 680].<br>52. Skye's employee and sales representative information. [PF 573, 580, 672-674.] |
| **Stumpe**: Communicated without authorization §1832(a)(2) | 53. Skye's customer pricing and price lists. [PF 558-567, 572, 578-579.] |
| **Banman, Stumpe,** and **Boulais:** Conspired and then acted to "effect the object of the conspiracy" §1832(a)(5) | 54. Skye's customer information for Eskenazi [PF 554-556, 581-583, 651-653]; Dr. Baker [PF 578-579]; Community Health Network [PF 558-567]; [PF 575-576]; Saxony Surgery Center [PF 680]; for Carmel Ambulatory [PF 519-521]; Surgery Center of Carmel [PF 522-523; 594-595]; Riverview [PF 530-533, 536, 643-645]; St. Vincent [PF 534-535]; |



| | |
|---|---|
| | Community Health Network [PF 558-567, ; 593]; [PF 557, 575-576]; Dr. Elliot [PF 591]; Indiana University [PF 646], Franciscan Alliance [PF 647]; Witham Hospital [PF 649.]<br>**55.** Skye's customer pricing and price lists. [PF 558-567, 570-572, 578-579, 643-645.]<br>**56.** Skye's employee and sales representative information. [PF 573, 580, 672-674.] |
| **Banman, Stumpe, Boulais, and Seoane:** Conspired and then acted to "effect the object of the conspiracy" §1832(a)(5) | **57.** Skye's trade secret sales rep and lead information. [PF 573, 580, 672-674]<br>**58.** Skye's customer information for Eskenazi [PF 554-556, 581-583, 651-653]; Dr. Baker [PF 578-579]; Community Health Network [PF 558-567]; [PF 575-576]; Saxony Surgery Center [PF 680]; for Carmel Ambulatory [PF 519-521]; Surgery Center of Carmel [PF 522-523; 594-595]; Riverview [PF 530-533, 536, 643-645]; St. Vincent [PF 534-535]; Community Health Network [PF 558-567, ; 593]; [PF 557, 575-576]; Dr. Elliot [PF 591]; Indiana University [PF 646], Franciscan Alliance [PF 647]; Witham Hospital [PF 649.] |

Accordingly, Plaintiffs believe it is essential to address with the Court these competing determinations and to ensure there is certainty as to the scope of the RICO claims that will be presented to the jury and that the Plaintiffs exercise fidelity to the Court's findings. Therefore, Plaintiffs request a discussion during the Final Pretrial Conference regarding whether Manufacturing Process should be part of the RICO claim.

We noted, in that regard, that "the nature of a partial summary judgment nonetheless limits what the court may do; put differently, a partial summary judgment has innately limited effects. Despite its name, a partial summary judgment is not a judgment at all but merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." *Kottom v. Walker*, 2015 WL 7301849, at *4 (internal quotes removed; quoting 10A Charles Alan Wright, *Federal Practice & Procedure* § 2737 at 323 (3d ed. 1998) and quoting Fed. R. Civ. P. 56(d) (Advisory Committee Notes to 1946 amendment)).

It "follows'' from this that a partial summary judgment "has no preclusive effect, since the trial court retains jurisdiction to modify the order at any time prior to the entry of a final judgment.'' *Id.*, see also, *Wright, supra,* § 2737 at 323; accord *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1425 and n. 2 (9th Cir. 1995) (citing cases); cf. *Solis v.*

9

*Jasmine Hall Care Homes, Inc.*, 610 F.3d 541, 543-44 (9th Cir. 2010) (dismissing appeal) (partial summary judgment was non-final and not appealable).

It should also be noted that if the Court determines that Manufacturing Process should be part of the RICO claim, the witness lists and exhibit lists do not need to be modified. Only the jury instructions need to be modified (which can be done expeditiously).

DATED: July 19, 2023                                            ROSEN ✧ SABA, LLP

                                                                By:   /s Ryan Saba
                                                                      Ryan D. Saba, Esq.
                                                                      Todd M. Lander, Esq.
                                                                      Attorneys for Plaintiffs
                                                                      SKYE ORTHOBIOLOGICS, LLC and
                                                                      HUMAN REGENERATIVE
                                                                      TECHNOLOGIES, LLC