Paul T. Martin (SBN 155367)
*pmartin@hgla.com*
Thomas H. Case (SBN 116660)
*tcase@hgla.com*
HENNELLY & GROSSFELD LLP
4640 Admiralty Way, Suite 850
Marina del Rey, CA 90292
Telephone: (310) 305-2100
Facsimile: (310) 305-2116

Robert J. Fluskey, Jr. *(pro hac vice)*
*rfluskey@hodgsonruss.com*
Ryan K. Cummings *(pro hac vice)*
*rcumming@hodgsonruss.com*
Matthew K. Parker *(pro hac vice)*
*mparker@hodgsonruss.com*
HODGSON RUSS LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
Telephone: (716) 856-4000
Facsimile: (716) 849-0349

Attorneys for Defendants
CTM Biomedical, LLC, Bryan Banman,
CTM Medical, Inc., and Pablo Seoane

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| SKYE ORTHOBIOLOGICS, LLC, a Delaware Limited Liability Company, HUMAN REGENERATIVE TECHNOLOGIES, LLC, a Delaware Limited Liability Company,<br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>CTM BIOMEDICAL, LLC, a Delaware Limited Corporation; BRYAN BANMAN, an individual; CTM MEDICAL INC., a Delaware Corporation; VETERANS MEDICAL DISTRIBUTORS, INC.; a Florida Corporation; GARDNER ROGERS, an individual; MIKE STUMPE, an individual; PABLO SEOANE aka PAUL SEOANE, an individual; NATHAN BOULAIS, an individual; and DOES 3 through 10, inclusive,<br>　　　　　　　　Defendants. | Civil Case No. 2:20-cv-03444-MEMF (PVCx)<br><br>**CTM DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE AREAS OF TESTIMONY OF JAMES DONOHUE**<br><br>Date:　　　August 2, 2023<br>Time:　　　9:00 a.m.<br>Courtroom:　8B |

Defendants CTM Biomedical, LLC ("CTM"), Bryan Banman ("Banman"), CTM Medical, Inc. ("CTM Med"), and Pablo Seoane ("Seoane") (collectively, the "CTM Defendants") submit this opposition to Plaintiffs Skye Orthobiologics, LLC's ("Skye") and Human Regenerative Technologies, LLC's ("HRT") (together, "Plaintiffs") Motion *in Limine* No. 1 to Exclude Areas of Testimony of James Donohue (ECF No. 349).

**PRELIMINARY STATEMENT**

Plaintiffs' Motion *in Limine* No. 1 is meritless, and the Court should deny it in its entirety. Plaintiffs' arguments are based on misstatements of fact and law and mischaracterizations of the expert opinions provided by Mr. Donohue.

Plaintiffs' assertion that Donohue's profit margin opinions are based on "withheld" financial data is false. In calculating CTM's profit margin, Donohue relied on payroll records from CTM Canada (a CTM affiliate), ***which were produced to Plaintiffs in this litigation***. This is "raw" data—source documents—not aggregated data from financial statements. It is highly reliable, and Plaintiffs have possessed it for many months. Donohue did not rely on any CTM Canada financials that were not produced to Plaintiffs.

Contrary to the Plaintiffs' unfounded contention, the law is clear that a damages expert may rely on evidence of marketplace competition when assessing lost profits and disgorgement. Donohue, unlike Plaintiffs' damages expert, accepted the indisputable truth that there are multiple companies in the marketplace that sell placental tissue products. For this basic proposition, he relied on sworn testimony from Bryan Banman, Chris Sharp (Plaintiffs' principal), and Matthew Chormann (a business development employee of Plaintiffs), the expert reports (and interviews) of the CTM Defendants' liability/technical experts, and publicly-available information on competitors, such as Form 10-Ks, marketing materials, and patents. These are precisely the kinds of facts and data that a damages expert may rely upon in forming opinions under Federal Rule of Evidence 703. Plaintiffs seek to preclude this rational analysis because they intend to present a falsehood to the jury—*i.e.*, that Skye and CTM operate in a two-player market, and that every dollar CTM earned should be attributed to Skye.

1

Plaintiffs' arguments that Donohue may not opine on technical product differences or the "viability of patents" are irrelevant. Donohue does not opine on the "viability" of patents, nor does he provide opinions on the technicalities of different products.

Plaintiffs' assertion that Donohue may not provide "legal analysis" is also a red herring. Donohue does not provide legal opinions. In assessing damages for alleged tortious interference with contract, Donohue accepted the enforceability of certain exclusivity provisions in Skye's contracts with its sales representatives. He calculated lost profits and disgorgement damages, but stopped the accrual of such damages when those exclusivity periods expire. This is not legal opinion. It is a proper damages analysis based on documentary evidence that will be admitted at trial.

Finally, Plaintiffs' argument that Donohue may not provide opinions outside the scope of his expert report—such as a reasonable royalty or alternative damages calculations—is based on false statements of fact. Contrary to Plaintiffs' statement on page 8 of their motion, Plaintiffs' damages expert did ***not*** provide ***any*** reasonable royalty analysis or calculation in his report. That is why there is no royalty calculation for the CTM Defendants to directly rebut. Furthermore, Donohue's report is replete with numerous alternative damages calculations. In pressing their misleading argument, Plaintiffs included only a few pages from the Donohue expert report with their motion. The CTM Defendants have attached a complete copy of the Donohue report as Exhibit 1 to the accompanying Fluskey Declaration, which proves that alternative damages calculations is the very subject of that report.

## ARGUMENT

**I.       Plaintiffs' assertion that Donohue has rendered opinions based on "speculative financials" that have been "deliberately withheld" is demonstrably false.**

In assessing the Plaintiffs' alleged disgorgement damages (the amount of profit that CTM should "return" to Plaintiffs), Plaintiffs' damages expert, Henry Kahrs, was required to calculate CTM's profit margin. In doing so, Kahrs should have deducted from CTM's income all appropriate/relevant expenses. However, in an effort to artificially inflate Plaintiffs' alleged damages, Kahrs removed a specific expense—namely, a Management Fee that CTM pays to CTM Canada (a CTM affiliate)—from his profit margin calculation. Kahrs "added back" that expense,

2

1  which had the effect of improperly increasing Plaintiffs' alleged damages. *See* Declaration of Robert Fluskey ("Fluskey Decl."), Exhibit 1 (Rebuttal Expert Report of James J. Donohue) at ¶¶ 9, 10 (fourth bullet), 86-88.

Kahrs' calculation was wrong. In rebuttal, Donohue properly calculated CTM's profit margin by including only that portion of the CTM Management Fee attributable to compensation for CTM Canada employees and Banman. *Id.* at ¶ 87 & Exhibit 15. In calculating these employee expenses, Donohue relied upon payroll documents of CTM Canada, **which were produced to Plaintiffs in this litigation**. *See* Ex. 1 (Donohue report) at Exhibit 15, fn. 1 (citing the produced documents); Ex. 2 (produced payroll records, with Bates numbers). Plaintiffs' assertion that Donohue calculated CTM's profit margin (and the related CTM Canada employment expenses) based on "speculative financials" that were withheld is false. The CTM Defendants have produced all relevant data upon which Donohue relied for these calculations and opinions, and Plaintiffs know that.

Plaintiffs also appear to contend that summary/aggregated financials (such as income statements, balance sheets, *etc.*) of CTM Canada are necessary for Donohue's analysis. But this argument is meritless. The CTM Defendants produced the actual underlying data (the "raw" data) showing these expenses, which is the only data that Donohue relied upon. Why would a summary financial statement (such as an income statement) provide a better source? It clearly does not.

Plaintiffs' assertion that Donohue "admitted" that Banman provided him with only limited documentation is an attempt to mislead the Court. Donohue only deducted from revenue the payroll-based expenses reflected by, and supported by, the payroll records that were produced. Donohue did not deduct any other CTM Canada expenses. If he had deducted other CTM Canada expenses, CTM's profit margin would have been lower (which would have benefitted CTM in the damages analysis). Donohue employed a conservative approach by only considering expenses for which there was underlying documentation. *See* Ex. 1 at ¶¶ 87-88 & Exhibit 15 (Donohue's schedule showing payroll deductions only for those figures supported by the payroll records). During deposition, Donohue did mention that there could be other operational expenses for CTM Canada, as Plaintiffs

note on page 4 of their brief, but Plaintiffs fail to tell the Court that Donohue did not deduct any of those expenses in arriving at the CTM profit margin. *See id.*

On page 4 of their brief, Plaintiffs contend that Donohue's calculation of profit margin is "rank speculation" because he has purportedly "never seen the underlying financial documents to verify the claimed fees." This is another false statement. Clearly, Donohue has reviewed the underlying payroll records in arriving at his payroll deduction. They are cited in his report—with production Bates numbers. *See id.*

It is true that the CTM Defendants prevailed on a discovery motion, where Plaintiffs sought numerous, irrelevant records regarding the operations of CTM Canada. However, despite prevailing on that motion, the CTM Defendants later produced the payroll records that show the payroll expenses attributable to CTM Canada and the CTM Management Fee. *See* Ex. 2. Those are the records that Donohue relied upon. *See* Ex. 1 at ¶¶ 87-88 & Exhibit 15.

**II.     Donohue may rely on evidence of competitors in the placental tissue marketplace.**

As explained in detail in the CTM Defendants' *Daubert* motion directed to Henry Kahrs (ECF No. 331), in calculating damages, Kahrs baselessly assumed that Skye and CTM operate in a two-player market and that there are no other competitors worthy of consideration. Using this assumption, Kahrs concluded (without analysis) that every dollar earned by CTM would have been earned by Skye, absent misappropriation. This assumption is contrary to undisputed evidence and the Court's findings of fact on summary judgment. *See* ECF No. 331 at p. 9 (citing and attaching evidence); ECF No. 248 (Court's summary judgment decision) at 8 ("Numerous companies sell placental membrane and/or flowable particulate products."). Plaintiffs wish to present a false, two-player market theory to the jury and prevent the CTM Defendants from offering a damages analysis that is based on the indisputable truth.

In rebuttal, Donohue performed a proper analysis based on the evidence. Donohue recognized that there are multiple competitors in the marketplace for placental tissue products. He relied on the sworn statements of Banman (a fact witness and a designated industry expert), the deposition testimony of Sharp and Chormann (Plaintiffs' representatives), and the CTM

1  Defendants' liability/technical experts. *See* Ex. 1 at ¶ 47 (Donohue relying on the Banman summary judgment declaration, and Sharpe deposition testimony); Ex. 1 at ¶ 5 (citing reliance on technical experts).

Clearly, a damages expert is permitted to rely on evidence provided by fact witnesses. *See U.S. v. Gonzales*, 307 F.3d 906, 910 (9th Cir. 2002) ("[A]n expert may rely on evidence that is admissible."); *MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2014 WL 971765, at *2 (N.D. Cal. Mar. 5, 2014) (explaining that experts are often not called to testify until after evidence has been admitted because experts base their opinions "upon other evidence in the record").

A damages expert is also permitted to rely upon the opinions of liability/technical experts. *See 350 W.A. LLC v. Chubb Grp. of Ins.*, 2008 WL 151556, at *3 (S.D. Cal. Jan. 15, 2008) (denying motion to exclude testimony of cost-estimation expert because expert reasonably relied on the opinions and reports created by three other proffered experts); *Accessories Mktg., Inc. v. Tek Corp.*, 2013 WL 1409887, at *1 (N.D. Cal. Apr. 2, 2013) ("[E]xperts may rely on the opinion of other experts to formulate their opinions."); *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2019 WL 2211897, at *8 (S.D. Cal. 2019) (denying motion to exclude opinion of damages expert who relied on technical expert's opinions, and explaining that "[s]ince an expert cannot be an expert in all fields, it is common for experts . . . to rely on the report of other experts for background information outside their field of expertise."); *MediaTek Inc.*, 2014 WL 971765, at *1 ("[E]xperts can rely upon the opinions of other experts."); *K&N Eng'g, Inc. v. Spectre Performance*, 2011 WL 13131157, at *10 (C.D. Cal. May 12, 2011) (finding expert's opinion based on survey he did not perform was proper because "a testifying expert can use facts, data, and conclusions of other experts to offer an opinion within the testifying expert's domain of expertise").

Donohue also independently reviewed publicly available information—such as the 10-K filings of competitors in the placental tissue marketplace, marketing materials, and patents—in accepting the indisputable conclusion that multiple companies sell placental membrane and flowable products. *See* Ex. 1 at ¶¶ 47-50 and footnotes 127-140. The quote in Mr. Donohue's report (referenced in Plaintiffs' motion), that the placental tissue market is "highly competitive,"

comes directly from a publicly available 10-K filed by MiMedx Group, Inc., a competitor in the industry. *See id.* at ¶ 47.

Plaintiffs complain that these publicly-available 10-K's and marketing materials are "hearsay." But that complaint demonstrates a fundamental misunderstanding of the rules governing expert opinion. Under Federal Rule of Evidence 703, an expert may base an opinion on inadmissible information (including hearsay) if experts in that particular field would reasonably rely on those kinds of facts or data in forming an opinion. S*ee* Fed. R. Evid. 703; *Travelers Prop. Cas. Ins. Co. v. Electrolux Home Prods. Inc.*, 2013 WL 12114615, at *4 (C.D. Cal. June 7, 2013) ("It is well established that an expert may specifically rely on hearsay evidence."); *In re ComUnity Lending, Inc.*, 2011 WL 7479165, at *3 (N.D. Cal. June 6, 2011) ("Rule 703 permits experts to render opinions based on hearsay so long as the hearsay is of the type reasonably relied on by experts in that field.").

Economic damages experts regularly rely on publicly-available information regarding the competitive landscape of the relevant industry (such as 10-K's and marketing materials) when assessing economic damages. *See* Declaration of James J. Donohue ("Donohue Decl.") ¶¶ 5-6. It is proper (and often necessary) for a damages expert to consider marketplace competitors in determining what, if any, portion of a defendant's revenue should be attributed to the plaintiff. *Id.* at ¶ 6.

Notably, while Plaintiffs fault Donohue for conducting a proper market-based analysis and considering industry competitors, Kahrs also considered marketplace competitors, but only when it suited him. In the section of his expert report dealing with punitive damages, Kahrs conducted a purported "valuation" of CTM. In so doing, he examined publicly-available information regarding alleged precedential sales transactions of other competitors in the placental tissue industry. *See* Ex. 3 at p. 43 & Schedules 16, 18. Apparently, when it might benefit Plaintiffs' case, Plaintiffs and Mr. Kahrs believe it *is* appropriate for a damages expert to consider marketplace competitors based on publicly-available "hearsay" statements.

In footnote 4 of their motion, Plaintiffs contend that Donohue considered "hypothetical" competitors to reduce Plaintiffs' damages analysis. These competitors are not "hypothetical." These

are specific companies identified by Banman, Sharpe, publicly-available 10-K's, marketing materials, and patents. Donohue identifies them by name in the report. *See* Ex. 1 at ¶¶ 45-52. Plaintiffs have simply made up the notion that these competitors are somehow "hypothetical."

### III. Plaintiffs' contentions that Donohue may not opine on technical product differences and the "viability" of patents are red herrings.

On page 7 of their motion, Plaintiffs contend that Donohue is not qualified to opine on the technical differences between placental products or the "applicability or viability of a patent." These arguments are irrelevant to any actual dispute before the Court. Donohue does not intend to provide a technical analysis of placental products, nor does he intend to opine on the "applicability or viability of a patent." These arguments appear to be a subtle attempt by Plaintiff to obtain an Order that prevents Donohue from acknowledging that other competitors exist in the placental tissue marketplace based on the existence of publicly-available patents and marketing materials. The Court should reject that effort (as discussed in detail above).

### IV. Donohue does not intend to provide any "legal opinions" on contracts, and he is permitted to assume the truth of admitted documentary evidence.

On pages 7-8 of their motion, Plaintiffs vaguely contend that Donohue is not qualified to provide "legal analysis" regarding the terms or exclusivity period of contracts. Donohue does not intend to offer legal opinions. When assessing Skye's tortious interference claims, Donohue reviewed Skye's contracts with the at-issue sales representatives, and accepted the enforceability of the exclusivity periods that exist in those contracts (as a damages expert, he assumed liability). This does not require legal analysis. Donohue simply assumed that these agreements would be admitted into evidence.

Using that reasonable assumption, Donohue calculated damages for tortious interference of these contracts with end dates that are consistent with the contracts' exclusivity periods. *See, e.g.,* Ex. 1 at p. 43 (Figure 14) & Exhibit 10. This does not involve legal analysis. Donohue calculated lost profits and disgorgement damages and stopped at a certain date. Plaintiffs seek to exclude Donohue's reasonable calculation because their expert has decided to pretend that these contracts include no temporal limitations on exclusivity. As discussed in the CTM Defendants' *Daubert* motion directed to Mr. Kahrs, Plaintiffs assume that essentially every dollar earned by CTM from

its inception and for the next ten years should be Skye's, regardless of overlapping customers, overlapping representatives, or the terms of the parties' sales representative agreements. Plaintiffs intend to press that falsehood and prevent the CTM Defendants from providing a rebuttal that is based on indisputable, documentary evidence.

**V.    Plaintiffs' argument that Donohue may not provide opinions outside the scope of his report is another red herring, and it is based on demonstrably false assertions.**

On page 8 of its motion, Plaintiffs contend that Donohue's Rule 26 disclosure "makes no mention of royalties or mathematical calculations and/or alternative damages calculations—both of which **are** the subject of Kahrs' report and ultimate testimony . . . ." (emphasis in original). This one sentence includes multiple false statements of fact. First, Kahrs' report does not include any reasonable royalty damages calculation. *See* ECF No. 331-2 (unsealed version emailed to the Court by Matthew K. Parker, Esq. on July 3, 2023 at 10:01 a.m. PST) (Kahrs entire report, showing no mention or analysis of reasonable royalty). Second, Donohue's expert report obviously includes alternative damages calculations. Alternative damages calculations is *the* subject of Donohue's report. Even a cursory review of the disclosure makes it abundantly clear that Donohue's report presents numerous alternative damages calculations and theories. *See*, *e.g.*, Exhibit 1 at pp. 9 (tables showing "adjusted" Kahrs' calculations based on Donohue's alternative models and calculations), 42 ("adjusted" Kahrs' damages based on Donohue's alternative models and calculations), 43 (more "adjusted" damages numbers), 44 (same), 46 (same), 48 (same) and Exs. 9, 10, 11, 12, 12A, 12B, 13, 14, and 15.

## CONCLUSION

For the foregoing reasons, the CTM Defendants respectfully request that the Court deny Plaintiffs' Motion *in Limine* No. 1 in its entirety.

Dated: July 19, 2023

**HODGSON RUSS LLP**
*Attorneys for Defendants*
*CTM Biomedical, LLC, Bryan Banman, CTM Medical, Inc., and Pablo Seoane*

By: *s/Robert J. Fluskey, Jr.*

Robert J. Fluskey, Jr. *(pro hac vice)*
Ryan K. Cummings *(pro hac vice)*
Matthew K. Parker *(pro hac vice)*
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000
*rfluskey@hodgsonruss.com*
*rcumming@hodgsonruss.com*
*mparker@hodgsonruss.com*

Paul T. Martin (SBN 155367)
  pmartin@hgla.com
Thomas H. Case (SBN 116660)
  tcase@hgla.com
HENNELLY & GROSSFELD LLP
10900 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Telephone: (310) 305-2100
Facsimile: (310) 305-2116

16590203v1

9