1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          CENTRAL DISTRICT OF CALIFORNIA

9

10

11   SKYE ORTHOBIOLOGICS, LLC, a Delaware      Case No.: 2:20-cv-03444-MEMF-PVC
     Limited Liability Company;
12   HUMAN REGENE RATIVETECHNOLOGIES,          **ORDER ON PLAINTIFFS SKYE**
     LLC, a Delaware Liability Company         **ORTHOBIOLOGICS, LLC AND HUMAN**
13                                             **REGERNATIVE TECHNOLOGIES, LLC'S**
                              Plaintiffs,      **MOTIONS *IN LIMINE* [ECF NOS. 349–350,**
14                                             **353–355], DEFENDANT MIKE STUMPE'S**
                     v.                        **MOTIONS *IN LIMINE* [ECF NOS. 314–315],**
15   CTM BIOMEDICAL, LLC, a Delaware           **AND CTM DEFENDANTS' MOTIONS *IN***
     Limited Liability Corporation; BRYAN      **_LIMINE_ [ECF NOS. 331–335, 337–338]**
16   BANMAN, an individual; CTM MEDICAL,
     INC., a Delaware Corporation; VETERANS
17   MEDICAL DISTRIBUTORS, INC., a
     Florida Corporation; GARDNER ROGERS, an
18   individual; MIKE STUMPE, an
     individual; PABLO SEOANE aka PAUL
19   SEOANE, an individual; NATHAN
     BOULAIS, an individual; and DOES 3
20   through 10, inclusive,
21
                              Defendants.
22

23        Before the Court are five (5) motions *in limine* filed by the Plaintiffs Skye Orthobiologics,

24   LLC, and Human Regenerative Technologies, LLC (ECF Nos. 349–350, 353–355), six (6) motions

25   *in limine* filed by the CTM Defendants (ECF Nos. 331–334, 337–338), one (1) motion *in limine* filed

26   by Defendant Bryan Banman (ECF No. 335), and two (2) motions *in limine* filed by the Defendant

27

28

1    Mike Stumpe (ECF Nos. 314–315), .[1] For the reasons stated herein, the Court GRANTS the motions

2    in part and DENIES the motions in part as described below.

3    **I.    <u>Background</u>**

4        **A.  Factual Background**

5        Plaintiff Human Regenerative Technologies, LLC ("HRT") processes and manufactures

6    medical products that are derived from human placental tissue. Plaintiff Skye Orthobiologics, LLC

7    ("Skye," or collectively with HRT, the "Skye Plaintiffs" or "Plaintiffs") sells various human tissue

8    products, including products manufactured by HRT, among other products. Defendant Bryan

9    Banman ("Banman") is a former Senior Vice President of Business Development of Skye. Banman

10   is also the current President and CEO of Defendant CTM Biomedical, LLC ("CTM")—a company

11   that also sells human tissue products—which he started while he was still employed by Skye. This

12   case concerns Plaintiffs Skye and HRT's allegations that Banman—along with his new company

13   CTM, and the related entity CTM Medical Inc. ("CTM Med.," or collectively with CTM, the "CTM

14   Defendants"), and Defendants Mike Stumpe ("Stumpe"), Nathan Boulais ("Boulais"), and Pablo

15   Seoane ("Seoane")—misappropriated the Skye Plaintiffs' trade secrets, breached relevant contracts

16   and duties, and interfered with the Skye Plaintiffs' contracts and prospective economic advantage.

17       **B.  Procedural History**

18       On April 14, 2020, the Skye Plaintiffs filed a complaint against the CTM Defendants and

19   Defendants Veterans Medical Distributors, Inc., and Gardner Rogers. ECF No. 1. The complaint has

20   been amended three times. ECF Nos. 62, 109, 130 ("Fourth Amended Complaint" or "4AC"). The

21   operative Fourth Amended Complaint, filed on February 3, 2022, alleges eleven (11) causes of

22   action: (1) RICO, 18 U.S.C. § 1962(c); (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d); (3)

23   violation of the Federal Defend Trade Secrets Act (18 U.S.C. § 1836, et seq.); (4) breach of contract

24   – HRT; (5) breach of contract – Skye; (6) conversion against CTM and Banman; (7) conversion

25   against Stumpe; (8) tortious interference with contract; (9) tortious interference with prospective

26

27   _____

28   [1] The CTM Defendants and Banman did not number their motions, but for ease of reference, the Court will refer to them by number.

1  economic advantage; (10) breach of fiduciary duty; and (11) breach of duty of loyalty. *See generally*

2  4AC. On December 21, 2022, the Court granted the Parties' stipulation to dismiss Veterans Medical

3  Distributors, Inc., and Gardner Rogers from the case. ECF No. 218. On December 19, 2022, the

4  Parties filed a fully briefed joint Motion for Partial Summary Judgment, with the CTM Defendants

5  as the moving party. ECF No. 211 "MSJ"). The Court held oral argument on this matter on March

6  16, 2023, and granted Court granted summary judgment in part on May 23, 2023. ECF No. 248.

7        On June 28, 2023, the Skye Plaintiffs and CTM Defendants collectively filed twenty-nine

8  (29) motions *in limine*. *See* ECF Nos. 270–285, 288–97, 299, 322, 324. On June 29, 2023, the Court

9  issued a Minute Order finding the twenty-nine (29) motions *in limine* to be excessive and therefore

10  struck the motions (ECF Nos. 270–285, 288–97, 299, 322, 324); the Motions and Joinder submitted

11  by Defendants Boulais and Stumpe at ECF Nos. 314–315 were not stricken. ECF No. 328. The

12  Court limited the Skye Plaintiffs and CTM Defendants to five (5) motions *in limine* each

13  collectively. *Id.*

14        On June 28, 2023, Defendant Mike Stumpe filed two (2) motions *in limine* (ECF Nos. 314–

15  315). Defendant Boulais joined Stumpe's two motions *in limine*. ECF No. 323. Plaintiffs filed

16  oppositions to these motions on July 19, 2023. ECF Nos. 381–82. On July 3, 2023, the CTM

17  Defendants filed six (6) motions *in limine* (ECF Nos. 331–334, 337–338) and Defendant Bryan

18  Banman filed one (1) motion *in limine* (ECF No. 335). Defendants Stumpe and Boulais joined the

19  CTM Defendants' motions *in limine* Nos. 1, 2, and 4. ECF Nos. 347, 357. Plaintiffs filed oppositions

20  to the motions on July 19, 2023 and July 28, 2023. ECF Nos. 373–75, 379–80, 416-17. On July 3,

21  2023, the Skye Plaintiffs filed five (5) motions *in limine* (ECF Nos. 349–50, 353–55). Defendants

22  filed oppositions to these motions on July 19, 2023. ECF Nos. 383–84, 385–87, 392-94, 401.

23  **II.**    <u>**Applicable Law**</u>

24      **A.  Motions *in limine***

25        A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a

26  particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). A party files a motion

27  *in limine* to exclude anticipated prejudicial evidence before the evidence is introduced at trial. *See*

28  *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A court has the power to grant such motions

pursuant to its "inherent authority to manage trials," even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Id.* at 41 n.4 (citation omitted). Regardless of a court's initial decision on a motion *in limine*, it may revisit the issue at trial. *Id.* at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

### B. Federal Rule of Civil Procedure 26

#### i. FRCP 26(a)(2)

Under Federal Rule of Civil Procedure 26(a)(2), a party is required to disclose an expert witness and submit an accompanying report prepared by the witness. FED. R. CIV. P. 26(a)(2)(A)–(B). This written report must contain, in part: (1) a complete statement of all opinions expressed by the witness and the "basis and reasons for them"; (2) the facts and data used by the witness in forming his or her opinions; and (3) the exhibits that will be used to support or summarize the opinions. FED. R. CIV. P. 26(a)(2)(B)(i)–(iii).

Further, absent a stipulation or a court order, expert disclosures must be made "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure." FED. R. CIV. P. 26(a)(2)(D)(ii). "[T]he function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005); *see also United States v. Webb*, 115 F.3d 711, 719 n. 5 (9th Cir. 1997) *abrogated on other grounds by United States v. Espinoza-Valdez*, 889 F.3d 654 (9th Cir. 2018) *quoting* 1 Graham, § 611.3, at 819 ("The proper scope and function of rebuttal is thus refutation, which involves evidence which denies, explains, qualifies, disproves, repels, or otherwise sheds light on evidence offered by the defense[.]"); Black's *Law Dictionary* 1295 (8th ed.) (defining "rebut" as "to refute, oppose, or counteract (something) by evidence, argument, or contrary proof"); *see also U.S. v. Collins*, 90 F.3d 1420 (9th Cir. 1996) (finding the district court did not abuse its discretion by admitting rebuttal evidence of burglary to counter the adverse party's evidence). Rebuttal evidence may be used to challenge "the evidence or theory of an opponent—and not to establish a case-in-chief." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006); *see also Cates v. Sears, Roebuck & Co.*,

928 F.2d 679, 685 (5th Cir. 1991) ("Rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief."). The scope of rebuttal evidence is within the "broad discretion" of the court. *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) ("The district court has broad discretion in deciding what constitutes proper rebuttal evidence."); *see also Geders v. United States*, 425 U.S. 80, 86 (1976) ("Within limits, the judge may control the scope of rebuttal testimony[.]" (internal citations omitted)).

ii.   FRCP 26(e)

Rule 26(e)(i) imposes a duty on parties to supplement their Rule 26(a) disclosures if the party learns that its disclosures are incomplete or incorrect. Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). However, the Court provides two exceptions for when the information may still be introduced: if the parties' failure to disclose the required information is substantially justified or harmless. *Id.* (citing FED. R. CIV. P. 37(c)(1)). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107.

**C. Federal Rule of Civil Procedure 37(c)**

Federal Rule of Civil Procedure 37(c) is "an 'automatic' sanction that prohibits the use of improperly disclosed evidence should a party fail to provide information or identify a witness as required by Rule 26(a) or (e). *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (citing *Yeti*, 259 F.3d at1106). The Rule states that, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P.  37(c)(1). Implicit in Rule 37(c)(1), "Is that the burden is on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107. Further, "in addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard" may order payments of expenses caused by the failure, inform the jury of the failure, and impose other appropriate sanctions. FED. R. CIV. P. 37(c)(1).

/ / /

### D.  Federal Rule of Civil Procedure 42(b)

Federal Rule of Civil Procedure 42(b) gives district courts broad discretion to bifurcate a trial. *Zivkovic v. Southern California Edison*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the district court to bifurcate trial"); *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) ("[The Ninth Circuit] usually affirm[s] a trial judge's decision—to either bifurcate or keep things together—as within her discretion"); *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) ("Rule 42(b) [] confers broad discretion upon the district court to bifurcate trial" and is "accordingly reviewed for abuse of discretion"). FED. R. CIV. P. 42(b) provides in relevant part: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one of more separate issues, claims, crossclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Some factors that may be considered by the Court on a motion to bifurcate include:

> (1) Whether separate trials would be in furtherance of convenience; (2) whether separate trials would avoid prejudice; (3) whether separate trials would be conducive to expedition and economy; (4) whether separate trials would simplify the issues for the jury and reduce the danger of unnecessary confusion; and (5) whether the issues are clearly separable.

Robert E. Jones et al., *Rutter Group Prac. Guide Fed. Civ. Trials & Ev.* ¶ 4:492 (2022).

### E.  Federal Rules of Evidence 103, 104, and 901

Federal Rule of Evidence 104 establishes that the court must decide any preliminary question regarding whether a witness is qualified, matters of privilege, or the admissibility of evidence. FED. R. EVID. 104(a). In deciding such, the court is not bound by evidence rules, except those pertaining to privilege. *Id.* Further, "[w]hen the relevance of evidence depends on whether a fact exists," sufficient proof must be introduced to support the existence of the fact, or the court may admit the proposed evidence on the condition that the proof be introduced later. FED. R. EVID. 104(b); *see also Carbo v. United States* 314 F.2d 718, 737 (9th Cir. 1963) (establishing that the judge decides "preliminary questions of fact determinative of the admissibility of evidence challenged under technical evidentiary rules."); *see also United States v. Dennis*, 183 F.2d 201, 231 (2d Cir. 1950)

1  ("[T]he judge is always to decide . . . any issues of fact on which the competence of evidence

2  depends[.]").

3      Additionally, authentication is a "condition precedent to admissibility" that is satisfied by

4  "evidence sufficient to support a finding that the matter in question is what the proponent claims it

5  is." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (quoting FED. R. EVID.

6  901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the

7  proponent must produce evidence sufficient to support a finding that the item is what the proponent

8  claims it is.")). Ultimately, questions of authenticity and admissibility are within "the sound

9  discretion of the trial judge." *Arena v. United States*, 226 F.2d 227, 235 (9th Cir. 1955) ("The

10  question of whether the authenticity of a document has been sufficiently proved prima facie to

11  justify its admission into evidence rests in the sound discretion of the trial judge." (internal citations

12  omitted)).

13      Lastly, under Federal Rule of Evidence 103, a party may claim error in a ruling to admit or

14  exclude evidence only if the error affects a "substantial right" of the party and the party provides the

15  court with an objection, motion to strike, or offer of proof. FED. R. EVID. 103(a); *U.S. v. Cutler*, 676

16  F.2d 1245, 1249 (9th Cir. 1982) (upholding the trial court's exclusion of evidence where the party

17  failed to present any evidence to substantiate his offers of proof).

18      **F.  Federal Rules of Evidence 401 and 402**

19      Federal Rule of Evidence 402 explicitly prohibits the inclusion of "irrelevant" evidence. FED.

20  R. EVID. 402. The Rule dictates that "[r]elevant evidence is admissible unless any of the following

21  provides other: the United States Constitution; a federal statute; these rules; or other rules prescribed

22  by the Supreme Court. Irrelevant evidence is not admissible." *Id.*

23      Federal Rule of Evidence 401 prescribes what evidence qualifies as relevant. FED. R. EVID.

24  401. It provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less

25  probable than it would be without the evidence; and (b) the fact is of consequence in determining the

26  action." *Id.* 401(a)–(b); *see also Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir.

27  2019) ("Deciding whether a fact is of consequence in determining the action generally requires

28  considering the substantive issues the case presents." (internal quotation marks omitted)). Courts

1  have recognized that Rule 401's "basic standard of relevance . . . is a liberal one." *Crawford*, 944

2  F.3d at 1077.

3     **G.  Federal Rules of Evidence 403 and 703**

4     Federal Rule of Evidence 403 dictates that "[t]he court may exclude relevant evidence if its

5  probative value is substantially outweighed by a danger of one or more of the following: unfair

6  prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

7  presenting cumulative evidence." District courts have broad discretion in assessing admissibility

8  under Rule 403. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 US 379, 384 (2008) (finding "wide

9  discretion" necessary because Rule 403 "requires an on-the-spot balancing of probative value and

10  prejudice, potentially to exclude . . . evidence that already has been found to be factually relevant")

11  (internal quotes omitted)); *see also Hardeman v. Monsanto Co.*, 997 F.3d 941, 967 (9th Cir. 2021),

12  *cert. denied*, 142 S. Ct. 2834 (2022) ("A district court's Rule 403 determination is subject to great

13  deference, because the considerations arising under Rule 403 are susceptible only to case-by-case

14  determinations, requiring examination of the surrounding facts, circumstances, and issues.").

15     Federal Rule of Evidence 703 establishes that an expert may base their opinion on "facts or

16  data in the case that the expert has been made aware of or personally observed." FED. R. EVID. 703;

17  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993) ("[A]n expert is permitted

18  wide latitude to offer opinions, including those that are not based on firsthand knowledge or

19  observation."). If experts in the particular field would "reasonably rely on those kinds of facts or data

20  in forming an opinion on the subject, they need not be admissible for the opinion to be admitted,"

21  but if the facts or data would otherwise be inadmissible, the proponent of the opinion can only

22  disclose them to the jury if "their probative value in helping the jury evaluate the opinion

23  substantially outweighs their prejudicial effect." FED. R. EVID. 703; *see also Daubert*, 509 U.S. at

24  595 (noting that under Rule 703, expert opinions based on inadmissible hearsay should only be

25  admitted if the facts or data are "of a type reasonably relied upon by experts in the particular field in

26  forming opinions or inferences upon the subject" (internal quotations omitted)).

27     / / /

28     / / /

### H.  Federal Rule of Evidence 404

Federal Rule of Evidence 404 states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  FED. R. EVID. 404(a). Further, evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Such evidence may be used for other purposes, including to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  FED. R. EVID. 404(b)(2).

### I.  Federal Rule of Evidence 608

Federal Rule of Evidence 608(b) allows for specific instances of dishonest conduct to be "inquired into [on cross-examination]. . .if they are probative of the character for truthfulness or untruthfulness" of the witness. FED. R. EVID. 608(b). Rule 608(b) operates in conjunction with Rule 403, meaning that as long as the conduct in question tends to show the witness's character for untruthfulness, said conduct may be raised on cross-examination subject to Rule 403's requisite balancing test. *See United States v. Olsen*, 704 F.3d 1172, 1184 n.4 (9th Cir. 2013) ("Rule 608(b) of the Federal Rules of Evidence authorizes courts to permit inquiry into specific instances of conduct during cross-examination if they are probative of the character for untruthfulness of the witness— subject, of course, to the balancing analysis of Rule 403.").

### J.  Federal Rule of Evidence 702

The personal knowledge requirement for lay witnesses does not apply to expert testimony. FED. R. EVID. 602. Federal Rule of Evidence 702 allows a witness to testify as an expert "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Alonso*, 48 F.3d 1536, 1540 (9th Cir. 1995) (quoting FED. R. EVID. 702). While Courts may reject wholly speculative or unfounded testimony, it abuses its discretion if it overlooks relevant data submitted as the foundation of an expert's remarks." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022). Experts may express opinions without published support if they provide an explanation of why such publications are

1    unavailable. *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010). This concern regarding

2    speculation speaks to weight, not reliability. *Elosu*, 26 F.4th at 1025.

3            **K.  Federal Rules of Evidence 801, 802, and 805**

4          As defined by Federal Rule of Evidence 801, "hearsay" is an out-of-court statement that: (1)

5    the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in

6    evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801. A statement

7    includes "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it

8    as an assertion." *Id.* Under Federal Rule of Evidence 802, hearsay evidence is inadmissible unless

9    otherwise provided by a federal statute, the Federal Rules of Evidence, or other rules prescribed by

10    the Supreme Court. FED. R. EVID. 802. Hearsay within hearsay is likewise inadmissible unless each

11    part of the combined statements conforms with an exception to the rule against hearsay. FED. R.

12    EVID. 805.

13    **III.    Discussion—The Skye Plaintiffs' Motions *in Limine***

14          The Skye Plaintiffs move to exclude at trial (1) areas of testimony from rebuttal expert James

15    Donohue (ECF No. 349), (2) patents from other companies and the 2014 report "Amniotic

16    Membrane Processing in the United States" (ECF No. 350), (3) evidence of Banman's purported

17    reasons for leaving his employment with Skye (ECF No. 353), (4) evidence regarding other litigation

18    (ECF No. 354), and (5) evidence related to dismissed claims and parties (ECF No. 355).

19          For the reasons stated below, the Skye Plaintiffs' Motion *in limine* Nos. 1-3 and 5 are

20    DENIED and the Skye Plaintiffs' Motion *in limine* No. 4 is GRANTED.

21            **A.  Areas of Testimony from Expert James Donohue shall be permitted (Skye Plaintiffs'**

22                **Motion *in limine* No. 1, ECF No. 349).**

23          The Skye Plaintiffs request that the Court preclude any opinions, argument, testimony or

24    legal analysis by Expert James Donohue ("Donohue") regarding or relating to: (1) CTM Canada's

25    financials or opinions based on CTM Canada's financials since those were deliberately withheld

26    from Plaintiffs during discovery and Donohue was not provided with any profit/loss or revenue

27    information, but instead only provided piecemeal employee compensation tax documents to review;

28    (2) any viable competitors of Skye or CTM in the marketplace and whether their products are

factually similar or different; (3) any differences between Skye and CTM's products since he is admittedly not qualified to opine on product information; (4) the viability or applicability of any patent compared to Plaintiffs' products; (5) the terms of any confidentiality agreement or the exclusivity periods therein by and between Plaintiffs and Defendants since he is not a lawyer and is admittedly not providing legal opinions; (6) any reasonable royalties or alternate calculations of damages since none were disclosed to the Plaintiffs in his report or at his deposition; and (7) any opinions at trial outside the scope of the testimony of Plaintiffs' expert Hank Kahrs because Donohue is exclusively a rebuttal expert. ECF No. 349 at 1. Plaintiffs argue that these areas of Donohue's testimony should be excluded because the testimony is defective under Federal Rules of Evidence 702, 703, 401, 402, 403, and Federal Rules of Civil Procedure 26 and 37. ECF No. 349 at 2.

Defendants argue that (1) Donohue's opinions are based on proper calculations, rather than "speculative financials," (2) Donohue may rely on evidence of competitors in the placental tissue marketplace, (3) Donohue does not intend to provide a technical analysis of placental products or to opine on the "applicability or viability of a patent," (4) Donohue does not intend to provide any "legal opinions" on contracts and is permitted to assume the truth of admitted documentary evidence, and (5) Kahrs' report does not include any reasonable royalty damages calculation, while Donohue's does. ECF No. 383 at 4–8.

The Court finds that the witness offered is a designated expert with appropriate credentials. Defendants' arguments go towards factual disagreement, bias, and weight, but not his actual qualifications or an absence of the basis for opinions. The motion is DENIED.

**B. Evidence, argument, testimony, or references to, patents from any third party, shall be permitted but the 2014 Report "Amniotic Membrane Processing in the United States" shall not be admitted (Skye Plaintiffs' Motion *in limine* No. 2, ECF No. 350)**

The Skye Plaintiffs request an Order *in limine* excluding patents from any third party, any evidence, argument, testimony, or references to, patents from any third party, and the 2014 Report ("2014 Report" or "Report") prepared in part by Defense Expert James Forsell entitled "Amniotic Membrane Processing in the United States." ECF No. 350 at 1.

1    Plaintiffs argue that any patents or information in the 2014 Report relating to placental tissue

2    processing is irrelevant under the Federal Rules of Evidence 401 and 402 and create a substantial

3    danger of confusing the jury and causing undue prejudice to the Plaintiffs under Rule 403. *Id.*

4    Moreover, Plaintiffs argue that the 2014 Report contains "junk science" under Federal Rules of

5    Evidence 702, is completely unreliable and double hearsay under Rules 801, 802, 805, 103, 104,

6    901, is irrelevant under 401 and 402, and creates a substantial danger of undue prejudice to Plaintiffs

7    under Rules 403 and 703. *Id.*

8    Defendants argue that (1) the patents and Dr. Forsell's Report are relevant to the claims that

9    remain and to Plaintiffs' damages, (2) Banman should be permitted to rely on the patents to support

10   his expert opinion, (3) Dr. Forsell can lay the foundation for his Report, and (4) the Report is

11   admissible under Federal Rules of Evidence 703 and 807. ECF No. 384 at 3–9.

12   With respect to the patents, the Court finds that the patents are relevant and carry very little

13   risk of prejudice. Defendants are entitled to attempt to show that the information which the Skye

14   Plaintiffs allege is confidential has actually been disclosed publicly in a patent. To the extent that the

15   information publicly disclosed is not the information that the Skye Plaintiffs are attempting to

16   protect, they can address that through appropriate cross-examination.

17   With respect to the testimony of Dr. Forsell, the Court finds that the witness offered is a

18   designated expert with appropriate credentials. His proposed opinions regarding the industry are

19   relevant to liability and damages. Defendants' arguments go towards factual disagreement, bias, and

20   weight, but not his actual qualifications or an absence of the basis for opinions. The Skye Plaintiffs

21   can address any perceived weaknesses in his opinions or methodology through appropriate cross

22   examination.

23   With respect to the 2014 Report itself, the vast majority of the objections raised by the Skye

24   Plaintiffs are of no moment, but the 2014 Report is subject to exclusion as inadmissible hearsay just

25   like any other expert report. The Defendants' arguments that the Court should permit the 2014

26   Report itself to be admitted under Rule 807 is not well-taken. They have failed to demonstrate that it

27   is indeed more probative than other evidence, most notably, Dr. Forsell's actual testimony.

28

The Skye Plaintiff's Motion in Limine No. 1 is DENIED with respect to the patents and Dr. Forsell's testimony and is GRANTED with respect to the 2014 Report.

### C. Evidence of Bryan Banman's purported reasons for leaving his employment with Skye shall be permitted (Skye Plaintiffs' Motion *in limine* No. 3, ECF No. 353).

The Skye Plaintiffs request that the Court exclude any and all evidence, references to evidence, testimony, or argument relating to Banman's purported reasons for leaving Skye because such is irrelevant to any claim or defense of either party under Federal Rules of Evidence 401, 402, and 403. ECF No. 353 at 1. Further, Plaintiffs argue that the probative value of such irrelevant material is substantially outweighed by the dangers of unfair prejudice, confusing the issues, wasting time, and misleading the jury under Federal Rule of Evidence 403. *Id.*

Defendants argue that Banman's reasons for resigning his employment with Skye are relevant to Plaintiffs' claims of breach of fiduciary duty, breach of loyalty, and breach of contract. ECF No. 385 at 2–4. They further argue that Banman's reasons for leaving Skye will not prejudice Plaintiffs or confuse the jury. *Id.* at 4–5.

Given that the Plaintiffs have put at issue Banman's reasons for Skye—alleging that he left as part of a scheme to steal their secrets and start a competitor—Banman cannot be prohibited from presenting evidence to refute Plaintiffs' case. In addition, this evidence is relevant to a central element of breach of contract—whether the opposing party was in compliance. The motion is DENIED.

### D. Evidence of other litigation shall be excluded (Skye Plaintiffs' Motion *in limine* No. 4, ECF No. 354).

The Skye Plaintiffs request that the Court preclude all counsel and witnesses from presenting any argument, statement, reference to, or question relating to: (1) any allegations or court decisions involving HRT and Banman in a separate litigation entitled, *Banman v. HRT*, Delaware Chancery Court, Case Number 2020-0490-PAF1, and (2) lawsuits, and any allegations therein, by Skye against current or former sales representatives or medical facilities for collection of debts against third parties who are not parties to this litigation. ECF No. 354 at 1.

1    Plaintiffs argue that evidence of unrelated litigation is not relevant to the claims and/or

2    defenses at issue pursuant to Federal Rules of Evidence 401 and 402. *Id.* Further, even if the

3    evidence was somehow relevant, Plaintiffs argue that such relevance is of little probative value and

4    be substantially outweighed by the danger of causing unfair prejudice, confusion, delay, and the jury

5    to be misled pursuant to Federal Rules of Evidence 403. *Id.* Additionally, Plaintiffs argue that

6    evidence of other litigation is inadmissible character evidence that would be offered for the purpose

7    of showing that the Plaintiffs are at fault in another lawsuit and/or to negatively paint the Plaintiffs

8    as litigious under Federal Rules of Evidence 404 and 608. *Id.*

9    Defendants argue that the *Banman v. HRT* action (1) is relevant to HRT's breach of contract

10   claim against Banman, (2) is not unduly prejudicial to Plaintiffs, and (3) does not constitute

11   character evidence or evidence of prior bad acts. ECF No. 386 at 2–5.

12   Defendants appear to concede that the only litigation that might be relevant is the books-and-

13   records action, and that in that action, the Court found that Plaintiffs allegedly violated a state law

14   requirement—not that the Plaintiffs were in breach of the relevant contracts. Defendants have failed

15   to show how Plaintiffs alleged failure to comply with this state law requirement is relevant to any

16   claims. Compliance with this state law does not appear to be an element of any of the claims at issue.

17   Accordingly, Defendants have failed to show the relevance of any of the litigation at issue. The

18   motion is GRANTED.

19
20   **E. Evidence of dismissed claims and parties shall be permitted in part (Skye Plaintiffs' Motion *in limine* No. 5, ECF No. 355).**

21   The Skye Plaintiffs request that the Court exclude any and all evidence, references to

22   evidence, testimony, or argument relating to: (1) dismissed parties Gardner Rogers and Veterans

23   Medical Distributors ("VMD"), (2) dismissed claims for conversion against Defendants, (3)

24   dismissed portions of the DTSA claim, (4) and/or any other dismissed parties or claims. ECF No.

25   355 at 1.

26   Plaintiffs argue that any such evidence, argument, or testimony is irrelevant to any claim or

27   defense of either party under Federal Rules of Evidence 401 and 402, and that the probative value of

28

1    such irrelevant material is substantially outweighed by the dangers of unfair prejudice, confusing the

2    issues, delay, and misleading the jury under Federal Rule of Evidence 403. *Id.*

3        Defendants argue that evidence of dismissed claims and parties is relevant to Plaintiffs'

4    damages and remaining claims and that such evidence is not unduly prejudicial. ECF No. 387 at 2–7.

5        Plaintiffs have conceded that at some point, their experts did rely on these dismissed claims

6    and parties. Defendants are therefore entitled to cross-examine these experts on whether and how

7    their estimates changed as the scope of the case changed. Accordingly, this evidence is relevant.

8    However, the fact that the claims or parties were "dismissed" and the reason why the claims were

9    dismissed (i.e., via settlement, voluntary dismissal, and/or prior order of this Court) is wholly

10   irrelevant and highly prejudicial. Defendants have made clear that they wish to present evidence on

11   the fact that these claims and parties were dismissed and why to show the objective speciousness of

12   the remaining claims and the bad faith of the Skye Plaintiffs in bringing them. Defendants have

13   pointed to no question before the jury that relates to this. They have not alleged that the jury is

14   responsible for determining attorneys' fees under the DTSA and their proposed verdict form

15   contains no questions on attorneys' fees, bad faith, or speciousness.

16       In addition, Stumpe argues that evidence regarding the dismissal of certain claims and parties

17   is relevant to the question of whether the Skye Plaintiffs have adequately protected their trade

18   secrets. *See, e.g.*, ECF 394-1. The Court notes that Stumpe does not identify with specificity what

19   evidence goes to this and does not cite any authority to support the idea that the dismissal of a trade

20   secret claim *through settlement* or *by a Court upon motion of an opposing party* is probative

21   evidence that a party has not adequately protected its trade secrets. By definition, claims and parties

22   that have been dismissed were once part of the case and therefore it cannot be argued that the Skye

23   Plaintiffs took no reasonable measures to protect the secrecy of the trade secrets at issue with those

24   dismissed claims and parties.

25       Accordingly, the Defendants shall be PRECLUDED from making any reference to these

26   claims or parties having been "dismissed" or why these claims or parties are no longer in the case.

27   Any reference to dismissed claims or parties shall be as neutral as possible and simply reference the

28   fact that these claims or parties are "no longer involved in the case."

Because of the highly prejudicial nature of the reference to "dismissal," the Court will closely monitor any discussion or testimony on this issue and any violations of this Order will be dealt with appropriately and immediately. Any attempt by the Defendants to make reference to these issues in a manner precluded by this Court risks the Court advising the jury of the Defendants' violation of the Court order. Similarly, the Skye Plaintiffs shall be careful not to open the door to this testimony by suggesting anything about why these claims or parties are no longer in the case. All parties shall advise their witnesses of this Order in particular and admonish them accordingly. To the extent that a witness must refer to precluded information in order to answer a question, the witness shall simply state "sidebar" and the matter can be addressed outside the presence of the jury.

For the foregoing reasons, the Skye Plaintiffs' Motion *in limine* No. 5 is GRANTED in part and DENIED in part.

## IV.    **Discussion—The CTM Defendants' Motions *in Limine***

The CTM Defendants move to (1) exclude at trial opinions and testimony of Henry Kahrs (ECF No. 331), (2) exclude evidence and argument related to damages on Counts 8, 10, and 11 and the purportedly untimely new opinions offered by Plaintiffs' damages expert (ECF No. 332), (3) exclude testimony of Blair Hodgman and evidence regarding Banman's immigration status (ECF No. 333), (4) bifurcate punitive damages and exclude or delay evidence of the individual defendants' personal finances/net worth and Plaintiffs' "Valuation" of CTM (ECF No. 334), (5) exclude all testimony of Joseph Spell (ECF No. 337), and (6) exclude all testimony of Plaintiffs' proffered expert on patents, Daniel Cislo (ECF No. 338).

### A.    **Opinions and testimony of Henry J. Kahrs shall be permitted (CTM's Motion *in limine* No. 1, ECF No. 331).**

The CTM Defendants request that the Court exclude the opinions and testimony of Henry J. Kahrs ("Kahrs"), the damages expert disclosed by Plaintiffs. The CTM Defendants claim Kahrs' opinions are based on unsupported assumptions or unreliable methodologies, in violation of FRE 704, 403, and *Daubert*, 509 U.S. 579. ECF No. 331 at 4–5. They ask that, should the Court not entirely exclude Kahrs testimony, it preclude his opinions on CTM's ten-year revenue projection, his

lost profits analysis, and his purportedly untimely disclosure of a damages opinion on Count 5. *Id.* at 5.

Plaintiffs argue that Kahrs' testimony is proper because (1) his background qualifies him to provide expert opinion, (2) Kahrs' supplements to his expert report in June 2023 were statutorily mandated, and (3) Defendants' claims about Kahrs' opinions are flawed because although the Defendants take issue with Kahrs refusing to "engage in an apportionment analysis," California does not require an apportionment of damages to individual trade secrets. ECF No. 373 at 3–11.

The Court finds that the witness offered is a designated expert with appropriate credentials. Defendants' arguments go towards factual disagreement, bias, and weight, but not his actual qualifications or an absence of the basis for opinions. The motion is DENIED. The motion is DENIED as to Defendants Stumpe and Boulais as well.

### B. Damages on Counts 8, 10, and 11, and the untimely new opinions offered by Plaintiff's damages expert shall be permitted (CTM's Motion *in limine* No. 2, ECF No. 332).

The CTM Defendants request that the Court exclude damages on Counts 8, 10, and 11 and the purportedly untimely new opinions offered by Khars as Plaintiffs' damages expert. The CTM Defendants argue that the amended Expert Report of Kahrs (the "Amended Report"), filed on June 27, 2023, came "over four months after the close of expert discovery, more than thirty days after the Court's Summary Judgment Order, and after numerous meet-and-confers." ECF No. 332, at 6. They explain that the Amended Report includes new opinions and calculations despite Kahrs having had all the data necessary to provide these opinions when serving his first report. *Id.* The CTM Defendants argue this disclosure was untimely, causes prejudice, and that the denial of their right to depose Kahrs about the new report would force their rebuttal expert to digest the new report "(without the benefit of a deposition) fewer than sixty days from trial." *Id.* at 7.

Plaintiffs argue that (1) the CTM Defendants—by only noting when expert discovery closed but ignoring the fact that Kahrs was required to supplement his reports in accordance with FRCP 26(e)(2)—misrepresent the historical record on the issue, (2) Kahrs' reports are appropriate, mischaracterized in the Defendants' motion, and nonprejudicial, and (3) Plaintiffs do not have the burden to apportion damages. ECF No. 374, at 3–11.

1   The Court finds that Kahrs did not submit untimely new opinions, but rather merely

2   supplemented his reports as required by the Federal Rules of Civil Procedure. The motion is

3   DENIED.

4   **C. Opinions and testimony of Blair Hodgman and evidence regarding Bryan Banman's**
    **immigration status shall be excluded (CTM's Motion *in limine* No. 3, ECF No. 333).**

5

6   The CTM Defendants request that the Court exclude testimony of Blair Hodgman and

7   evidence regarding Banman's immigration status. The CTM Defendants argue that (1) the case is a

8   commercial dispute and therefore Banman's immigration status is irrelevant and highly prejudicial;

9   (2) legal testimony regarding immigration status is improper for expert testimony and also

10  speculative; and (3) even if the testimony is relevant, "its probative value is substantially outweighed

11  by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time and

12  judicial resources." ECF No. 333, at 5–8. Lastly, due to their claims of this testimony being

13  presented in bad-faith, CTM requests it be awarded fees. *Id.* at 10.

14  Plaintiffs argue that Hodgman's testimony is not about legal conclusions but, rather, should

15  be considered because it is relevant to show Banman's motive, opportunity, and plan to breach his

16  contracts and fiduciary duties with Plaintiffs. ECF No. 375. They argue that character evidence is

17  admissible under FRE 404(b)(2) and that it was the Defendants who attempted to elicit legal

18  conclusions from Hodgman. ECF No. 375.

19  The proffered evidence is irrelevant. Plaintiffs have not explained how Banman's purported

20  immigration violations show motive, opportunity, or plan as there has been no allegation that

21  working *illegally* was part of any of the alleged misconduct underlying the claims. Put another

22  way—and relying on the definition of relevance in Rule 401—whether or not Banman was working

23  *illegally* does not tend to show that any critical fact was more or less likely to be true. The Court also

24  notes that the one case cited to support the relevance of immigration status—*U.S. v. Rubio-Gonzalez*,

25  674 F.2d 1067 (5th Cir. 1982)—is wholly inapposite, as it concerned the relevance of immigration

26  conduct where the crime charged was an immigration-related crime. To the extent that the evidence

27  at issue is at all relevant, its relevance is far outweighed by the highly prejudicial nature of the

28

accusation and the waste of time and potential confusion entailed in addressing this issue. The motion is GRANTED.

### D. Punitive damages shall not be bifurcated from the current case and evidence regarding defendants' personal finances/net worth and CTM's valuation shall be permitted (CTM's Motion *in limine* No. 4, ECF No. 334).

The CTM Defendants request that the Court bifurcate punitive damages and exclude or delay evidence of the individual defendants' personal finances/net worth and Plaintiffs' "valuation" of CTM. ECF No. 334. The CTM Defendants argue that evidence of the Defendants' financial condition and CTM's valuation is only relevant if the jury first finds that Plaintiffs are entitled to punitive or exemplary damages. *Id.* at 7. They contest that bifurcating liability and actual damages and punitive damages in this fashion would present no harm to Plaintiffs' case but would avoid the danger of "undue prejudice and the potential to distract and confuse jurors." *Id.* at 5, 7.

Plaintiffs argue that (1) contrary to Defendants' claims, bifurcation would not conserve judicial resources or avoid prejudice, but would actually extend the trial by doubling most phases, and (2) the individual defendants' net worth and CTM's valuation is relevant to demonstrating damages and establishing lost profits. ECF No. 379 at 4–7.

The CTM Defendants appear to concede that the evidence at issue is relevant to some issues.[2] They have failed to show that it is so prejudicial as to be required to be excluded. In particular, CTM Defendants have failed to point to anything about the net worth or personal finances of any of the defendants that would be particularly inflammatory to the jury. It appears that the jury will already receive evidence showing revenues in the millions of dollars by the various parties, and the Court assumes that the net worth and personal finances of the various defendants will be consistent with that. In addition, the Defendants have failed to show that a limiting instruction will

---

[2] The Court notes that the Defendants raise the novel theory that the net worth of a defendant for purposes of a punitive damages award should take into account the defendant's losses due to a compensatory damages award in the same case. *See* ECF No. 334 at 3. Defendants provide no support for this approach, and it appears facially illogical to the Court as it would appear to defeat the purpose of a punitive damages award by giving a defendant a "credit" in essence for a compensatory damages award in the same case. It is the Court's understanding that the courts regularly decline to bifurcate punitive damages and, in doing so, inherently reject this approach—which would *require* bifurcation because the parties would only be able to present net worth evidence *after* receiving the jury's damages award. Defendants are therefore PRECLUDED from presenting this speculative and unsupported punitive damages theory to the jury.

be insufficient to ensure that the jury only considers the evidence where it is relevant. Finally, the CTM Defendants have failed to show that bifurcation would save any substantial judicial resources. The CTM Defendants' Motion *in Limine* No. 4 is DENIED.

### E. Opinions and testimony of Joseph Spell shall be permitted (CTM's Motion *in limine* No. 5, ECF No. 337).

The CTM Defendants request that the Court exclude the opinions and testimony of Joseph Spell ("Spell"). ECF No. 337. They argue that (1) Spell's proposed testimony is irrelevant because it concerns the capabilities of his company, which is not a party to the case, and because it would wholly concern an issue on which the Court has already granted summary judgment in favor of the Defendants, (2) Spell's testimony lacks foundation, (3) Spell lacks the requisite qualifications to be considered an expert witness in this field, and (4) Spell has refused to produce documents relevant to his testimony. *Id.* at 6–10.

Plaintiffs argue that (1) Spell's testimony on the confidential and propriety nature of the placental product formulation and the ability of Tides Medical (or any other tissue manufacturing company) to reverse engineer the Skye formula is relevant to the claims, (2) it is relevant despite the dismissal of any trade secret claim because information can be confidential and sensitive even if it is not technically considered a trade secret, (3) Spell is qualified based on his extensive experience in the industry to determine whether his company has the ability to reverse engineer a competitors' product, and (4) Spell is independently qualified to offer the expected testimony, and (5) Spell cannot be disqualified based on a failure to produce documents because there was a legitimate and timely objection to the production, the court in which the Defendants' motion to compel is pending on the documents have not yet issued a ruling, and the requested documents are entirely irrelevant to Spell's testimony in the matter. ECF No. 416 at 3-10.

The CTM Defendants appear to concede that they do plan to argue that the industry keeps the product formulations and manufacturing processes confidential. Accordingly, Spell's testimony is relevant. In addition, Court finds that the witness offered is a designated expert with appropriate credentials. Defendants' arguments go towards factual disagreement, bias, and weight, but not his

1  actual qualifications or an absence of the basis for opinions. The motion is DENIED. To the extent

2  that the CTM Defendants do not plan to so argue, they can file an appropriate stipulation and request

3  that the Court reconsider this ruling.

4        **F.  Opinions and testimony of Daniel M. Cislo shall be permitted in part (CTM's**
                **Motion *in limine* No. 6, ECF No. 338).**

5

6        The CTM Defendants request that the Court exclude the opinions and testimony of private

7  practice patent attorney Daniel M. Cislo ("Cislo"). ECF No. 338. They argue that (1) because Cislo

8  lacks expertise in the placental products industry, he lacks ordinary skill in the relevant art required

9  for him to be qualified as a technical expert (2) because this is not a patent case, Cislo's intended

10  testimony on the patent process is irrelevant, and (3) his opinions are legal conclusions barred as

11  improper because the Court has already granted summary judgment in Defendants' favor on all of

12  Plaintiffs' process-based trade secrets. *Id.* at 6–12.

13        Plaintiffs argue that (1) Cislo is qualified to give non-technical opinions, specifically whether

14  Skye's confidential and propriety information is within the prior art for patent purposes based on his

15  expertise in patents, (2) there are no grounds to exclude Cislo's testimony, (3) Cislo's testimony is

16  relevant to Plaintiffs' claims because Defendants have placed the prior art directly in dispute, and (4)

17  Cislo's opinions are proper issues of fact. ECF No. 417 at 2-10.

18        The CTM Defendants concede that they plan to use various patents to show that certain

19  information (claimed to be trade secret or confidential) has, in fact, been publicly disclosed.[3]  *See*

20  ECF No. 384. They also concede that even though the Court has granted summary judgment with

21  respect to certain trade secrets as trade secrets, many of those same purported trade secrets are still at

22  issue with respect to the confidentiality claims. *See id.* at 3-4. Accordingly, Cislo's testimony is

23  relevant.

24        In addition, Court finds that the witness offered is a designated expert with appropriate

25  credentials. Defendants' arguments go towards factual disagreement, bias, and weight, but not his

26      _____

27  [3] To the extent that the CTM Defendants do not plan to so argue from the patents, they can file an appropriate
    stipulation (which also withdraws their corresponding opposition to the Skye Plaintiffs' Motion *in Limine* No.

28  2) and request that the Court reconsider this ruling.

1   actual qualifications or an absence of the basis for opinions. The citation of *Sundance, Inc. v.*

2   *DeMonte Fabricating Ltd*., 550 F.3d 1356 (Fed. Cir. 2008) is misplaced. In that case—a *patent*

3   case—the court found that it was an abuse of discretion for the court to permit a non-technical expert

4   to testify as to *patent* noninfringement or *patent* invalidity because governing *patent* law requires

5   that these issues are to be "exclusively determined from the perspective of ordinary skill in the art."

6   *Id.* at 1362. To the contrary, in this case—which as the Defendants point out, is not a patent case—

7   the Defendants seek to use existing patents to show that the information which the Skye Plaintiffs

8   seek to protected as trade secret or confidentiality was already publicly disclosed. Defendants are

9   entitled to have a patent attorney—who regularly prepares patent applications, reviews patents, and

10  renders opinions on potential patent applications—rebut this by explaining to the jury what is in the

11  patents the Defendants are presenting and showing how it is distinct from what the Skye Plaintiffs

12  are attempting to protect.

13      To be clear, Cislo is not permitted to testify as to noninfringement or invalidity, as he is not

14  qualified to do so; the motion is GRANTED in part to preclude any such testimony.[4]  The case the

15  Skye Plaintiffs rely on in their briefing and referred to at the hearing—*Reiffin v. Microsoft Corp.*,

16  270 F. Supp. 2d 1132, 1143-1146 (N.D. Cal. 2003)—does not reach a different conclusion.  There,

17  the patent attorney was only permitted to testify as to whether the plaintiff's prosecution of its

18  patents was reasonable; testimony as to infringement or invalidity was not at issue. *Id.* Accordingly,

19  the CTM Defendants' Motion in Limine No. 5 is GRANTED in part and DENIED in part.

20  **V.    Discussion—Bryan Banman's Motion *in Limine* No. 1, ECF 335**

21      Defendant Bryan Banman moves to exclude certain evidence regarding Count 5 (ECF No.

22  335).  Because Banman has failed to identify with specificity the evidence allegedly regarding Count

23  5 that he seeks to exclude, Banman's Motion *in Limine* No. 1 is DENIED.

24      Defendant Banman requests that the Court exclude certain evidence regarding Count 5.

25  Banman argues that Plaintiffs intend to introduce at trial items of allegedly proprietary information

26

27  _____

28  [4] The Defendants are similarly not permitted to present evidence as to infringement or validity, as it is irrelevant.

1   that Skye had disclosed to Banman before April 18, 2018—the date the Skye Confidentiality

2   Agreement was signed. ECF No. 335 at 4. Banman contends that only information allegedly

3   disclosed on or after April 18, 2018 "can form the basis of any claim (liability or damages) under

4   Count 5" and that, therefore, the Court should exclude information disclosed by Skye to Banman

5   before April 18, 2018. *Id.*

6          Plaintiffs argue that (1) the request is overly broad, as it fails to identify any actual evidence

7   to be excluded, (2) it is improper to ask the Court to make legal determinations about contract

8   language, (3) the evidence that Banman seeks to exclude is admissible on all of Plaintiffs' causes of

9   action, (4) Banman misstates and misinterprets the contracts, and (5) the evidence that Banman seeks

10  to exclude will not be prejudicial to him. ECF No. 380 at 1–7.

11         Defendant Banman has failed to identify the evidence sought to be excluded with the

12  requisite specificity. Accordingly, Banman's Motion *in Limine* No. 1 is DENIED.

13  **VI.    Discussion—Mike Stumpe's Motions *in Limine***

14         Defendant Mike Stumpe moves to exclude at trial (1) evidence or argument concerning

15  dismissed or unasserted claims (ECF No. 314) and (2) purportedly prejudicial evidence related to

16  written communications that may be irrelevant, profane, or scandalous. (ECF No. 315).  For the

17  reasons discussed below, both motions are DENIED.

18
    **A.  Stumpe has failed to identify with specificity the evidence or argument concerning
         allegedly dismissed or unasserted claims he seeks to exclude (Stumpe's Motion *in limine*
19       No. 1, ECF No. 314).**

20         Stumpe requests that the Court order Plaintiffs to limit their evidence and argument at trial to

21  only existing claims against Stumpe, if any, and argue that any reference to evidence or argument

22  beyond such would be "irrelevant, unfairly prejudicial, and . . . mislead the jury." ECF No. 314 at 2.

23  Plaintiffs argue that the Motion is largely moot because (1) the Court previously denied Stumpe's

24  Motion for Clarification as to whether any claims remain as to Stumpe, (2) the Motion is too vague

25  as to the evidence sought to be excluded, and (3) Defendant Boulais's joinder to Stumpe's motion is

26  improper because Stumpe's motion did not raise issues regarding evidence, argument, or reference

27  to any breaches of contract or misappropriation of trade secrets by Boulais. ECF No. 381 at 4–5.

28

The Court finds that this motion is too broad, vague, and speculative as to be granted. Accordingly, Stumpe's Motion *in Limine* No. 1 is DENIED. To the extent that Plaintiffs seek to present evidence that is relevant only to dismissed claims, Stumpe can seek to exclude it as irrelevant.  The motion is DENIED as to Boulais as well.

### B. Stumpe has failed to identify with specificity the allegedly prejudicial evidence he seeks to exclude (Stumpe's Motion *in limine* No. 2, ECF No. 315).

Stumpe requests that the Court only permit Plaintiffs to present evidence of "relevant, written communications in their original form" to avoid the danger of unfair prejudice to Stumpe, confusing or misleading the jury, and undue delay. ECF No. 315-1 at 2–5. Further, Stumpe urges the Court to preclude Skye from "changing the form of the communications into exhibits that mischaracterize the context of the communications or attempt to impute certain communications or conversations upon other individuals who were not involved in them." *Id.* Plaintiffs argue that (1) the motion should be denied as vague, overbroad, and speculative, and (2) the Motion seeks to improperly remove exhibits rather than exclude specific messages by way of Motions *in limine*. ECF No. 382 at 3–7.

Defendant Stumpe has failed to identify the evidence sought to be excluded with the requisite specificity. Accordingly, Stumpe's Motion *in Limine* No. 2 is DENIED.

## VII.  Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Plaintiffs' Motion *in limine* No. 1 (ECF No. 349) is DENIED;

2. Plaintiffs' Motion *in limine* No. 2 (ECF No. 350) is GRANTED with respect to the 2014 Report and is DENIED with respect to the patents and Dr. Forsell's testimony;

3. Plaintiffs' Motion *in limine* No. 3 (ECF No. 353) is DENIED;

4. Plaintiffs' Motion *in limine* No. 4 (ECF No. 354) is GRANTED;

5. Plaintiffs' Motion *in limine* No. 5 (ECF No. 355) is GRANTED with respect to the fact that certain claims and parties have been dismissed and why and DENIED with respect to the fact that certain claims and parties are no longer involved in the case;

6. Defendant CTM's Motion *in limine* No. 1 (ECF No. 331) is DENIED;

7. Defendant CTM's Motion *in limine* No. 2 (ECF No. 332) is DENIED;

8.  Defendant CTM's Motion *in limine* No. 3 (ECF No. 333) is GRANTED;

9.  Defendant CTM's Motion *in limine* No. 4 (ECF No. 334) is DENIED;

10. Defendant CTM's Motion *in limine* No. 5 (ECF No. 337) is DENIED;

11. Defendant CTM's Motion *in limine* No. 6 (ECF No. 338) is GRANTED with respect to patent noninfringement and patent invalidity and DENIED with respect to patent procedures and rebutting the evidence that the claimed trade secrets and confidential information were publicly disclosed in patents;

12. Defendant Banman's Motion *in limine* No. 1 (ECF No. 335) is DENIED;

13. Defendant Stumpe's Motion *in limine* No. 1 (ECF No. 314) is DENIED; and

14. Defendant Stumpe's Motion *in limine* No. 2 (ECF No. 315) is DENIED.


IT IS SO ORDERED.


Dated: August 9, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge