1  Paul T. Martin (SBN 155367)
     *pmartin@hgla.com*
2  Thomas H. Case (SBN 116660)
     *tcase@hgla.com*
3  HENNELLY & GROSSFELD LLP
   10900 Wilshire Blvd., Suite 400
4  Los Angeles, CA 90024
   Telephone:  (310) 305-2100
5  Facsimile:   (310) 305-2116

6  Robert J. Fluskey, Jr. *(pro hac vice)*
     *rfluskey@hodgsonruss.com*
7  Ryan K. Cummings *(pro hac vice)*
     *rcumming@hodgsonruss.com*
8  Matthew K. Parker *(pro hac vice)*
     *mparker@hodgsonruss.com*
9  HODGSON RUSS LLP
   The Guaranty Building
10 140 Pearl Street, Suite 100
   Buffalo, New York 14202-4040
11 Telephone:  (716) 856-4000
   Facsimile:   (716) 849-0349

12
13 Attorneys for Defendants
   CTM Biomedical, LLC, Bryan Banman,
   CTM Medical, Inc., and Pablo Seoane

14

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| SKYE ORTHOBIOLOGICS, LLC, a Delaware Limited Liability Company, HUMAN REGENERATIVE TECHNOLOGIES, LLC, a Delaware Limited Liability Company,<br><br>Plaintiffs.<br><br>vs.<br><br>CTM BIOMEDICAL, LLC, a Delaware Limited Corporation; BRYAN BANMAN, an individual; CTM MEDICAL INC., a Delaware Corporation; VETERANS MEDICAL DISTRIBUTORS, INC.; a Florida Corporation; GARDNER ROGERS, an individual; MIKE STUMPE, an individual; PABLO SEOANE aka PAUL SEOANE, an individual; NATHAN BOULAIS, an individual; and DOES 3 through 10, inclusive.<br><br>Defendants. | Civil Case No.  2:20-cv-03444-MEMF (PVCx)<br><br>**CTM DEFENDANTS' OPPOSITION TO PLAINTIFFS' TRIAL BRIEF REGARDING THE SCOPE OF REBUTTAL EXPERT TESTIMONY**<br><br>Trial Date:    August 21, 2023 |

Defendants CTM Biomedical, LLC, Bryan Banman, CTM Medical, Inc., and Pablo Seoane (collectively, the "CTM Defendants") respectfully submit this opposition to the "Trial Brief Regarding the Scope of Defendants' Rebuttal Expert Testimony at Trial" filed by Plaintiffs Skye Orthobiologics, LLC ("Skye") and Human Regenerative Technologies, LLC ("HRT") (together, "Plaintiffs") on August 15, 2023 (ECF No. 436).

**PRELIMINARY STATEMENT**

Plaintiffs are continuing their "trial by ambush" approach through improper "trial briefs." Now, Plaintiffs request an ambiguous pre-trial ruling regarding the scope of Defendants' rebuttal expert testimony. As a threshold matter, it is unclear from Plaintiffs' submission which of the CTM Defendants' experts they are trying to limit. Based on the references in the motion, which relate—at most—to liability issues, it is presumed Plaintiffs are attempting to limit the testimony of the CTM Defendants' expert witnesses James Forsell ("Forsell") and Rouzbeh Taghizadeh ("Taghizadeh"). Plaintiffs' last minute gamesmanship should be denied for at least four reasons.

First, rebuttal experts may testify on any relevant issues or any theories raised by Plaintiffs, regardless of whether Plaintiffs present those issues or theories through fact witnesses or expert witnesses. The testimony of rebuttal experts is not limited to responding only to the testimony elicited from Plaintiffs' experts at trial.

Second, the CTM Defendants may call Plaintiffs' experts at trial or designate portions of their deposition testimony for trial and may call their rebuttal experts to rebut those opinions. Plaintiffs' decision to designate certain experts to proffer certain opinions is irreversible. Plaintiffs cannot seek to hide their own experts' unfavorable opinions but deciding not to call their experts at trial or by limiting the scope of their experts' testimony.

Third, the CTM Defendants' experts' opinions remain relevant for trial. Plaintiff HRT is continuing to press the theory that its manufacturing process and formulas are "confidential" and that Banman breached his contract with HRT by allegedly disclosing this "confidential" information. The CTM Defendants' experts are permitted to testify on the

2

issue and opine that the steps in HRT's manufacturing process are in the public domain and commonly known, and thus are not confidential.

<u>Fourth</u>, to the extent Plaintiffs' trial strategy is to now limit the trial testimony of their liability expert, John Lee, to conclusory opinions about: what Bryan Banman agreed to keep confidential, that HRT and Skye took reasonable steps to keep the manufacturing process confidential, that HRT never had an adverse event by any patient who has used its products, that Kelly Hiatt's whitepapers are intellectually dishonest and intentionally deceiving to the marketplace, that CTM's Instructions For Use ("IFU") use substantially similar language to HRT's IFUs, and that CTM ripped off Skye and HRT in almost every respect, those "opinions" are not proper expert opinions and should be excluded from trial.

## ARGUMENT

### I. Rebuttal Experts May Testify on Any Relevant Issues that Remain in the Case.

Plaintiffs' argument that Defendants' rebuttal expert testimony should be limited to the scope of Plaintiffs' experts' testimony at trial is incorrect. The testimony of rebuttal experts is not limited only to testimony elicited from an affirmative expert at trial. Rather, Defendants' rebuttal experts are permitted to testify on any relevant issues in the case, regardless of whether Plaintiffs raise those issues through fact witnesses or expert witnesses.

Under Federal Rule of Civil Procedure 26, an expert whose testimony is intended to contradict or rebut evidence on the same subject matter identified by another party must be disclosed within 30 days of the other party's disclosure. *See* FRCP 26(a)(2)(D). A party's choice to present their case without expert testimony is not dispositive of whether an opposing party "can defend through testimony of an expert properly disclosed under Rule 26(a)(2)(D) as a rebuttal expert." *Olivero v. Trek Bicycle Corp.*, 2018 WL 3459424, at *2 (D. Colo. July 18, 2018). Where, as here, the plaintiffs intend to "prove the same theory that [their expert] would have presented through his opinions," the defendant's rebuttal expert's opinions "continue to have a tendency to make a fact of consequence more or less probable than it would be otherwise" and is therefore relevant. *Id*. at *2 (citing Fed. R. Evid. 401(a)

& (b)). Indeed, "there is no rule that, at trial, a rebuttal expert may testify only in response to an affirmative expert's trial testimony." *Valdez v. Motyka*, 2021 WL 1145845, at *3 (D. Colo. Mar. 25, 2021) (citing *Olivero*, 2018 WL 3459424, at *2).

In *Valdez*, the defendants argued that plaintiff's expert could only testify as an expert rebuttal witness if their affirmative experts testified at trial. *Id*. Relying on *Olivero*, however, the court disagreed. *Id*. It held that a rebuttal expert's testimony is not restricted to only responding to an affirmative expert's trial testimony. *Id*. The court explained that "to the extent that [d]efendants introduce evidence at trial on the topics which [plaintiff's expert] has been endorsed to testify, [plaintiff's expert's] rebuttal testimony is neither irrelevant nor improper." *Id*. It noted that "with some frequency[,] the Court sees one party presenting its theory without expert testimony and the opposing party challenging that theory with expert testimony." *Id*.

Further, where a party has not "abandoned any portion of their case," and "only abandoned a particular witness who might have supported their theory of the case," an opposing party's "rebuttal expert" may still testify. *See Olivero*, 2018 WL 3459424, at *1 ("In other words, there is still a theory to rebut, even if an affirmative expert will not testify in support of that theory."); *see also Shay v. County of Los Angeles*, 2019 WL 5420262, at *5-6 (C.D. Cal. Oct. 21, 2019). "Whether the expert is properly considered a 'rebuttal expert' for purposes of judging timeliness of disclosure under Rule 26(a)(2)(D) has nothing necessarily to do with whether the admissibility of that expert's opinions at trial turns on some other expert testifying first." *Id.* at *2. Therefore, Plaintiffs cannot prevent Defendants' rebuttal experts from testifying by withdrawing or refusing to call Plaintiffs' affirmative experts or by limiting their affirmative experts' opinions. *See Shay*, 2019 WL 5420262, at *5-6.

In *Shay*, the plaintiff moved to exclude testimony from the defendants' designated rebuttal expert at trial. *Id*. at *5. The plaintiff argued that the defendants' rebuttal expert should not be permitted to testify as a rebuttal expert because the plaintiff "ha[d] withdrawn the expert [whom defendants' expert] was designated to rebut." *Id*. The plaintiff claimed

that the defendants' expert "no longer ha[d] any basis to testify as an expert" absent testimony from the plaintiff's affirmative expert. *Id*. In response, the defendants argued that their rebuttal expert was properly disclosed pursuant to Rule 26, and should be permitted to testify. *Id*. The court rejected the plaintiff's argument and permitted the defendants' rebuttal expert to testify because the plaintiff "intend[s] to prove the same theory that [ ] the withdrawn expert would have presented through his opinions, such that [the rebuttal expert's] opinions continue to have a tendency to make a fact of consequence more or less probable than it would be otherwise." *Id.* at *6 (internal quotations omitted).

Although a rebuttal expert's testimony may become inadmissible if it becomes *irrelevant*, it does not become inadmissible simply because the expert was offered "under the 'rebuttal' label." *Shay*, 2019 WL 5420262, at *5 (citing *Olivero*, 2018 WL 3459424, at *1). As the court noted in *Shay*:

> Imagine, for example, a breach of contract dispute where the plaintiff has been claiming future lost profits, and has proffered an expert to calculate those damages. The defendant has proffered a rebuttal expert criticizing the affirmative expert's calculations and offering an alternative calculation. If the plaintiff abandons its claim for future lost profits, then the defendant's rebuttal expert's testimony would probably become inadmissible because it would be irrelevant, not because the expert had been proffered under the 'rebuttal' label. Indeed, the expert could have produced a preemptive report on the affirmative expert deadline . . . and his or her testimony would still likely be inadmissible as irrelevant. It would no longer address a matter that is of consequence in determining the action.

*Id.*

Accordingly, where the subject of a rebuttal expert's testimony remains a material issue in the case, the testimony is relevant and the expert may testify on that issue regardless of whether the opposing party calls their affirmative expert. *Id.* at *6 (stating plaintiff "intend[ed] to prove the same theory that [ ] the withdrawn expert would have presented through his opinions, such that [defendants' rebuttal expert's] opinions continue to have a tendency to make a fact of consequence more or less probable than it would be otherwise").

5

Here, Plaintiffs are still claiming that HRT's manufacturing process is confidential and, therefore, Bryan Banman breached his contract with HRT. Whether Plaintiffs' call their liability expert, John Lee, to support that theory or not, they are still pursuing the theory. Taghizadeh and Forsell were timely disclosed as experts to rebut that very theory. In other words, as in *Shay*, Taghizadeh's and Forsell's expert testimony remains relevant and tends to make a fact of consequence less probable.

## II. The CTM Defendants May Call Plaintiffs' Experts at Trial or Designate Their Deposition Testimony for Trial

Plaintiffs' argument that Defendants cannot call their rebuttal experts if Plaintiffs do not call their experts in Plaintiffs' case in chief is also misplaced. If Plaintiffs choose not to call their experts at trial, or choose to call their experts to testify as to certain opinions but not others, Defendants may call Plaintiffs' experts at trial or designate Plaintiffs' experts' deposition testimony and Defendants' experts may rebut their opinions.[1]

Plaintiffs' decision to designate expert witnesses is irreversible. *See Kowalsky v. Dakota, Minnesota & Eastern Railroad Corp.*, 2009 WL 10692837, at *4 (D. Wyo. Oct. 15, 2009) (citing James Wm. Moore et al, Moore's Federal Practice ¶ 26.80(I)(a)). "Once a party has designated an expert witness as someone who will testify at trial, the later withdrawal of that designation may neither prevent the deposition of that witness by the opposing party nor the expert's testimony at trial." James Wm. Moore et al, Moore's Federal Practice ¶ 26.80(I)(a). "[A]fter an expert has been disclosed by the retaining attorney, muzzling that witness may be unfair to the opposing party for several reasons . . . a party ordinarily should be able to count on the availability of the testimony of a person who has been declared to be a potential witness at trial." *Kowalsky*, 2009 WL 10692837, at *5, n. 1 & 2.

"[T]he Rules do not state, or even imply, that an expert already designated as a potential trial witness may later be undesignated[.]" *Id*. at *5. Therefore, "it is reasonable for an opposing party to expect both automatic disclosures about a designated expert and a

---

[1] The CTM Defendants have timely designated portions of John Lee's testimony that they intend to present at trial.

6

deposition of a designated expert" and "an opposing party who reads Rule 26 should not have to speculate that a court might read into it non-existent provisions that will prevent that party from gathering or using the expert's opinions at trial." *Kowalsky*, 2009 WL 10692837, at *6 (citing D. Easton, *Red Rover, Red Rover, Send That Expert Right Over: Clearing the Way for Parties to Introduce the Testimony of Their Opponents' Expert Witnesses*, 55 SMU L.Rev. 1427, 1478).

"Just because the designating party no longer views the expert as a valuable source of information, or even views the expert as a potential detriment to its position due to conflicting opinions, the expert may not be undesignated in order to block a deposition or prevent the conflicting opinion from being unearthed." *Kowalsky*, 2009 WL 10692837, at *4 (citing *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) (explaining a party waives certain privileges when it designates an expert then later attempts to change the experts status)).

Accordingly, a defendant may call at trial an expert witness designated by the plaintiff. *See Penn Nat. Ins. v. HNI Corp.*, 245 F.R.D. 190, 193-94 (M.D.Pa. 2007). In *Penn*, the defendant sought to call at trial experts designated by the plaintiffs. *Id.* at 192. The court held that "[b]y designating [their experts] as experts pursuant to Rule 26(b)(2) and allowing discovery of their expert reports without objection, [plaintiffs] waived the protection of Rule 26(b)(4)(B) and subjected these experts' opinions to the scrutiny of trial . . . Therefore, [the defendant was permitted to] call [the plaintiff's] experts to testify at trial." *Id.* at 193-94.

No legal principle precludes a party from relying on the opinions of an opposing party's expert. *See North Shore Medical Center Inc. v. Cigna Health and Life Ins. Co.*, 68 F.4th 1241, 1247 (11th Cir. 2023). The opposing party cannot be surprised and will not be prejudiced by the party's use of their designated expert's testimony. *Id.* (reasoning that there is no surprise or prejudice from allowing the party to use and rely on the expert testimony presented by the opposing party). This is especially the case where the opposing party pointed to its expert's opinion in its pretrial disclosures. *See id.* (stating that defendant pointed to its expert's opinion in its statement of material facts). Nor is the party prejudiced

where the opposing party has given notice of its intention to call the party's expert. *See De Lage Landen Operational Servs., LLC v. Third Pillar Sys., Inc.*, 851 F. Supp. 2d 850, 853 (E.D. Pa. 2012) ("Allowing one party to use the testimony of the opponent's expert witness causes no 'undue prejudice' particularly when timely notice of the intention to call the expert has been given.") (noting that plaintiff listed defendant's expert in its pre-trial memorandum when it identified its witnesses). Indeed, "either party may introduce the deposition of an opposing party's expert if the expert is identified as someone who may testify at trial because those opinions do not belong to one party or another but rather are available for all parties to use at trial." *De Lage*, 851 F. Supp. 2d at 853.

The CTM Defendants gave Plaintiffs notice that they intended to call Plaintiffs' liability expert, John Lee, at trial. *See* CTM Defendants' Witness List, ECF No. 312. Plaintiffs cannot be surprised and will not be prejudiced by the CTM Defendants calling Mr. Lee at trial or using testimony from his deposition. Plaintiffs' apparent intention not to call Mr. Lee at trial or to offer only limited opinions from Mr. Lee does not preclude the CTM Defendants from introducing his testimony and opinions at trial and then rebutting those opinions through expert testimony.

Plaintiffs rely on inapplicable case law. They cite cases involving an entirely different situation where courts prohibited ***plaintiffs*** from calling a rebuttal expert in the ***plaintiffs'*** case in chief because the defendants had not yet called their rebuttal experts. *See* ECF No. 436 at 3-4 (citing cases). Those cases deal with the order of testifying experts. In other words, a rebuttal expert cannot testify before an affirmative expert testifies. Plaintiffs' cases do not support their argument that Defendants' experts can only testify on topics on which Plaintiffs' experts testify at trial particularly because, as discussed above, Defendants can call Plaintiffs' experts at trial.[2]

---

[2] The rest of the cases cited by Plaintiffs discuss the principle that the opinions in a rebuttal expert's report cannot go beyond the scope of the opinions in the affirmative expert's report. ECF No. 436 at 3-5. But that is not the issue here. Plaintiffs do not argue that the opinions in Forsell's and Taghizadeh's expert reports go beyond the opinions in Plaintiffs' experts' reports.

8

*Stop Staring! Designs v. Tatyana, LLC*, cited by Plaintiffs (ECF No. 436 at 4), also does not support Plaintiffs' position. In that case, the court refused to allow the rebuttal expert to testify because the court had already excluded the affirmative expert's opinions that the rebuttal expert intended to rebut. 2011 WL 13124124, at *1 (C.D. Cal. Aug. 11, 2011) ("As the Court has excluded [the affirmative expert's] opinions that would arguably be rebutted by [the rebuttal expert's] testimony, [the rebuttal expert's] testimony is also excluded."). Here, the Court has not excluded any of Lee's, or any other experts', opinions. The CTM Defendants' experts should be permitted to testify to rebut those opinions.

### III. The CTM Defendants' Experts' Opinions Remain Relevant for Trial

Plaintiffs' Trial Brief does not specify the relief they seek. They do not identify the specific opinions of their experts that they no longer intend to offer at trial, or the opinions of the CTM Defendants' experts they seek to limit. Based on their Trial Brief, it is unclear whether Plaintiffs intend to call any expert to offer any opinion at trial. It appears that Plaintiffs are trying to prevent the CTM Defendants from offering highly relevant testimony and opinions that HRT's manufacturing process and formulas are in the public domain and not confidential. The Court should reject Plaintiffs' attempt.

Although the Court dismissed HRT's manufacturing process and formulas from Plaintiffs' DTSA and RICO claims (ECF No. 248 at 25-28, 43; ECF No. 325 at 5-7; ECF No. 429), the issue of whether or not HRT's process and formulas are "confidential" remains relevant to HRT's breach of contract claim against Banman (Count 4 of the Fourth Amended Complaint). *See* ECF No. 248 at 44-45. HRT alleges that Banman breached the confidentiality clause in his contract by disclosing HRT's allegedly confidential manufacturing process to Alamo. *Id.*

The CTM Defendants' liability experts, Forsell and Taghizadeh have both opined that the processing and manufacturing steps to produce membrane grafts and particulated placental tissue into an ambient temperature, shelf-stable, final implantable form are publicly available and commonly known, have been published in peer-reviewed publications and

patents, and have been practiced in the industry since prior to 2014. ECF No. 211-22 at 5-6; ECF No. 211-23 at 3-7. These opinions rebut Plaintiffs' continuing claim that HRT's manufacturing process is confidential and is not in the public domain. ECF No. 211-18 at 4-9. This issue remains relevant to HRT's breach of contract claim against Banman regardless of whether HRT presents its claim through fact witnesses or Mr. Lee. Accordingly, Forsell and Taghizadeh are permitted to testify to rebut HRT's claim that its manufacturing process is confidential and not in the public domain. *Shay*, 2019 WL 5420262, at *5-6.

Further, the Court is permitting Plaintiffs' proposed expert, Joe Spell, to testify and opine on the confidentiality of his company's manufacturing processes and product formulations, implying that HRT's manufacturing process and product formulation is confidential. ECF No. 428 at 20-21. Thus, the Court agrees that this issue remains in the case. Forsell and Taghizadeh should be permitted to testify and present opinions that rebut Spell's opinions about the confidentiality of placental tissue product manufacturing processes and formulations. Again, even if Plaintiffs choose not to call Spell at trial, the confidentiality (or lack thereof) concerning HRT's manufacturing process remains relevant. Plaintiffs have not abandoned that theory. Plaintiffs cannot prevent the CTM Defendants' rebuttal experts from testifying on that issue by deciding not to call their own experts or by limiting their experts' testimony.

The Court is also permitting Plaintiffs' proposed expert, Daniel Cislo, to testify and opine on whether steps in HRT's manufacturing process have been disclosed in publicly available patents and patent applications. ECF No. 428 at 21-22. Taghizadeh's expert report and opinions rebut Cislo's opinions on this issue. ECF No. 211-22 at 1, 9, 28. But whether or not Plaintiffs call Cislo at trial, this issue remains relevant in the case, and Taghizadeh should be permitted to testify to rebut HRT's claim.

Moreover, both Forsell's and Taghizadeh's expert reports and opinions rebut the opinions of Plaintiffs' damages expert, Henry Kahrs. In his report, Kahrs assumes that HRT's/Skye's products are unique. Kahrs also assumes (incorrectly) that there are only two players in the placental tissue products market, Skye and CTM. Kahrs also applies a nearly

indefinite value to HRT's allegedly "confidential" manufacturing process and projects damages calculations related to that process 10 years into the future. *See* ECF No. 340-1. Forsell's and Taghizadeh's opinions rebut these opinions and assumptions. They should be allowed to testify on these issues to rebut Kahrs's opinions and assumptions.

### IV. Lee's Opinions that Defendants' Experts did not Specifically Rebut are Improper Expert Opinions and Should be Excluded

To the extent Plaintiffs intend to call Mr. Lee to offer the opinions not specifically addressed in Defendants' rebuttal expert reports (Lee's Opinions 2, 3, 4, 14, 15, 16, and 17), those opinions are not proper expert opinions and should be excluded.

Lee's Opinions 2, 3, 4, 14, 15, 16, and 17 infringe upon the finder of fact by offering "expert opinions" on issues (relevant or not) which jurors are competent to determine for themselves. Each such opinion is superfluous, and should be excluded because they take no specialized skill to formulate, but instead consist of lay testimony under the guise of expert testimony. The court should exclude any such testimony from Lee on these opinions at trial.

The proponent of expert testimony has the burden of proving that the proposed testimony is admissible under Fed. R. Evid. 702, *Daubert*, and its progeny. *Lust ex rel. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. For expert testimony to satisfy the helpfulness prong of Rule 702(a), the subject matter at issue must be beyond the common knowledge of the average lay juror. *United States v. Pulido-Avina*, 562 F. Supp. 3d 795, 799-800 (C.D. Cal. 2022) (citing *U.S. v. Finley*, 301 F.3d 1000 (9th Cir. 2002)). Expert testimony not only is unnecessary, but may be excluded in the discretion of the trial judge if all the primary facts can be accurately and intelligibly described to the jury, and if they, as

11

people of common understanding, are capable of comprehending the primary facts and of drawing correct conclusions from them. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962). Expert testimony regarding facts that people of common understanding can easily comprehend usurps the role of the jury, and should be excluded. *Fontem Ventures, B.C. v. NJOY, Inc.*, 2015 WL 12743861, at *19 (C.D. Cal. Oct. 22, 2015).

In *U.S. v. Finley*, the Ninth Circuit adopted a test set forth by the First Circuit in *U.S. v. Shay*, 57 F.3d 126 (1st Cir. 1995) to determine whether expert testimony satisfies the helpfulness prong of Rule 702(a). The fundamental question that a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is "whether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having specialized understanding of the subject matter involved." *Id*. at 132. In answering this question, the court must first determine whether the proposed testimony is relevant and fits the facts of the case. *Id*. at 133. The inquiry then shifts to whether the witness's opinions are based upon specialized skill, training, or experience. *Id*. "Unless the witness's opinions are informed by expertise, they are no more helpful than the opinions of a lay witness." *Id*.

### A. Opinion #2: "Bryan Banman agreed to keep Skye and HRT's trade secrets confidential."

Opinion #2 is devoid of expert analysis. In explaining this "opinion" in his report, Lee dons his attorney cap, outlines various contractual terms and his interpretation, and argues that Mr. Banman owes certain contractual duties of confidentiality to Plaintiffs. ECF No. 211-18 at 5-8. However, Lee is not an attorney, and even if he were, any such "opinion" amounts to little more than an inadmissible legal conclusion. During deposition, Lee was asked what analysis he did to form Opinion #2, to which he responded "I reviewed the agreements that were executed between Chris and Brian Banman." When asked if he did any technical or scientific research to form the opinion, he answered, "No. I read documents." When asked if he consulted any treatises or scientific literature, he answered, "No."

Lee clearly adds no specialized skill, training, or experience to a contractual analysis, and accordingly, his Opinion #2 is no more helpful than the opinions of a lay witness. A jury presented with evidence and testimony from lay witnesses is capable of determining whether or not Mr. Banman agreed to keep alleged trade secrets confidential. An expert is not entitled to offer a legal conclusion or interpretation of a contract; that would invade the province of the court and jury.  *See Allstate Ins. Co. v. Thacher*, 2009 WL 10659527, * 2 (C.D. Cal. Jul. 9, 2009) (citing *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008) and *PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 291 Fed. Appx. 40, 41 (9th Cir. 2008)).

### B. Opinion #3: "HRT and Skye took reasonable steps to keep their manufacturing process trade secrets confidential."

Opinion #3 is similarly devoid of expert analysis. Lee's explanation for Opinion #3 is simply an overview of Plaintiffs' processes and facility security. ECF No. 211-18 at 8-9. Lee's report does not reference any technical standards, treatises, training or experiences that would permit him to offer Opinion #3. *Id.* When asked what he reviewed in order to form this opinion, Lee stated "well, there was an absence of information in the SOP, which I was later told was kept in the safe . . . but I toured the facility[.]" Lee confirmed that outside of his company's internal training, he has no training or certification in data privacy. When asked specific questions about his explanation of Opinion #3, Lee was either unable to answer or referenced what Chris Sharp (Plaintiffs' CEO) had told him. Lee provided no context, or standard for determining that HRT/Skye protocols for maintaining confidentiality are "reasonable." For this reason, his analysis provides no value beyond that of a lay witness.

Lee is not a fact witness competent to provide testimony on Plaintiffs' security procedures, nor is he a qualified expert in the field of data security. There is simply no aspect of Opinion #3 which is the product of expert analysis, or which the jury requires Lee's testimony to understand.

### C. Opinion #4: "Bryan Banman had access to HRT trade secrets of how to manufacture connective tissue and membrane products."

Opinion #4 also lacks expert analysis. Whether or not Banman had access to alleged trade secrets is a simple question of *fact*—not a technical or specialized question requiring explanation from an expert to help a jury understand complicated, specialized knowledge. Lee's explanation for Opinion #4 reflects this as it contains nothing that one could reasonably consider expert analysis. Again, there is no reference to standards, treatises, or his training or experience. ECF No. 211-18 at 9-10. Rather, it simply regurgitates what Lee deemed to be relevant after his review of documents produced in discovery and deposition transcripts. *Id.* Further, Lee is not a competent witness to lay foundation for offering any of the documents cited into evidence, so any of Lee's testimony on the topic will necessarily be cumulative of prior testimony.

### D. Opinion #14: "HRT has never had an adverse event by any patient who has used its products."

Opinion #14 and its explanation, consisting of just two (2) sentences, lacks expert analysis and is irrelevant. This opinion is perhaps the most obviously unhelpful, because Lee simply looked at a Complaint Report, and concluded that it contained no complaints. When asked if Lee brought any particular technical or scientific knowledge to the table to form this opinion, Lee stated "No, I reviewed FDA websites and I reviewed AATB required documentation for Chris's operation." When asked a follow up question, "Opinion 14 is simply you reading documents through and telling us what they say right?" Lee answered, "Yes." A jury is fully capable of looking at documents and determining their contents without the assistance of expert testimony. Further, whether or not a patient ever experienced an adverse event when using an HRT product is not relevant to any claims or allegations in this action.

### E. Opinion #15: "Kelly Hiatt's whitepapers are intellectually dishonest and intentionally deceiving the marketplace."

Opinion #15 and its explanation are irrelevant to the issues in this case, and thus fail the first test laid out in *Shay*, 301 F.3d at 1000 and *Finley*, 57 F.3d at 132-33. Lee seeks to

14

opine that the whitepapers of non-party Dr. Kelly Hiatt, which concern the performance of CTM's products, are "intellectually dishonest and intentionally deceiving." ECF No. 211-18 at 19-20. But neither Dr. Hiatt's whitepapers nor their accuracy are relevant to any allegation or cause of action in this litigation. Indeed, Magistrate Judge Castillo has already ruled that "scientific research and clinical studies relating to the performance of current CTM products are not relevant." Case No. 21-mc-1018 DMG (PVCx), Dkt. 48 at 22 (granting, in part, Dr. Hiatt's motion to quash Plaintiffs' subpoena). Magistrate Judge Castillo has also ruled that Dr. Hiatt's research notes and data concerning her whitepapers are not relevant to this action. Dkt. 202 at 21-23 (denying Plaintiffs' motion to compel). If the whitepapers themselves and any notes or underlying data concerning those papers are irrelevant, then the purported accuracy of those whitepapers is also irrelevant.

Opinion #15 further fails the second part of the test, requiring that the witness's opinion be based upon specialized skill, training, or experience. When asked if he referenced any standards in forming the opinion, Lee stated that he "got it from her deposition." When asked if he referenced any scholarly articles or publications to form his opinion, he stated "No." When asked what specialized training or education he relied upon to form his opinion, Lee stated, "My eyes and my ears, that's it." Thus, Lee admits that in forming Opinion #15, he referenced no standards, scholarly articles or publications, and relied upon no specialized training or education. Lee does not claim to be an expert in medical, scientific, or academic ethics—nor does he claim to have based his opinion on such expertise. *See Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1161-63 (S.D. Cal. 2008) (excluding patent expert's opinion in part on matters of ethics). Rather, Lee relied on his eyes and ears, "that's it." A jury in this case will have eyes and ears of their own to make determinations as to credibility, and Lee's opinion therefore has no value.

### F. Opinion #16: "CTM's IFUs use substantially similar language to HRT's."

Opinion #16 is another instance in which Lee simply compares two things to each other, and states a conclusion. In his five (5) sentence explanation, Lee compares the IFUs

15

(Instructions For Use) of CTM products to the IFUs of Skye/HRT products. He sets forth the quoted passages which he deems "substantially similar," and concludes that "it is no coincidence that Banman chose to name his company 'CTM' after 'connective tissue matrix.'" ECF No. 211-18 at 20. Whether or not two sentences are similar, or whether or not CTM's name is a coincidence are not technical in nature, and do not require the assistance of a purported expert in tissue banking to comprehend. Lee does not claim to be a linguistics expert, and his opinion comparing similarities between two sentences provides no value beyond what lay testimony can offer. As in Opinion #6, Lee provides no explanation or methodology, no analysis or description concerning his standards for comparison, or his reason for using the imprecise term "substantially similar."

Again, Lee's position is merely based on comparing publicly available documents from HRT with those of CTM. There is no claim of trademark, trade dress, or copyright infringement in this case, so the testimony does not go to a substantive claim at issue. The opinion provides no expert analysis whatsoever, and assumes that the jury cannot look at two sentences and decide whether or not the sentences are similar.

### G. Opinion #17: "CTM ripped off Skye and HRT in almost every aspect of their business."

Opinion #17 and its five (5) sentence explanation are simply hyperbole with no rational purpose other than to prejudice the jury against the CTM Defendants. Lee's opinion provides no expert analysis or insight beyond conclusory allegations of which he lacks personal knowledge. When asked if he referenced any standards, scientific journals or publications, or any type of professional publication to form the opinion, Lee answered, "No" to each question. Rather, Lee stated that "[he] know[s] what thievery . . . is and that's what this case strikes [him] as. Brian Banman was a thief." Lee further stated that the opinion was his personal feeling about Mr. Banman.

But Lee does not have a law enforcement background, or any background which would imply specialized knowledge or skill pertaining to recognizing "thievery" as he suggests. Lee relies on no specialized knowledge, training, or skills- instead, he relies on his

personal feelings to form Opinion #17. Therefore, his opinion is no more helpful than that of a lay witness.

## CONCLUSION

For the foregoing reasons, Plaintiffs' efforts to limit the trial testimony and evidence from the CTM Defendants experts should be denied, and John Lee's improper opinions should be excluded.

Dated:  August 15, 2023

**HODGSON RUSS LLP**
*Attorneys for Defendants*
*CTM Biomedical, LLC, Bryan Banman, CTM Medical, Inc., and Pablo Seoane*

By: *s/Robert J. Fluskey, Jr.*
Robert J. Fluskey, Jr. *(pro hac vice)*
Ryan K. Cummings *(pro hac vice)*
Matthew K. Parker *(pro hac vice)*
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone:  (716) 856-4000
*rfluskey@hodgsonruss.com*
*rcumming@hodgsonruss.com*
*mparker@hodgsonruss.com*


Paul T. Martin (SBN 155367)
   pmartin@hgla.com
Thomas H. Case (SBN 116660)
   tcase@hgla.com
HENNELLY & GROSSFELD LLP
10900 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Telephone:  (310) 305-2100
Facsimile:   (310) 305-2116

16599587v2