# Rosen ✧ Saba, LLP

RYAN D. SABA, ESQ. (State Bar No. 192370)
rsaba@rosensaba.com
JAMES R. ROSEN, ESQ. (State Bar No. 119438)
jrosen@rosensaba.com
TODD M. LANDER, ESQ. (State Bar No. 173031)
tlander@rosensaba.com
LAURA KELLY St. MARTIN (State Bar No. 260966)
lstmartin@rosensaba.com
NEDA FARAH, ESQ. (State Bar No. 269819)
nfarah@rosensaba.com
El Segundo, California 90245
Telephone:     (310) 285-1727
Facsimile:     (310) 285-1728
Attorneys for Plaintiffs,
SKYE ORTHOBIOLOGICS, LLC and
HUMAN REGENERATIVE TECHNOLOGIES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYE ORTHOBIOLOGICS, LLC, a Delaware Limited Liability Company, HUMAN REGENERATIVE TECHNOLOGIES, LLC, a Delaware Limited Liability Company, *Plaintiffs*, v. CTM BIOMEDICAL, LLC, a Delaware Limited Liability Corporation; BRYAN BANMAN, an individual; CTM MEDICAL, INC., a Delaware Corporation; VETERANS MEDICAL DISTRIBUTORS, INC.; a Florida Corporation; GARDNER ROGERS, an individual; MIKE STUMPE, an individual; PABLO SEOANE aka PAUL SEOANE, an individual; NATHAN BOULAIS, an individual, and DOES 3 through 10, inclusive, *Defendants*. | Case No.: 2:20-cv-03444-MEMF-PVC *Hon. Maame Ewusi-Mensah Frimpong* **HRT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS** **Date:**     **December 14, 2023** **Time:**     **10:00 a.m.** **Courtroom:**  **8B** |



ROSEN ✧ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL HISTORY .............................................................................. 1

III.  RELEVANT FACTS ......................................................................................... 2

IV.  TRIAL WAS NECESSARY ........................................................................... 3

V.   HRT IS ENTITLED TO ATTORNEY'S FEES AND COSTS ..................... 3

VI.  HRT'S CLAIMED FEES ARE REASONABLE ......................................... 4

      A.  HRT's Counsel Performed a Significant Amount of Work ..................... 4

           1. Initial Investigation and Complaint .................................................. 5

           2. Discovery .......................................................................................... 6

           3. Fact Witness Depositions ............................................................... 11

           4. Experts ............................................................................................ 11

           5. Summary Judgment ........................................................................ 12

           6. Mock Trial ...................................................................................... 12

           7. Trial ................................................................................................ 13

      B.  HRT's Attorney's Fees are Reasonable ............................................... 13

VII. HRT IS ENTITLED TO ITS COSTS AND EXPENSES ......................... 17

VIII.CONCLUSION .............................................................................................. 19

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

ROSEN ◇ SABA, LLP



# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Billon, Inc. v. Slatin*
  No. SACV1600788CJCJPRX, 2018 WL 1409746, at *2 (C.D. Cal. Jan. 3, 2018).........3

*Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas*, Jr.
  250 F.3d 1234 (9th Cir. 2001). ..................................3

*Fischer v. SJB-P.D., Inc.*
  214 F.3d 1115 (9th Cir. 2000) ...............................13

*Margolin v. Regional Planning Comm'n*
  (1982) 134 Cal.App.3d 999 ..................................16

*MRO Commc'ns v. Am. Tel. & Tel. Co.*
  197 F.3d 1276, 1282 (9th Cir. 1999) .......................3

## **STATE CASE**

*Chavez v. City of Los Angeles*
  47 Cal.4th 970 (2010) .......................................13

*Graham v. DaimlerChrysler Corp.*
  34 Cal.4th 553 (2004) .......................................16

*Hjelm v. Prometheus Real Est. Grp., Inc.*
  3 Cal.App.5th 1155, (2016) ................................4

*Horsford v. Board of Trustees*
  132 Cal.App.4th 359 (2005) ................................13

*Ketchum v. Moses*
  24 Cal.4th 1122 (2001) ..................................13, 16

*Press v. Lucky Stores, Inc.*
  34 Cal.3d 311 (1983) .......................................13

*Reynolds Metals Co. v. Alperson*
  25 Cal.3d 124 (1979) ........................................4

*Serrano v. Priest*
  20 Cal.3d 25 (1977) ........................................13

*Serrano v. Priest*
  32 Cal.3d 621 (1982) .......................................15

ROSEN ◇ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

HRT'S MOTION FOR ATTORNEY'S FEES AND COSTS



**STATUTES**

Code of Civil Procedure §425 ........................................................................... 16

Code of Civil Procedure §1021 ......................................................................... 16

Civil Code §1717 ................................................................................................ 3

Rosen ◇ Saba, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff HRT brought a civil action against Defendant Bryan Banman including a claim for Breach of Contract based on the confidentiality provisions of a Consulting Agreement/Compensation contract.  Specifically, HRT alleged Banman breached the terms of this agreement, among other reasons, by disclosing and using HRT's confidential manufacturing processes for the flowable and chorion-based medical products.

At the conclusion of a seven-day jury trial, the jury rendered a verdict in favor of HRT on its Breach of Contract claim against Banman. [Docket #505, Verdict Form, at p. 12, Nos. 29-33.]   The jury found that HRT proved "that it entered into a Consulting Agreement/Compensation Contract with Bryan Banman".[Docket #505, Verdict Form, No. 29.] The jury also found that HRT proved Banman "used or disclosed HRT's manufacturing process, including but not limited to HRT's formula for its flowable product, in breach of his contract with HRT" and awarded damages to HRT.  [Docket #505, Verdict Form, Nos. 31-32.] Thus, HRT was the prevailing party at trial.

The contract contains an attorney's fees provision awarding "all reasonable attorney's fees, costs and expenses" to the prevailing party.  [Trial Exhibit 129-2, **Exhibit. A** to the Declaration of Ryan D. Saba.]

HRT now seeks recovery of its reasonable attorneys' fees in the amount of **$6,950,101.25** as compensation for 10,518.29 hours of work for over a three-years of litigation, plus **$114,950.00** anticipated for post-trial motions, and reimbursement of reasonable costs in the amount of **$886,540.16**.  Banman's use and disclosure of HRT's confidential manufacturing process was so integral in every aspect of this case, it is not appropriate to segregate out any amount of time pursuing this claim.

## II.   PROCEDURAL HISTORY

Plaintiff HRT filed its Fourth Amended Complaint which asserted a claim for Breach

ROSEN ✧ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245



of Contract.[1] [Docket #130 at ¶¶203-209.] The Consulting Agreement/Compensation contract between Banman and HRT was also attached to the Fourth Amended Complaint as Exhibit A. [Docket #130-1.] The Fourth Amended Complaint also prayed for "Reasonable attorneys' fees incurred in bringing this action to the full extent permitted by law or contract." [Docket #130 at Page 58 subsection "L".]

## III.   <u>RELEVANT FACTS</u>

The Court is familiar with the underlying facts and HRT repeats only those facts that are of particular importance to this briefing.

At trial, the Consulting Agreement/Compensation contract between Banman and HRT was Trial Exhibit 129. [Ex. A to Saba Decl.]  This agreement contains the following confidentiality provision in section 3(a):

> In the course of conducting the activities hereunder, it is anticipated that Consultant will have access to the Company's proprietary or confidential information, including, without limitation, data, processing protocols, product formulations, information, or documents concerning the finances, business and affairs of the Company which it acquires or produces in the performance of its obligations under this Agreement and data regarding medical, financial and other personal data and information of the Company's participants (collectively, "Confidential Information"). During the term of this Agreement and thereafter, Consultant shall keep such Confidential Information strictly confidential, and shall not disclose the Company's Confidential Information to any third party…

[Trial Exhibit 129-2, Ex. A to Saba Decl.]

This agreement also contains an attorney's fees provision below the confidentiality provisions in section 3, page 129-2:

> If any action or proceeding shall be commenced to enforce this Section 3, the prevailing party in such action or proceeding shall be entitled to recover from the other party all reasonable attorney's fees, costs and expenses incurred by such prevailing party in connection with such action or proceeding. The provisions of Section 3 shall survive the termination of this Agreement.

---

[1] / The breach of contract claim was asserted in all prior pleadings as well. [Complaint ECF #1; First Amended Complaint ECF #30; Second Amended Complaint ECF #62; Third Amended Complaint ECF #109.]

ROSEN ◇ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245



The jury ultimately rendered a verdict in favor of HRT on its Breach of Contract claim against Banman (among other claims).  The jury found that HRT proved it entered a Consulting Agreement/Compensation contract with Bryan Banman. [Docket #505, Verdict Form, No. 29.]  The jury also found that HRT proved Banman "used or disclosed HRT's manufacturing process, including but not limited to HRT's formula for its flowable product, in breach of his contract with HRT."  [Docket #505, Verdict Form, No. 31.]  Thus, HRT was the prevailing party at trial.

## IV.   TRIAL WAS NECESSARY

Prior to the verdict, the CTM Defendants (including Banman) did not make a settlement proposal or engage in settlement discussions with Plaintiffs. Even though Plaintiffs made a settlement demand to Banman, he refused to engage in any settlement talks or provide a counter-offer.  As a result, trial was necessary for Plaintiffs since Banman refused to make any attempt to resolve this litigation before verdict. [Saba Decl. ¶5.]

## V.   HRT IS ENTITLED TO ATTORNEY'S FEES AND COSTS

California law governs the recovery of attorneys' fees in actions involving state law claims.  *Billon, Inc. v. Slatin*, No. SACV1600788CJCJPRX, 2018 WL 1409746, at *2 (C.D. Cal. Jan. 3, 2018) (citing *MRO Commc'ns v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999) ("In an action involving state law claims, [federal courts] apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule.").

Under California law, "where the parties have contractually obligated themselves to pay attorneys' fees," California *Civil Code* §1717 provides for reasonable attorney's fees to the prevailing party. *Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1237 (9th Cir. 2001). California entitles a prevailing party to reasonable attorney's fees "[i]n any action on a contract, where the contract specifically

ROSEN ◇ SABA, LLP
2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245



provides that attorney's fees and costs, which are incurred to enforce that contract". *Civil Code* §1717(a). "[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." *Civil Code* §1717(b)(1).

Here, HRT brought an action on a contract, which provides for attorney's fees and costs, and HRT was the prevailing party. HRT brought a Breach of Contract action against Bryan Banman arising out of his misappropriation of HRT's confidential information, including its product manufacturing processes. HRT obtained its litigation objectives by obtaining a verdict finding Banman liable for breach of contract. Therefore, HRT is entitled to "all reasonable attorney's fees, costs and expenses incurred by such prevailing party in connection with such action or proceeding" pursuant to the contract.

Furthermore, HRT is entitled to all its fees spent in this litigation. "The California Supreme Court has stated that, 'Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.'" *Hjelm v. Prometheus Real Est. Grp., Inc.,* 3 Cal.App.5th 1155, 1178 (2016) (citing *Reynolds Metals Co. v. Alperson*, 25 Cal.3d 124, 129–130 (1979)). Further, "Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." *Id.*

Litigating the issues raised by HRT's breach of contract claims were inextricably linked to every issue in this case such that separating Plaintiffs' counsel's time into compensable and noncompensable units would be impracticable. The core issue in this case was uncovering the exact confidential information Banman acquired and/or disclosed to whom and/or used at what time. Those issues were involved in every step of discovery in this case, up to, and through, trial.

## VI. HRT'S CLAIMED FEES ARE REASONABLE

### A. *HRT's Counsel Performed a Significant Amount of Work*

In the defense of this lawsuit, Banman and the rest of the CTM Defendants

ROSEN ◇ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245



approached this litigation with a scored-earth tactics of refusing to produce key discovery documents and filing numerous motions in multiple forums with the goal to prevent Plaintiffs from obtaining a verdict.

Up until trial, this case evolved through the filing of an initial Complaint through a Fourth Amended Complaint; two separate rounds of motions to dismiss; numerous meet-and-confer and discovery conferences and motions; multiple out of state discovery motions requiring the retention of out of state counsel; the examination of over one million pages of documents produced in discovery; thirty (30) separate deposition sessions of twenty five (25) fact and expert witnesses requiring travel beyond Southern California to San Antonio, Jacksonville, Indianapolis (twice), Buffalo, and Minneapolis; a robust motion for summary judgment requiring Plaintiffs' response to 349 "undisputed" material facts presented by the Defendants; significant pretrial filings/motions and, finally, a contentious trial. All that work was appropriate and necessary to develop this difficult case to the point that it could be successfully tried before a jury.

These extensive litigation efforts are further detailed in the Declaration of Ryan D. Saba submitted with this Motion.

### 1.    *Initial Investigation and Complaint*

This action was originally filed on April 14, 2020.  Plaintiffs' counsel began working on this matter in November 2018.  From November 2018 to April 2020, Plaintiffs' counsel worked closely with Chris Sharp of HRT to investigate Mr. Banman's potential wrongdoings. Furthermore, counsel had to learn the intricate scientific and medical aspects of HRT's products.  The issues involved novel developments of scientific human tissue product technology and manufacturing techniques. The legal aspects of this litigation also included researching potential causes of action and analysis of choice of law issues as there were several potential defendants all residing in different states.   There were also wrongdoings in different states – with Banman seeking product manufacturing in different states and potentially disclosing HRT's confidential information to those potential manufacturers all over the country.



After the Complaint was filed, Plaintiffs' counsel prepared substantive and time-consuming briefing and amendments to the Complaint including:

1.   6/22/2020: First Amended Complaint [Dkt #30];

2.   8/14/2021: Opposing briefing including opposing papers, declarations, and exhibits to CTM Defendants Motion to Dismiss [Dkt # 50];

3.   8/14/2021: Opposing briefing to Defendant Stumpe's Joinder to Defendant Banman's Motion to Dismiss [Dkt # 49];

4.   2/26/2021: Second Amended Complaint

5.   4/2/2021: Opposition to CTM Defendants Motion to Dismiss [Dkt # 75];

6.   4/2/2021: Opposition to Defendant Stumpe's Joinder to CTM Defendants Motion to Dismiss [Dkt # 76];

7.   9/15/2021: Third Amended Complaint [Dkt # 109]; and

8.   2/3/2022: Fourth Amended Complaint [Dkt # 130]; adding additional parties including CTM Medical Inc., which Defendant CTM had concealed from Plaintiffs and this Court since the inception of this action.

### 2.   *Discovery*

Discovery in this case was a massive undertaking and required consistent meeting and conferring and with discovery motions from date the FRCP 26(d)(1) discovery stay was lifted in April 2021 up through objections to proposed trial exhibits that were never produced in discovery.  Defendants' overly aggressive discovery tactics required Plaintiffs to produce 652,852 pages of documents, which all had to be reviewed for privilege and relevance before production.  Defendants collectively produced 199,737 pages of documents, and experts produced over 200 additional documents, totaling well over 1 million pages of information.

Responding to Banman and CTM's Requests for Production and Interrogatories also took considerable time and acumen from Plaintiffs' counsel, as Banman served *twenty-two sets* of Requests for Production on Plaintiffs, with **596 individual Requests for Production to HRT alone**.  Plaintiffs' counsel also prepared detailed responses to the Interrogatories,

ROSEN ✧ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245



ROSEN ◇ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

including technical scientific information.

Banman also created unnecessary discovery battles and refused to produce key evidence, including his WhatsApp messages. This forced Plaintiffs to issue numerous third-party subpoenas to obtain the WhatsApp messages, text messages, emails and other information that Banman was refusing to produce. Many of the subpoenas were then objected to by the third parties which required HRT to hire out-of-state counsel to respond to baseless motions to quash (most were funded by Banman/CTM) – which were all denied or abandoned.

It is also notable that Banman took a contrary position in this Court for the sole purpose of frustrating Plaintiffs' ability to obtain basic discovery. This required Plaintiffs to incur massive amounts of fees in discovery battles. Specifically, in support of his discovery disputes, Mr. Banman repeatedly argued that the manufacturing, research, testing, pricing, and other details of CTM's products were CTM's proprietary and confidential information, requiring protection from disclosure. [*See, e.g.,* Trial Exhibits 207, 208, and 209[2].] However, at trial, Mr. Banman's primary defense was that CTM's product, were not confidential. Banman's gamesmanship did not end there.

HRT served subpoenas to Defendant Stumpe's company, Silenda, and Defendant Boulais' company, Medical Assist (who was not yet a defendant when the subpoena was served). Banman filed Motions to Quash these subpoenas in Indiana, requiring HRT to retain outside counsel. HRT successfully defeated the motions. The first tranche of crucial text and WhatsApp messages between Banman, Boulais and Stumpe were only produced

---

[2]/ Trial Exhibit 207: Declaration of Bryan Banman Filed in support of Motion to Quash subpoena the case of *Banman, et. al. v. Skye Orthobiologics, LLC, et. al.* filed in the United States District Court for the Southern District of Indiana, Indianapolis Division, Case No. 1:21-mc-00036-SEB-MJD;

Trial Exhibit 208: Declaration of Bryan Banman Filed in support of Motion to Quash subpoena the case of *Banman, et. al. v. Skye Orthobiologics, LLC, et. al.* filed in the United States District Court for the Western District of Texas, San Antonio Division, Case No. 5:21-mc-00663-OLG ("CTM's product formulas and specifications are CTM's property. CTM's product formulas and specifications are confidential and proprietary business information.")

Trial Exhibit 209: Declaration of Bryan Banman Filed in support of Motion to Quash subpoena the case of *Banman, et. al. v. Skye Orthobiologics, LLC, et. al.* filed in the United States District Court for the Southern District of Indiana, Indianapolis Division, Case No. 1:21-mc-00042-SEB-MJD.



following a court order to Medical Assist which was ***eight months*** after Plaintiffs' Requests for Production seeking the same communications were served on Mr. Banman (Mr. Banman ultimately produced these same communications in August 2022, nearly 1.5 years after they were first requested). Plaintiffs successfully defeated two out of state motions to quash subpoenas in Indiana, and resolved a third with Defendants after their opposition was filed in Texas, that Plaintiffs were forced to serve to obtain documents that Banman had been refusing to produce.  HRT relied on the expertise of the national firm Barnes and Thornburg to assist Plaintiffs' counsel with this litigation in Indiana, Texas, Florida and New York.

Plaintiffs submitted the following briefing, along with all necessary submissions to appear pro hac vice, in the following jurisdictions:

    a.  6/10/2021: Opposition, supporting declarations, exhibits and objections to Banman's Motion to Quash Plaintiffs' subpoenas to Medical Assist and Novus Ortho Corp (Silenda), United States District Court for the Southern District of Indiana, Case No. 1:21-mc-00036-SEB-MJD.

    b.  7/6/2021: Opposition, supporting declarations, exhibits and objections to Banman's Motion to Quash Plaintiffs' subpoenas to Motion to Quash Subpoena to Kelly Hiatt and Brian Badman, United States District Court for the Southern District of Indiana, Case No. 1:21-mc-00042-SEB-MJD.

    c.  7/27/2021: Opposition, supporting declarations, exhibits and objections to Banman's Motion to Quash Plaintiffs' subpoena to Alamo Biologics and Dorothea, LLC., United States District Court for the Western District of Texas (San Antonio), Case No.: 5:21-mc-00663-OLG.

In December of 2021, HRT also hired out of state counsel in Florida regarding Banman's Motion to Compel regarding their subpoena to Dr. Brett Schlifka.

Further, in April 2022, HRT hired out of state counsel in New York for a Motion to Compel regarding their subpoena to Dr. Tomi Prvulovic.

A summary of non-California attorney hours and fees follows below:

ROSEN ✧ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245



| Attorney | 2021 Rate/Hours | 2022 Rate/Hours | Total Fees |
|---|---|---|---|
| **Indiana** | | | |
| Alexander P. Orlowski (Coordinating attorney) | $510/16.5 | $550/9.3 | $13,530.00 |
| Cory L. Turner | $365/3.1 | $410/24 | $10,975.00 |
| **Texas** | | | |
| Alicia R. Barrs | $550/7.9 | $610/5.6 | $7,761.00 |
| Ilana Zelener | $500/2.7 | $580/1.4 | $2,162.00 |
| Sarah K. Oskay | $345/1.9 | | $655.00 |
| **Florida** | | | |
| Hannesson I. Murphy | $625/0.8 | $670/4.1 | $3,247.00 |
| Jeannette S. Holden | | $320/4.3 | $1,376.00 |
| **New York** | | | |
| Julia R. Livingston | | $785/20.9 | $16,407.00 |
| Johnna Vitti | | $390/14.5 | $5,655.00 |
| **TOTALS** | **33.9/$17,071** | **83.1/$44,698** | **$61,768.00** |

Alexander P. Orlowski and Cory L. Turner facilitated obtaining pro hac vice appearances for Ryan Saba and assisted HRT in responding to Banman's Motions in Indiana. In addition, Mr. Orlowski acted as coordinating counsel between other attorneys nationwide at Barnes and Thornburg.

Alicia R. Barrs, Ilana Zelener, and Sarah K. Oskay assisted in responding to Banman's Motion to Quash the subpoena to Alamo Biologics and Dorothea, LLC, in Texas. Banman's motion was denied and the key documents obtained by Alamo were initial communications and agreements between Banman and Lee Andrews of Alamo setting up production of CTM products using HRT's product manufacturing processes including the drafts of Standard Operating Procedures for the manufacture of Banman's CTM products. These documents were used at trial as Trial Exhibits 2, 3, 6, 8, 9, 11, 15-25, 27-29, 33, 34, 36, 39, and 41. The key documents used at trial (even bearing Alamo's original Bates Stamp) were: (1) Trial Exhibit 16: the Agreement for Biomedical Materials, with Exhibit B, in which Banman lays out HRT's manufacturing process for Alamo to copy in making products for CTM; (2) Trial Exhibit 23: an Email from Banman to Andrews with a photo of an HRT sample membrane asking him to copy it for CTM's membrane.

ROSEN ✧ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

Julia Livingston and Johnna Vitti assisted in handling Plaintiffs' motions in New York. Hannesson I. Murphy and Jeannette S. Holden assisted in handling the Opposition to Banman's Motion in Florida.

This case required documents to be reviewed with a heightened level of scrutiny – examining each communication (be it email, text message, or other messaging platform, sometimes in a difficult to read format) to determine exactly the information that was being disclosed and/or used by whom and to whom, including the intricacies of confidentiality of scientific information. When large tranches of documents needed to be reviewed, HRT enlisted out of state counsel specifically to assist in reviewing the hundreds of thousands of pages of documents for privilege and relevance. HRT was able to save some money by hiring dedicated attorney document reviewers instead of paying Rosen Saba to do so.

The total fees for these attorneys are as follows:

| Attorney | Billing Rate | Hours | Total Fees |
|---|---|---|---|
| Lynda Amadi | $250 | 240.75 | $ 60,187.50 |
| Kathe Loeffler | $250 | 249.50 | $ 62,375.00 |
| Jamilia Stevenson | $250 | 145.75 | $ 36,437.50 |
| Melanie Lawson | $250 | 362.50 | $ 90,625.00 |
| Caryn Madison | $250 | 3 | $ 750.00 |
| **TOTAL** | | 1,001.5 | $ 250,375.00 |

Banman's discovery hurdles throughout this litigation continued during the litigation. Indeed, near the eve of expert witness disclosures, Banman declared under oath (for the first time) that he relied upon a patent application while working on product development at HRT (with the argument that the information cannot be confidential if it is in a patent). This document was never produced or even discussed by Mr. Banman at any time during the span of the three-year litigation or during his 14 hours of deposition testimony. This patent was admitted as Trial Exhibit 1067 (Patent Application 13/569,095, Ex. 1067). Even though there was no reference to the patent in any email or in the HRT design file, this new twist caused HRT to spend additional hours reviewing patents and hiring an expert to windind this fabricated claim.



In addition, through the subpoenas to third parties, Plaintiffs discovered that while Banman was employed by Plaintiffs in 2018, he fraudulently signed contracts with other companies using the name Nathan Tierney.  Upon receiving these documents, Plaintiffs spent many hours trying to figure out who was Nathan Tierney because Banman would not tell Plaintiffs the truth on this subject.  Plaintiffs sent multiple sets of written discovery to Banman regarding Nathan Tierney, spent time and money trying to locate and subpoena Nathan Tierney, and spent months meeting and conferring with Banman's counsel about Nathan Tierney, only to find out in April 2022 that Nathan Tierney is Banman's nephew and Banman forged his signature on those agreements.  Again, Banman's continued efforts to conceal discoverable evidence presented unique time-consuming challenges in this litigation.

### 3.    *Fact Witness Depositions*

The parties deposed seventeen (17) fact witnesses, some taking multiple days for a total of twenty-one (21) sessions of fact witness depositions. Plaintiffs' counsel prepared extensively for each of these depositions, reviewing thousands of text messages and email communications specific to each witness. In addition to depositions in California, counsel flew to Buffalo, San Antonio, Jacksonville, and Indiana (twice) to conduct depositions.

### 4.    *Experts*

The issues in this case were particularly complex as they involved highly technical human tissue product manufacturing information, requiring multiple experts through trial. HRT alleged that Banman used and disclosed HRT's confidential manufacturing process to create and sell the same products. HRT's counsel retained a manufacturing expert, John Lee, and a patent expert, Daniel Cislo, to address Banman's claims that (1) HRT's manufacturing process was "public knowledge", and (2) that his products were different. Banman retained two rebuttal experts on these issues. HRT also retained an economist to opine on its damages and to comment on Banman's rebuttal expert's damages analysis.

ROSEN ◇ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245



HRT also enlisted a non-retained expert, Joseph Spell, to opine on industry standards relating to product manufacturing processes and confidential information. In response, Banman filed a motion to compel in Louisiana seeking non-relevant information relating to Mr. Spell requiring HRT to retain the assistance of Louisiana counsel.  HRT hired the law firm of Jones Walker to oppose Banman's motion. A summary of the time billed by Jones Walker is summarized below:

| Attorney | Rate | Hours | Fees |
|---|---|---|---|
| Casey Thibodeaux | $295 | 12.5 | $3,687.50 |
| Robert L. Waddell | $510 | .2 | $102.00 |
| Donald W. Washington | $550 | 11.7 | $6,435.00 |
| **TOTAL** | | **24.4** | **$10,224.50** |

Plaintiffs' counsel worked extensively with these experts in preparation for Plaintiffs' expert disclosure on October 19, 2022, and subsequent expert discovery cutoff through December 2022.  The parties deposed eight witnesses, with John Lee's deposition taking place over two days in Minnesota, for a total of nine deposition sessions.

That is a total of thirty (30) deposition sessions of fact and expert witnesses taken in this case.

### 5.    *Summary Judgment*

Defendants filed a Motion for Summary Judgment which turned out to be 107 pages that included 349 *defense* "undisputed" material facts, requiring Plaintiffs' response and inclusion of additional material facts.  This was a highly complex briefing requiring multiple declarations and exhibits as well as applications to seal materials relating to HRT's confidential product information.  The final joint brief was filed on December 19, 2022.

### 6.    *Mock Trial*

Following summary judgment, HRT's counsel conducted a mock trial specifically to evaluate whether the complex scientific issues related to Banman's knowledge, disclosure, and use of HRT's product formula and manufacturing secrets to make CTM



ROSEN ◇ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

products would translate to a jury. HRT also tested out how to present this case in a time constrained manner. HRT retained the expertise of jury consultant Harry Plotkin and participated in a mock trial presentation in May 2023.

### 7.   Trial

The trial preparation in this case was an enormous task that required assistance from several additional attorneys in the Rosen Saba office. Attorneys were called in to assist with the preparation of witnesses, motions in limine, trial documents, jury instructions and verdict forms, briefings that were required during trial. This was necessary to assist the trial attorneys so they could prepare for direct and cross examinations, witnesses, demonstrative exhibits, opening and closing statement, and coordinate with audio/visual support.

The trial required extensive legal and/or factual briefing. Plaintiffs' counsel prepared thirteen motions in limine, which were then reduced to five, prepared oppositions to seven motions in limine, prepared trial briefs and oppositions to trial briefs, prepared verdict forms, jury instructions, exhibits lists and ultimately the parties agreed on 1,317 trial exhibits, and prepared other pre-trial filings. Finally, the parties engaged in a seven-day jury trial from August 21, 2023 until the verdict was reached on August 29, 2023. HRT also incurred the cost of an audiovisual technology support company and a jury consultant.

### B.   HRT's Attorney's Fees are Reasonable

In calculating the attorney's fees incurred in defending against this litigation, the Court should follow the lodestar approach adopted by the California Supreme Court in *Serrano v. Priest*, 20 Cal.3d 25 (1977); see also *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (Federal courts determine the reasonableness of a fee award by calculating the lodestar figure.) Under the lodestar method, the Court obtains the lodestar amount by multiplying the hours worked by a reasonable hourly rate. *Id*. at 38; *Press v. Lucky Stores, Inc.,* 34 Cal.3d 311, 321-22 (1983). The reasonableness of the fees requested must be bolstered by sufficient evidence, which can include this Court's knowledge of the matter as well as supporting declarations. *Id*. "[T]he lodestar is the basic fee for comparable legal services in the community …." *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001). The

ROSEN ◇ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245



lodestar may be adjusted up or down to determine an appropriate award in the individual case, and a multiplier may be applied. *Id.*; *Chavez v. City of Los Angeles*, 47 Cal.4th 970 (2010). In considering the lodestar factors, a trial court must "focus on providing an award of attorney fees reasonably designed to fully compensate [the prevailing party's] attorneys for the services provided." *Horsford v. Board of Trustees*, 132 Cal.App.4th 359, 395 (2005).

Rosen Saba had the following lawyers in court during the trial: Ryan Saba, James Rosen, Todd Lander, Laura St. Martin, Neda Farah and Allison Owens. The fee rates are as follows:

**Rosen Saba, LLP[3]:**

| Attorney | Billing Rate | Hours | Total Fees |
|---|---|---|---|
| Ryan Saba | $850.00 | 1,595.10 | $1,355,835 |
| James R. Rosen | $850.00 | 224 | $190,400 |
| Todd Lander | $800.00 | 238.8 | $191,040 |
| Laura St. Martin | $650.00 | 4,235.10 | $2,752,815 |
| Neda Farah | $650.00 | 1,981.30 | $1,287,845 |
| Allison Owens | $575.00 | 341.4 | $196,305 |
| Miscellaneous Partners[4] | $800.00 | 75 | $60,000 |
| Miscellaneous Senior[5] Associates | $650.00 | 481.7 | $313,105 |
| Miscellaneous Associates[6] | $575.00 | 479.95 | $275,971.25 |
| Giuliana Roisenzvit (law clerk) | $95.00 | 46.5 | $4,417.50 |
| **Total** | | **9,699** | **$6,627,733.75** |

---

[3] / Rosen Saba, LLP contemporaneously billed HRT/Skye monthly and has detailed invoices detailing time spent in increments of 0.10. The total invoice is over 650 pages and contains attorney-client privileged descriptions of tasks performed. The invoices are not presented as evidence with this motion but the time spent is described in detail in Ryan Saba's declaration. If this Court wants to review the invoices in camera, HRT will provide the invoices to this Court. The trial court may award attorney fees based on time estimates for attorneys. *Margolin v. Regional Planning Comm'n* (1982) 134 Cal.App.3d 999, 1006-1007; *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 64 (detailed time records unnecessary to support fee award); *Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375 (award may be based on attorney's declarations without producing detailed time records).
[4] / Miscellaneous Partners are Elizabeth Bradley and Francesca Dioguardi
[5] / Miscellaneous Senior Associates are Michael Peng, Abigail Page John Godsil Michael Forman and John Aumer.
[6] / Miscellaneous Associates Justin Wilson, Jeremiah Swett, Sybil Villanueva and Krystle Meyer.



**Discovery Review Attorneys:**

| Attorney | Billing Rate | Hours | Total Fees |
|---|---|---|---|
| Lynda Amadi | $250 | 240.75 | $ 60,187.50 |
| Kathe Loeffler | $250 | 249.50 | $ 62,375.00 |
| Jamilia Stevenson | $250 | 145.75 | $ 36,437.50 |
| Melanie Lawson | $250 | 362.50 | $ 90,625.00 |
| Caryn Madison | $250 | 3 | $ 750.00 |
| **TOTAL** | | **1,001.5** | **$ 250,375.00** |

**Out of State Counsel from Barnes & Thornburg:**

| Attorney | 2021 Rate/Hours | 2022 Rate/Hours | Total Fees |
|---|---|---|---|
| **Indiana** | | | |
| Alexander P. Orlowski (Coordinating attorney) | $510/16.5 | $550/9.3 | $13,530.00 |
| Cory L. Turner | $365/3.1 | $410/24 | $10,975.00 |
| **Texas** | | | |
| Alicia R. Barrs | $550/7.9 | $610/5.6 | $7,761.00 |
| Ilana Zelener | $500/2.7 | $580/1.4 | $2,162.00 |
| Sarah K. Oskay | $345/1.9 | | $655.00 |
| **Florida** | | | |
| Hannesson I. Murphy | $625/0.8 | $670/4.1 | $3,247.00 |
| Jeannette S. Holden | | $320/4.3 | $1,376.00 |
| **New York** | | | |
| Julia R. Livingston | | $785/20.9 | $16,407.00 |
| Johnna Vitti | | $390/14.5 | $5,655.00 |
| **TOTAL** | **32.9/$16,397** | **84.1/$45,367.5** | **$61,768.00** |

**Out of State Counsel from Jones Walker LLP:**

| Attorney | Rate | Hours | Fees |
|---|---|---|---|
| Casey Thibodeaux | $295 | 12.5 | $3,687.50 |
| Robert L. Waddell | $510 | .2 | $102.00 |
| Donald W. Washington | $550 | 11.7 | $6,435.00 |
| **TOTAL** | | **24.4** | **$10,224.50** |

| **GRAND TOTAL** | **10,841.75 Hours** | **$6,950,101.25** |
|---|---|---|

     Furthermore, HRT hired Michael Turrill, a Los Angeles business trial lawyer, to review and opine on the reasonableness of the hourly rates of the Rosen Saba, LLP firm and



the reasonableness of the time spent prosecuting this action. [*See* Declaration of Michael Turrill at ¶18.]  Mr. Turrill opined as follows: "In sum, it is my professional opinion, based upon my 27 years of practice in the complex commercial litigation field, and the handling of cases similar to this one, as well as my experience with prevailing party attorneys' fees motions that the amount of fees and costs being sought by Plaintiffs' counsel in this matter is reasonable and consistent with the prevailing rates in the Los Angeles legal community".

### C.   The Hours to Prepare the Attorney Fees Motion are Reasonable

The California Supreme Court has approved attorney fees awards that include not only fees incurred concerning the underlying claim but also fees incurred to establish and defend a fee claim. *See, Serrano v. Priest*, 32 Cal.3d 621, 639 (1982) (fees recoverable under CCP §1021.5); *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 580-581 (2004); *see also Ketchum v. Moses*, 24 Cal.4th at 1141 (fees recoverable under CCP §425.16).

HRT, therefore, is entitled to recover the amounts expended in connection with this motion for attorney's fees and costs.

As set forth in the Declaration of Ryan D. Saba, HRT expects to incur legal fees associated with this motion.  Ryan D. Saba and Laura St. Martin spent the necessary time carefully reviewing all relevant client bills, invoices and billing entries before researching and preparing this motion, memorandum, declarations and proposed order, and will spend the necessary time reviewing the opposition, preparing a reply brief, and attending the hearing resulting in approximately 85 hours of billable time, for a total of $57,250.00. [Saba Decl. ¶ 97.]

### D.   Fees for Opposing Defendants' Rule 50 and Rule 59 Motions.

Additionally, Mr. Banman will file a Rule 50 Motion and a Rule 59 Motion regarding HRT's Breach of Contract claims. The anticipated fees and hours for reviewing these motions, preparing the oppositions, reviewing the replies, preparing for the hearing, and

ROSEN ◇ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245



attending the hearing is approximately 82 hours[7] for a total of $57,700.00. [Saba Decl. ¶98.]

### E. Counsel's Hourly Rate is Reasonable

The hourly rates for Rosen Saba's attorneys are more than reasonable because they are below market rates for attorneys in the Los Angeles community for attorneys with similar skills and experience at comparable law firms. [Turrill Decl. ¶¶ 13-18; Saba Decl. ¶¶ 32, 35.] The fact that more than one attorney worked on the case does not mean that their aggregate hours are duplicative or unreasonable. Multiple counsel is permissible when the demands of the case warrant more than one attorney. In such cases, some duplication of work is both expected and compensable. *Margolin v. Regional Planning Comm'n*, (1982) 134 Cal.App.3d 999, 1006. The anticipated hours for reviewing the opposition, preparing the reply, and preparing for and attending the hearing on this Motion are also more than reasonable in light of the significant litigation history at issue in this action.

## VII. HRT IS ENTITLED TO ITS COSTS AND EXPENSES

The agreement here includes recovery of "costs and expenses" along with attorney's fees. Thus, HRT's recovery is not limited to those categories of costs set forth by statute. A detailed itemization of the expenses are attached to the Declaration of Ryan Saba as Exhibit B.

Total Costs and Expenses:

| CATEGORY | TOTAL |
|---|---|
| A/V Litigation Support | $48,866.00 |
| Copies/Imaging | $452.80 |
| Delivery | $5,237.83 |
| Document Management | $190,957.14 |
| Expert Witness Fees | $321,246.48 |
| Filing fee | $850.00 |
| Litigation Support | $36,103.82 |
| Mileage | $778.77 |

---

[7] / 40 hours for each motion plus two hours to travel and appear at a hearing.

17

ROSEN ◇ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245



| | |
|---|---|
| Online Research | $10,778.53 |
| Other | $5,173.95 |
| Outside Copy | $11,159.94 |
| Parking | $628.00 |
| Postage | $344.03 |
| Subpoena charge | $44,643.66 |
| Transcripts | $116,186.16 |
| Travel Expense | $54,251.15 |
| Trial Exhibits | $38,643.70 |
| Witness fee | $238.20 |
| **TOTAL** | **$886,540.16** |

Each of the above costs were incurred specifically for this litigation.  Transcription costs of $116,186.16, which include court reporter and videographer costs related to the depositions, hearings, and trial, were necessary and the number of depositions conducted by Plaintiffs is very reasonable considering the nature of this litigation.  This also includes the preparation of deposition summaries by legal professionals as opposed to attorneys at a lower hourly rate. Video deposition testimony of fact and expert witnesses was played at trial.  The transcripts of the fact and expert witnesses were used extensively in preparing for, and during, cross examination of Banman's fact witnesses, as well as his manufacturing and damages experts.

Travel, meal, and lodging costs associated with depositions, hearings, meetings, and trial, were reasonable and necessary in this case. Counsel greatly reduced travel expenses in this case by conducting depositions via Zoom video conference when possible. Counsel incurred $321,246.48 in expert witness costs. As discussed above, these experts were essential to the HRT's case.

Counsel incurred $190,957.14 in document management and hosting costs, which is reasonable considering the massive volume of documents in this case hosted for over three years.  Counsel also incurred $10,778.53 in legal research, and $50,119.69 for witness fees, subpoena charges, and delivery costs. These are not fixed, recurring costs, but were specifically incurred for this litigation. At trial, counsel incurred a cost of $48,866.00 for an audio-visual litigation specialist who assisted in presenting evidence, preparing

HRT'S MOTION FOR ATTORNEY'S FEES AND COSTS

ROSEN ◇ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

demonstrative exhibits, and preparing the designated video deposition segments that HRT presented as part of its case.

Counsel also conducted a mock trial specifically to evaluate whether the complex scientific issues related to the development of the product formulations and manufacturing in this litigation would translate to a jury and retained the expertise of jury consultant Harry Plotkin in this regard. Counsel incurred $26,952.00 for Mr. Plotkin's assistance in conducting a mock trial and $8,000.00 for Mr. Plotkin as a jury consultant during trial (included in Litigation Support category).

All the costs and expenses listed above were necessary to HRT's prosecution of this action and were entirely reasonable given the nature of HRT's claims in discovering how widely spread Banman disclosed HRT's confidential information, and the extent he used that information in breach of his contract.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff HRT respectfully requests that its Motion for Attorney's Fees and Costs be granted and HRT be awarded the following totals in fees, costs, and expenses:

| | |
|---|---|
| Rosen Saba, LLP Incurred Fees | $6,627,733.75 |
| Rosen Saba, LLP Anticipated Post-Trial Motion Fees | $114,950.00 |
| Document Review Attorneys | $250,375.00 |
| Barnes & Thornburg | $61,768.00 |
| Jones Walker, LLP | $10,224.50 |
| Costs | $886,540.16 |
| **TOTAL** | **$7,951.591.41** |



ROSEN ◇ SABA, LLP

2301 Rosecrans Avenue, Suite 3180, El Segundo, CA 90245

DATED:     October 16, 2023                    ROSEN ◇ SABA, LLP

By:   /s Ryan Saba
      Ryan D. Saba, Esq.
      Laura St. Martin, Esq.
      Attorneys for Plaintiffs
      SKYE ORTHOBIOLOGICS, LLC and
      HUMAN REGENERATIVE
      TECHNOLOGIES, LLC

HRT'S MOTION FOR ATTORNEY'S FEES AND COSTS