O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYE ORTHOBIOLOGICS, LLC, a Delaware Limited Liability Company, HUMAN REGENERATIVE TECHNOLOGICS, LLC, a Delaware Limited Liability Company, <br><br> Plaintiffs, <br> v. <br><br> CTM BIOMEDICAL, LLC, a Delaware Limited Liability Company; BRYAN BANMAN, an individual, CTM MEDICAL, INC., a Delaware Corporation; VETERANS MEDICAL DISTRIBUTORS, INC., a Florida Corporation; GARDNER ROGERS, an individual; Mike Stumpe, an individual; PABLO SEOANE aka PAUL SEOANE, an individual; NATHAN BOULAIS, an individual, and DOES 3 through 10, inclusive, <br><br> Defendants. | Case No.: 2:20-cv-03444-MEMF-PVC <br><br> **ORDER DENYING MOTION FOR RECONSIDERATION (DKT. NO. 701) AND GRANTING MOTION TO SUBSTITUTE (DKT. NO. 700)** |

Before the Court is a Motion for Reconsideration (Dkt. No. 701) and a Motion to Substitute (Dkt. No. 700) filed by Plaintiffs. For the reasons stated herein, the Court hereby DENIES the Motion for Reconsideration and GRANTS the Motion to Substitute.

/ / /

/ / /

1

## I.    Factual and Procedural Background

The Court has previously detailed the factual background in this case in its Order granting in part the Motion for Summary Judgment. *See* Dkt. No. 248 ("Order"). The Court will therefore only address the aspects of the procedural background that are relevant to this Order.

### A.  Procedural Background

On April 14, 2020, Plaintiffs filed a complaint against Defendants in this Order and Defendants Veterans Medical Distributors, Inc., and Gardner Rogers. Dkt. No. 1. On August 27, 2021, the Magistrate Judge issued an Order denying Defendants' Motion for a Protective Order and Motion to Compel. Dkt. No. 102. On February 3, 2022, Plaintiffs filed their Fourth Amended Complaint, the operative complaint. Dkt. No. 130 ("4AC"). The 4AC alleges eleven (11) causes of action: (1) RICO, 18 U.S.C. § 1962(c); (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d); (3) violation of the Federal Defend Trade Secrets Act (18 U.S.C. § 1836, et seq.); (4) breach of contract – HRT; (5) breach of contract – Skye; (6) conversion against CTM and Banman; (7) conversion against Stumpe; (8) tortious interference with contract; (9) tortious interference with prospective economic advantage; (10) breach of fiduciary duty; and (11) breach of duty of loyalty. *See generally* 4AC.

On December 21, 2022, the Court granted the parties' stipulation to dismiss Veterans Medical Distributors, Inc., and Gardner Rogers from the case. Dkt. No. 218. On December 19, 2022, the parties filed a fully briefed joint Motion for Summary Judgment. Dkt. No. 211. The Motion for Summary Judgment includes Plaintiff Skye's first, second, and fourth amended responses to Defendant Banman's first and second set of interrogatories, Plaintiff HRT's first amended response to Defendant Banman's first set of interrogatories, HRT's response to Defendant CTM Med's first set of interrogatories, and a deposition transcript of Christopher Sharp—all filed between April 2, 2021, and October 10, 2022. *See* Exs. 1, 2, 5, 7, 8, 14, Dkt. No. 211-4.

On March 16, 2023, the Court held a hearing on the Motion for Summary Judgment. Dkt. No. 240. On May 25, 2023, the Court issued an Order granting in part the Motion for Summary Judgment, where at issue here is the Court's ruling granting Defendants' Motion for Summary Judgment on Plaintiffs' Defend Trade Secrets Act ("DTSA") claim for HRT's Manufacturing

2

Process. Dkt. No. 248 ("Order"). Trial commenced on Plaintiffs' remaining claims, and on August 29, 2023, a jury returned a verdict on Plaintiffs' remaining claims and awarded damages, including punitive damages. *See* Dkt. No. 511. On January 2, 2025, the Court granted Defendant Banman's Rule 59 Motion for a New Trial, and the new trial is set for March 9, 2026. Dkt. Nos. 679, 697.

On October 15, 2025, Plaintiffs Skye Orthobiologics, LLC and Human Regenerative Technologies, LLC (collectively, "Plaintiffs") filed a Motion for Reconsideration. Dkt. No. 701 ("Motion"). On November 5, 2025, Defendants Bryan Banman, CTM Biomedical, LLC, CTM Medical, Inc., Pablo Seoane (collectively, "Defendants") filed an Opposition. Dkt. No. 708 ("Opposition"). On November 12, 2025, Plaintiffs filed a Reply. Dkt. No. 709 ("Reply"). Also, on October 15, 2025, Plaintiffs filed a Motion to Substitute, and on November 5, 2025, Defendants filed a Notice of Non-Opposition to the Motion to Substitute. *See* Dkt. No. 700 ("Motion to Substitute"); Dkt. No. 707. On December 4, 2025, the Court held a hearing on the Motion for Reconsideration and the Motion to Substitute.

## MOTION FOR RECONSIDERATION (DKT. NO. 701)

### II. Applicable Law

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order" for sufficient cause. *City of L.A. v. Santa Monica Baykeeper,* 254 F.3d 882, 885 (9th Cir. 2001) (emphasis omitted). A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000) (discussing the standard of a motion for reconsideration under Fed. R. Civ. P. 59(e)). Additionally, the Ninth Circuit has established that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible,* 983 F.2d 152, 154 (9th Cir. 1993). A motion for reconsideration may not be used to reargue the motion or present evidence that should have been presented prior to the entry of judgment. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 880 (9th Cir. 2009). Reconsideration is appropriate if the movant demonstrates clear error, manifest injustice, newly discovered evidence, or an intervening change in controlling law. *Sch. Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993).

Moreover, pursuant to Local Rule 7-18 of this District, a motion for reconsideration may be made only on the grounds of:

> (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or
> (b) the emergence of new material facts or a change of law occurring after the Order was entered, or
> (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

> No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion.

C.D. Cal. L.R. 7-18. Furthermore, absent a showing of good cause, "any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application." *Id*.

### III.    **Discussion**

Plaintiffs move to reconsider the Court's Order granting and denying in part Defendants' Motion for Summary Judgment, specifically granting Defendants summary judgment for Plaintiffs' claim for violation of the DTSA with respect to HRT's Manufacturing Process. *See generally* Motion; *see also* Order at 25-28. Plaintiffs argue that the Ninth Circuit's decision in *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081 (9th Cir. 2025) constitutes a change in controlling law "by establishing that DTSA, not [the California Uniform Trade Secrets Act ("CUTSA")], governs the standard for identifying trade secrets in federal court" and that "'sufficient particularity' is a factual question to be resolved through an iterative discovery process and, if necessary, at summary judgment or trial." *See* Motion at 13-19. Plaintiffs then contend they were not afforded any opportunity to "refine or clarify their trade secret identification" in an iterative discovery process and should be given that chance under *Quintara*. *See id.* at 19-24. Defendants contend that *Quintara* did not change the controlling law and that Plaintiffs were given ample opportunities to refine their trade secrets through an iterative discovery process. *See* Opposition at 9-14, 18-20. For the reasons discussed herein, the Court finds that *Quintara* does not warrant reconsideration.

**A.  *Quintara* was not a material change in law to warrant reconsideration.**

Plaintiffs argue that *Quintara* established new law, where a court errs by "applying California's CUTSA particularity requirement to a federal DTSA claim." *See* Motion at 17 (citing *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1088-89 (9th Cir. 2025)). And based on *Quintara*, Plaintiffs contend that the Court improperly granted summary judgment to Defendants on HRT's manufacturing-process trade secret claim. *See* Motion at 17-19; Reply at 5-9. Defendants contend that *Quintara* did not change controlling law, and the Court applied the proper standard in its MSJ Order. *See* Opposition at 11-14.

The Ninth Circuit in *Quintara* said that the issues being appealed were "at what point in the case, and with how much particularity, a DTSA plaintiff must specify its purported trade secrets." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1085 (9th Cir. 2025). The plaintiff in *Quintara*, who was bringing a DTSA claim, was ordered by the lower court "to disclose with 'reasonable particularity' each of its allegedly misappropriated trade secrets at the outset of discovery," and then the lower court halted discovery and struck a number of trade secrets under Federal Rule of Civil Procedure 12(f) when the plaintiff did not meet that "reasonable particularity" standard, which is a standard under the CUTSA. *See id.* at 1085-86.

The Ninth Circuit held that under the DTSA, to show that information is a trade secret, "a plaintiff must prove that the claimed trade secret has 'sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons … skilled in the trade.'" *Id.* at 1087 (*quoting Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998)). And this is a "question of fact." *Id.* Unlike a state law CUTSA claim, where a plaintiff "shall identify a trade secret with 'reasonable particularity' before discovery commences," *id.* at 1088 (*quoting* Cal. Civ. Proc. Code § 2019.210), a federal DTSA claim still "requires a plaintiff to identify a trade secret with 'sufficient particularity' as a matter of fact," *id.* at 1088-89. And a plaintiff who satisfied DTSA's "sufficient particularity" standard may also satisfy CUTSA's "reasonable particularity" standard. *Id.* at 1088 (*citing InteliClear, LLC v. ETC Glob. Holdings*, Inc., 978 F.3d 653, 658 n.1 (9th Cir. 2020)). Also, unlike CUTSA, "DTSA does not set out requirements for the specific timing or scope for identifying trade secrets." *Id.* at 1089. "[T]he conventional order

of pleadings, initial disclosures, and first-round discovery may not be enough to set the stage for future factual development of a trade-secret claim. Discovery in a trade-secret case, then, requires an '*iterative process* where requests between parties lead to a refined and sufficiently particularized trade secret identification.'" *Id.* at 1088 (*quoting InteliClear, LLC*, 978 F.3d at 662) (emphasis added). Thus, "the identification of a trade secret is a question of fact, and a district court may grant summary judgment only if there is no genuine dispute that a plaintiff could identify a trade secret with 'sufficient particularity.'" *Id.* It was therefore improper for the lower court "to strike—and functionally dismiss [under Rule 12(f) and Rule 16]—[the plaintiff's] claim to nine of its trade secrets." *Id.* at 1089.

Here, while the Ninth Circuit in *Quintara* did make new law in establishing the different particularity standards for DTSA and CUTSA claims, *see* Reply at 6, the Court finds that this distinguishment between DTSA and CUTSA does not impact its analysis in the MSJ to warrant reconsideration. *See* Order at 25-28.

First, in analyzing whether Plaintiffs sufficiently identified trade secrets within HRT's manufacturing process, the Court applied the proper "sufficient particularity" standard in *Imax*, which *Quintara* cites to for support of the new controlling law. *See id.* at 26-27; *see also Quintara Biosciences, Inc.*, 149 F.4th at 1087. The Court did not apply the "reasonable particularity" CUTSA standard or use words that could allude to that standard in the MSJ. *See* Order at 25-28; *see also* Opposition at 12. In fact, the Court never even analyzed a CUTSA claim in the MSJ, and Plaintiffs did not even allege a CUTSA claim in its operative complaint. *See* Order at 18; 4AC at 1. Therefore, the Court finds that there was not a material "intervening change in in controlling law" to make reconsideration appropriate. *ACandS, Inc.*, 5 F.3d at 1263.

To justify the need for reconsideration, Plaintiffs argue that the Court cites to cases that allegedly uphold the CUTSA standard in *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993) and *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161 (9th Cir. 1998). *See* Motion at 17-19. However, *MAI* did not apply either the "sufficient particularity" or "reasonable particularity" standard and simply held that the plaintiff did not specifically identify "what [the] trade secrets are" or identify *any* trade secrets. *See MAI Sys. Corp.*, 991 F.2d at 522-23; *see also* Order at 25-28. And

*Imax* applied the proper "sufficient particularity" standard, where "the issue turn[ed] on whether Imax identified the precise numerical dimensions and tolerances of its projector as trade secrets with *sufficient particularity.*" *See Imax Corp.*, 152 F.3d at 1164, 1166-67 (emphasis added). It is why *Quintara* and *InteliClear* both cited *Imax* for the "sufficient particularity" standard for the DTSA. *See Quintara Biosciences, Inc.*, 149 F.4th at 1087 (*quoting Imax Corp.*, 152 F.3d at 1164); *InteliClear, LLC*, 978 F.3d at 657-58. And if *Imax* improperly applied the "sufficient particularity" standard in lieu of the "reasonable particularity" standard, then it would have been formally overruled post-*Quintara*, but it was not. *See* Opposition at 13. Therefore, the Court properly applied *MAI* and *Imax* when doing its analysis of Plaintiffs' facts in the MSJ.[1]

Accordingly, the Court finds that reconsideration for a material change of law is not appropriate under *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081 (9th Cir. 2025).[2]

### B. Plaintiffs do not get another chance to engage in an iterative discovery process under *Quintara*.

In *Quintara*, the Ninth Circuit held that the lower court's discovery sanction and effective dismissal of the plaintiff's claims for failure to comply with the "reasonable particularity" standard was improper. *See Quintara Biosciences, Inc.*, 149 F.4th at 1088-89, 1091. It "came [too] early in the litigation and before an opportunity for discovery that would allow the parties to refine and

---

[1] Plaintiffs contend that the "sufficient particularity" standard in *Imax* "appears to be" as an evidentiary standard and the proper "reasonable particularity" CUTSA standard applied in *Imax*. *See* Motion at 18, 18 n.4; Reply at 8. But as discussed above if that was the case, then *Quintara* would agree that it was an "evidentiary standard" and would not have cited *Imax* for the "sufficient particularity" DTSA standard. Also, Plaintiffs do not point to any court interpreting the "sufficient particularity" standard in *Imax* as an evidentiary standard.

[2] For the proposition that whether a trade secret is identified with "sufficient particularity" is a "question of fact," the Ninth Circuit in *Quintara* cited to *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-59 (9th Cir. 2020). This Court does not find this proposition to be novel, where in *InteliClear*, the Ninth Circuit found a genuine issue of material fact as to whether the plaintiff identified its trade secrets with sufficient particularity. *See InteliClear, LLC*, 978 F.3d at 659. There was a genuine issue of material fact because a reasonable jury could conclude that there were "aspects of [the plaintiff's] database logic and architecture with enough specificity to create a triable issue of fact." *Id.* Here, the Court in its Order applied the same logic as in *InteliClear* to find that Plaintiffs had not identified "aspects" of HRT's manufacturing process with "enough specificity to create a triable issue of fact." *Id.*; *see also* Order at 27-28. Therefore, it is improper for Plaintiffs to argue that its evidence now satisfies the "sufficient particularity" test and at least creates a question of fact under *Quintara* to preclude summary judgment and warrant reconsideration. *See* Motion at 19; Reply at 10-11; *see also* Opposition at 15-18.

clarify the identification of the alleged trade secrets at issue [through an iterative process]. And the reason for striking … went to [the] merits … *that should be resolved on summary judgment* or at trial." *See id.* (emphasis added).

Plaintiffs argue that reconsideration is also warranted because it was never given a chance "to refine or clarify their trade secret identification" since the case went from discovery to summary judgment, without any objections to the trade secrets or chance to engage in an iterative process. *See* Motion at 21-24; *see also* Reply at 4-5. Defendants contend that Plaintiffs were given many opportunities to refine their trade secrets. *See* Opposition at 18-20.

Here, *Quintara*'s holding of when it is too early for a dismissal for lack of specificity in trade secrets does not warrant reconsideration of Plaintiffs' MSJ claim, because Plaintiffs were given a chance to engage in an iterative discovery process, and their claims were properly resolved on summary judgment.

First, on April 2, 2021, Defendant Banman and Seoane served Plaintiffs with their First Sets of Interrogatories, where each company was asked to "identify and describe in detail each trade secret that Banman and Seoane allegedly misappropriated." *See* Dkt. No. 211-4 at 4. The Plaintiffs objected to these interrogatories. *See, e.g.*, Dkt. No. 93-1 at 4-5[3]. In response, on July 27, 2021, Defendants filed a Motion for a Protective Order and to Compel Timely Interrogatory Responses, seeking to have the Court order Plaintiffs to "identify their trade secrets at issue, by responding to CTM's and Banman's interrogatories." *See* Dkt. No. 93 at 1. Plaintiffs opposed in part on the ground that the district judge had "already determined Plaintiffs' have properly pled their trade secret allegations under their DTSA claim in denying Defendants' FRCP Rule 12(b)(6) motion." Dkt. No. 96 at 8. Plaintiffs also stated: "Plaintiffs allege, with good reason, that the CTM Defendants misappropriated *all of Plaintiffs' entire business*: From the product formulations and manufacturing, the marketing and sales strategies, to the customers and employee lists." *Id.* (emphasis added). On August 27, 2021, the assigned magistrate judge denied the Motion, finding that "Plaintiffs have

---

[3] The citation here is to the pagination imposed on the document by the Court's CM/ECF header because this document includes multiple pages with the same original page number. *See* Bluebook Rule B17.1.4.

sufficiently pled the trade secrets in their complaint," and "each side should proceed with discovery simultaneously, and expeditiously." Dkt. No. 102 at 18-19.

Second, in the subsequent twenty months, Plaintiffs provided multiple responses to the interrogatories and a deposition by Defendants to identify their trade secrets with particularity.

On October 8, 2021, in Plaintiff Skye's first amended response to Defendant Banman's interrogatories, Plaintiff provided an interrogatory response purporting to identify its trade secrets. *See* Ex. 1 at 4-11, Dkt. No. 211-4. Plaintiff HRT made a similar identification the same day. *See* Ex. 2 at 4-11. And on March 29, 2022, Plaintiffs' 30(b)(6) deponent, Christopher Sharp, was deposed, where—in response to questions regarding what trade secret Banman misappropriated in the development of Plaintiffs' product, and questions confirming Plaintiff Skye's interrogatory responses regarding identifying trade secrets—he stated that Banman misappropriated trade secrets of "HRT relating to product development and manufacturing," and that "HRT's standard operating procedures" includes information that he considered as a trade secret. *See* Sharp Dep. 16:16-19:3, 20:22-21:25, 101:9-104:6, Ex. 14, Dkt. No. 211-4; *see also* Ex. 31 at 5, Dkt. No. 211-5; Reply at 3.

Further, on October 10, 2022, Plaintiffs claimed in HRT's first response to Defendant CTM Medical's interrogatories that *"[t]he entire manufacturing process taken as a whole* is a trade secret of HRT," and attached as proof a copy of HRT's Standard Operating Procedures ("SOPs"). *See* Ex. 5 at 4, Dkt. No. 211-4 (emphasis added); Ex. 30, Dkt. No. 211-5; Ex. 30, Dkt. Nos. 221-39 to -40.

Plaintiffs contend that Defendants did not raise any objections to Plaintiffs' amended responses and did not move to compel on the grounds that the responses were insufficient or seek supplemental responses, which—according to the Plaintiffs—means that Plaintiffs were not given a chance to engage in an iterative discovery process to refine and clarify their trade secrets before summary judgment. *See* Reply at 2-5; Motion at 23. But based on the discussion above, it is clear that Plaintiffs had ample opportunity to clarify what its trade secrets were with "sufficient particularity." *See id.*

Third, on December 19, 2022, Defendants moved for summary judgement, arguing that "Plaintiffs have failed to identify the allegedly misappropriated trade secrets" with sufficient particularity, and Plaintiffs opposed in part on this ground. *See* Dkt. No. 211-1 at 49-54.

And the Federal Rules of Civil Procedure provide a procedure for a nonmovant to ask for "iterative discovery" when presented with a motion for summary judgment. (This, of course, in addition to the required meet and confer in advance of the motion, *see* L.R. 7-3, which placed Plaintiffs on notice of the trade secret identification issue.) Under Federal Rule of Civil Procedure Rule 56(d)(2), if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: allow time to . . . take discovery." Fed. R. Civ. P. 56(d)(2). Plaintiffs filed their Opposition to the Motion for Summary Judgment, where identification of trade secrets was an issue, but did not move for more discovery under Rule 56(d)(2). *See* Opposition at 20; *see also* Dkt. No. 211-1 at 49-54, 61-67. Nor did they make that request at the hearing on this matter. Nor did they ask for reconsideration after the Court's issuance of its summary judgment decision, seeking the opportunity to take additional discovery.

Plaintiffs take the position that they are entitled to be given an opportunity to revise their trade secret identification *after* a court ruling on it. (It is on this basis that they contend that they were never given "a single opportunity to amend or supplement their identification before summary judgment." Motion at 23.) But they admit that no case says this. *Quintara* certainly does not say this. And no case indicates that the body of case law permitting this Court to make binding determinations at summary judgment somehow does not apply to the issue of trade secret identification. This Court declines to adopt this proposed innovation.

At the hearing, Plaintiffs also argued that the question on summary judgment was not whether they *had* properly identified a trade secret, but whether they *ever could* properly identify a trade secret. For this proposition, they appear to rely on the word "could" in the following discussion in *Quintara* of *Inteliclear*:

> We therefore held that the district court erred in granting summary judgment, and abused its discretion in denying a Rule 56(d) request to allow the plaintiff "to refine its identifications through discovery." So the identification of a trade secret is a question of fact, and a district court may grant summary judgment only if there is no genuine dispute that a plaintiff *could* identify a trade secret with "sufficient particularity."

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087–88 (9th Cir. 2025) (cleaned up) (emphasis added). Nothing else in the opinion suggests that what the Ninth Circuit meant was that summary judgment could only be granted against a plaintiff *after discovery* if the

defendant showed that—given additional opportunities to further refine or change its identified trade secrets—the plaintiff could never do so. The Ninth Circuit *could* have said so if this is what it meant. A plaintiff may not make an overly broad identification of trade secrets, stand on it throughout discovery and summary judgment, and then complain that it must be given another chance to properly identify its trade secrets now that the Court has ruled.

In sum, Plaintiffs were given a chance to engage in an iterative process, and the Court properly determined at the summary judgment stage that there was not enough evidence to create a genuine issue of material fact for Plaintiffs' HRT trade secret claim. *See* Order at 25-28; Reply at 5; *see also Quintara Biosciences, Inc.*, 149 F.4th at 1091 ("After an opportunity for discovery on the identification of the trade secrets, the court could have invited a motion for summary judgment, and absent a genuine fact dispute as to whether trade secrets were sufficiently particularized, it could have granted summary judgment as to those trade secrets.").

Accordingly, the Court finds that the holding in *Quintara Biosciences, Inc.* does not warrant reopening discovery and reconsidering the MSJ claim.[4] Plaintiffs' Motion for Reconsideration is DENIED.

### **MOTION TO SUBSTITUTE (DKT. NO. 700)**

#### I. **Applicable Law**

Federal Rule of Civil Procedure 25(c) states that: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3)." Fed. R. Civ. P. 25(c).

#### II. **Discussion**

Plaintiffs move to substitute the name of "Plaintiff from Human Resources Technologies, LLC to Skye Biologics Holdings, LLC" because of Human Resources Technologies, LLC's merger

---

[4] The Court need not address Defendants' injunctive relief argument, its Case Management Order for additional discovery argument, or its full re-trial argument, because as discussed above, the Court will not grant reconsideration under *Quintara*. *See* Opposition at 14-15, 20-24; *see also* Reply at 11-12. Furthermore, this would not create "manifest injustice" because as discussed above, the proper legal framework was applied for Plaintiffs' DTSA claim in the Order. *See* Motion at 24; Order at 25-28.

with and into Skye Biologics Holdings, LCC. *See* Motion to Substitute at 2. Plaintiffs contend that this merger "effected a transfer of interest from Human Resources Technologies, LLC to Skye Biologics Holdings, LLC." *Id.* at 3. Defendants do not oppose Plaintiff's Motion to Substitute, given that "they reserve all rights and defenses as to Skye Biologics Holdings, LLC and HRT." *See* Opposition Motion to Substitute at 1.

Here, the Court finds that Plaintiffs' Motion to Substitute is proper and shall be granted as to all Defendants in this case. No Defendants will suffer any meaningful prejudice because "all claims, defenses, discovery, and obligations remain exactly the same," and this motion is purely procedural under Rule 25(c). Motion to Substitute at 3. Thus, Defendants have still reserved all rights and defenses as before. Accordingly, the Motion to Substitute is GRANTED.

## CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Plaintiffs' Motion to Reconsider (Dkt. No. 701) is DENIED.
2. Plaintiffs' Motion to Substitute (Dkt. No. 700) is GRANTED.

IT IS SO ORDERED.

Dated: February 6, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge